UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

# 04-12708 MLW

PHILIP TRINGALI, )
    Plaintiff )
  )
v. )
  )
PAUL MARTIN AND JUMI LEE, )
    Defendants )

RECEIPT #_____ 61032

AMOUNT $___ '50.00

SUMMONS ISSUED___ 3

LOCAL RULE 4.1___ -

WAIVER FORM___ -

MCF ISSUED___ -

BY DPTY. CLK.___ M.P.

DATE___ 13/33/04

## COMPLAINT

1. The plaintiff Philip Tringali ("Tringali") is an individual residing at 98 Walnut Street, Halifax, Plymouth County, Massachusetts.

MAGISTRATE JUDGE RBC

2. Defendant Paul Martin ("Martin") is an individual residing at 2400 Lincoln Ave. #212, Atladena Los Angeles County, CA, and is the husband of defendant Jumi Lee

3. Defendant Jumi Lee ("Lee"), is an individual residing at 2400 Lincoln Ave. #212, Atladena Los Angeles County, CA, and is the wife of defendant Paul Martin.

### JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. 1332. The parties reside in different states, and the amount in controversy is greater than$75,000.00.

5. Venue is proper under 28 U.S.C. 1391 because all of the acts and omissions giving rise to the claims herein occurred in the Commonwealth of Massachusetts.

1

ALLEGATIONS COMMON TO ALL COUNTS

6.   Plaintiff and defendants are all shareholders of S.E.E., Inc., ("S.E.E."), a closely held corporation organized under the laws of the Commonwealth of Massachusetts.

7.   At all times relative to this action, S.E.E. was headquartered in Massachusetts.

8.   Tringali founded S.E.E. in 1988 as a sales organization engaged in selling various analytical equipment and systems used in the microelectronic industry.

9.   In 1996, S.E.E. embarked upon a business plan to design, manufacture and market an integrated, computer operated microspectrophotometry system for use in the forensic sciences (the "Analytical Product").

10.   On or about May 8, 1996, S.E.E. hired Martin as a research analyst to develop the Analytical Product.

11.   On February 28, 1997, Martin was made a director of S.E.E., was granted 10%, or 20,000 shares of S.E.E.'s stock, and was given the opportunity to purchase additional company stock at .50¢ per share.

12.   The Analytical Product development was directed by Martin and Lee in California, while S.E.E.'s sales business was operated from Massachusetts.

13.   In February, 2000, S.E.E.'s Analytical Product operation and its sales operation moved into a single facility in

Middleboro, Massachusetts.

14.   Martin and Lee relocated to Massachusetts as well, establishing residence in Quincy, Massachusetts.

15.   On or about April 7, 2000, Martin was promoted to senior vice president of sales and marketing for the Analytical Product.

16.   On or about August 28, 2000, Martin exercised his option to purchase 5000 additional shares of S.E.E. stock at .50¢ per share.

17.   On or about October 1, 1996, Lee began working at Wavetech, a business that provided research and development consulting services to S.E.E.

18.   In her consultant role, she worked closely with her husband, Martin, developing the Analytical Product.

19.   Approximately six (6) months later, Lee was hired as an employee of S.E.E.

20.   On or about May 13, 1998, Lee was also made a director of S.E.E., and was granted 8000 shares of S.E.E. stock, with the opportunity to purchase additional company stock at .50¢ per share.

21.   On April 20, 1999, S.E.E. issued to Lee an additional 2000 shares of stock.

22.   On or about August 28, 2000, Lee exercised her option to purchase 5000 additional shares of S.E.E. stock at .50¢ per

share.

23.   In May, 2000, Lee was promoted to operations manager of S.E.E.

24.   As the personnel primarily responsible for developing and marketing S.E.E.'s analytical product, both Martin and Lee acquired, during their respective employment by S.E.E., comprehensive knowledge of S.E.E.'s most sensitive product development and customer-related trade secrets and confidential information, including but not limited to S.E.E.'s database of customer information.

25.   In 2000, S.E.E. earned 1.7 million dollars from the sale of the Analytical Product.

26.   In February 2001, S.E.E. embarked upon a plan to develop an enhanced analytical product ("Enhanced Product") product with features and improvements that would make the Analytical Product suitable for use in the microelectronics manufacturing process as well as in the forensic sciences. Martin and Lee predicted that it would take one year to bring the Enhanced Product to market.

27.   Martin and Lee were primarily responsible for managing the development, manufacture and marketing of the Enhanced Product, including the hiring of additional employees required to develop the product, and cultivating contacts with prospective customers.

4

28.  Lee, as operations manager, was responsible for the day to day operations of S.E.E...

29.  By the beginning of 2001, defendants together owned 21% of the stock of S.E.E.

30.  In 2001, on information and belief, Martin and Lee embarked upon a plan to obtain control of S.E.E...

31.  On December 31, 2001, defendants Martin and Lee filed the articles of organization for Quantum Dynamics International, LLC, ("Quantum") a Massachusetts limited liability corporation.

32.  Quantum's principal place of business was located at Martin and Lee's residence.

33.  Martin and Lee formed Quantum for the purpose, and with the intent of designing, marketing and installing an integrated, computerized analytical device to compete directly with S.E.E.'s product.

34.  Defendants Martin and Lee did not disclose to S.E.E. or Tringali their intention to establish a competing corporation, Quantum Dynamics International, LLC.

35.  Defendants Martin and Lee did not offer S.E.E. or Tringali the opportunity to participate in S.E.E.'s business.

36.  Martin and Lee organized Quantum while they were employed by S.E.E., still served as directors of S.E.E., Inc. and together owned 21% of S.E.E.'s stock.

37.  On or about January 9, 2002, after Martin and Lee had

unsuccessfully attempted to force Tringali to sell to them his majority interest in S.E.E., Martin and Lee resigned from their positions as officers and directors of S.E.E.

38.    Unbeknownst to Tringali, prior to resigning from S.E.E., Martin and Lee had duplicated the paper and digital records containing all of S.E.E.'s confidential and proprietary information of S.E.E., including but not limited to all of the design and development information for the Enhanced Product, and all of S.E.E.'s Analytical Product customer information, and had removed the copies from S.E.E.'s facility.

39.    Unbeknownst to Tringali, prior to resigning from S.E.E., Martin and Lee had removed from the S.E.E. facility a portion of S.E.E.'s inventory of the components to be integrated into the Analytical Product and/or the Enhanced Product.

40.    Unbeknownst to Tringali, prior to resigning from S.E.E., Martin and Lee destroyed certain of S.E.E.'s corporate records, including all paper records and digital information regarding the specifications for the Enhanced Product, all computer code written for integration into the Enhanced Product, and all documentation regarding the process developed for assembling and manufacturing the Enhanced Product.

41.    Within two weeks of their resignation from S.E.E. Martin and Lee, as employees, managers, and sole equity owners of Quantum, began to market a product virtually identical to

6

S.E.E.'s product except that it included the features that S.E.E. had discussed and planned to incorporate into the Enhanced Product while Martin and Lee were directors and stockholders of S.E.E.

42.   After Martin and Lee resigned, but while they were still stockholders of S.E.E., Quantum marketed its product by contacting S.E.E.'s existing customers, representatives and distributors to offer them products and services in direct competition with S.E.E.

43.   On information and belief Martin sold Quantum's product to customers that Martin had solicited while he was being paid by S.E.E. to market S.E.E.'s Enhanced Product.

44.   On information and belief, after resigning from S.E.E., Martin and Lee made false statements to S.E.E.'s Analytical Product distributor and certain of its Analytical Product sales representatives Tringali had improperly used corporate funds of S.E.E. for personal purposes, and had engaged in other financial improprieties with respect to the operation of S.E.E.

45.   As a direct and proximate result of Martin's and Lee's conduct, S.E.E.'s revenues fell precipitously, forcing the company to file for Chapter 11 Bankruptcy protection on May 22, 2003.

46.   On March 28, 2004, S.E.E. was forced to convert its Chapter 11 Bankruptcy case to a Chapter 7 liquidation.

COUNT I

7

TRINGALI V. MARTIN AND LEE - BREACH OF FIDUCIARY DUTY

47.  Tringali incorporates the allegations set forth in paragraphs one (1) through forty six (6) as if restated herein.

48.  As shareholders of a closely held corporation, Martin and Lee owed a fiduciary duty of loyalty to their fellow stockholders.

49.  Martin and Lee breached their fiduciary duties to Tringali by conduct including, but not limited to the following acts, all committed while they were still stockholders of S.E.E.:

    a.    Conspiring to start and operate a business that would compete directly with S.E.E. while they owned stock in, and were being paid by, S.E.E.

    b.    Conspiring to compete with S.E.E. by expropriating S.E.E.'s confidential information, including but not limited to the specifications and work product for S.E.E.'s Enhanced Product, and S.E.E.'s database of customers and customer service and purchase histories, sales representatives and service agents;

    c.    Converting all of S.E.E.'s confidential and proprietary information, and some or all of S.E.E.'s inventory of Analytical Product components;

    d.    Selling to S.E.E.'s customers a product that they

had developed for S.E.E. while they were employed
by S.E.E. to do so.

e.   Exploiting economic relationships and sales
opportunities, and other corporate opportunities
that they had developed for S.E.E. while they were
employed by S.E.E. to do so.

f.   Purposefully failing to perform their duties as
employees of S.E.E., most importantly their
responsibility to hire additional software
developer and Application Engineer to insure the
continuity of operation of the S.E.E. for the
purpose of inhibiting S.E.E.'s continued operation
in the event of their departure from S.E.E.

g.   Destroying S.E.E.'s corporate records in order to
inhibit S.E.E.'s continued operation in the event
of their departure from S.E.E.

50.   Martin and Lee's intentional conduct, in violation of
their fiduciary duty, was a direct and proximate cause of
S.E.E.'s failure, and has caused Tringali's interest in S.E.E. to
become valueless.

51.   As a direct and proximate cause of Martin's and Lee's
conduct, Tringali has suffered financial damages.

9

COUNT II

TRINGALI V. MARTIN AND LEE - SLANDER

52.    Tringali incorporates the allegations set forth in paragraphs one (1) through fifty one (51) as if restated herein.

53.    At various times on and after January 9, 2002, Martin and Lee made false statements to S.E.E.'s Analytical Product Distributor and certain of its Analytical Product sales representatives that Tringali had improperly used corporate funds of S.E.E. for personal purposes, and had engaged in other financial improprieties with respect to the operation of S.E.E.

54.    These statements were false, and were made with actual malice.

55.    These statements were intended to prejudice Tringali's profession and business, and were slanderous per-se.

56.    As a result of Martin and Lee's slanderous conduct, Tringali has suffered actual economic losses, emotional distress, and damage to his reputation.

WHEREFORE   the plaintiff, Phillip Tringali, respectfully requests that this court award him damages, together with interest, costs and attorney's fees, against defendants Paul Martin and Jumi Lee, jointly and severally, in an amount sufficient to compensate him for his losses, together with attorneys fees and costs.

Plaintiff claims a trial by jury of all counts so triable.

10

JS 44
(Rev. 7/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Normand J. Bazinet

**DEFENDANTS**

Joanne B. Barnhart, Commissioner, Social Security Administration

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Morris Greenberg
Green & Greenberg
116 Orange Street
Providence, RI 02903

ATTORNEYS (IF KNOWN)

04 12701 MLW

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Action to review the decision of the Commissioner pursuant to 42 U.S.C. Section 405(g) and Section 1383(c)(3).

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/CC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 362 Personal Injury — Med. Malpractice | | ☒ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 365 Personal Injury — Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | | |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 442 Employment | **Habeas Corpus:** | | |
| | ☐ 443 Housing/Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE                    DOCKET NUMBER

DATE

12/23/04

SIGNATURE OF ATTORNEY OF RECORD

*Morris Greenberg*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____ Normand J. Bazinet v.
_____ Jo Anne B. Barnhart, Commissioner, Social Security Administration
_____

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

___    I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710. 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

___    III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

X      IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,   04  12701 MLW
              690, 810, 861-865, 870, 871, 875, 900.

___    V.     150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
                              N/A
_____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?
                                          YES ☐      NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?   (SEE 28 USC §2403)
                                          YES ☐      NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                          YES ☐      NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?
                                          YES ☐      NO ☒

7. DO ALL OF THE PARTIES  IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"),  RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                          YES ☒      NO ☐

        A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

                    EASTERN DIVISION  ☒          CENTRAL DIVISION  ☐

                    WESTERN DIVISION  ☐

        B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES,
              EXCLUDING GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

                    EASTERN DIVISION  ☐        CENTRAL DIVISION  ☐              WESTERN

DIVISION  ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____ Morris Greenberg _____

_____ Green & Greenberg

ADDRESS _____ 116 Orange Street _____

_____ Providence, RI 02903

TELEPHONE NO. _____ 401-331-8989 _____

(Cover sheet local.wpd  - 11/27/00)