UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12708-MLW

FILED
CLERKS OFFICE

2005 MAR 21 ⊃ 2: 24

U.S. DISTRICT COURT
DISTRICT OF MASS

PHILLIP TRINGALI                    )
    Plaintiff                   )
                              )
V.                                  )
                              )
PAUL MARTIN AND JUMI LEE            )
    Defendants                  )

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS

## I.    PRELIMINARY STATEMENT

       This action was commenced by the plaintiff, Phillip Tringali ("Tringali"), against the defendants, Paul Martin ("Martin") and Jumi Lee ("Lee"), on December 27, 2004. The complaint sets forth two causes of action, Count I for alleged breach of fiduciary duty and Count II for slander.

       There are, however, two other prior and pending actions which involve the same claims as set forth in Count I, the first was brought some two years and nine months prior to the instant action. On March 12, 2002, S.E.E., Inc. ("S.E.E."), a corporation controlled by Tringali, brought an action in the Plymouth Superior Court, S.E.E., Inc. v. Quantum Dynamics Int'l, et al, No. 02-306 (the "Plymouth Action"). In the Amended Complaint, Count V alleges breach of fiduciary duty by Martin and Count VI alleges breach of fiduciary duty by Lee. As will be demonstrated below, the allegations in the Plymouth Action regarding breach of fiduciary duty are substantially the same as those in the instant action. Moreover, since S.E.E. has now filed a Chapter 7 petition in bankruptcy[1], it is clear that Tringali is simply attempting to usurp the corporate cause of action in the Plymouth Action in the bringing of this suit.

---

[1] S.E.E. filed under Chapter 7 on March 23, 2004, docket No. 04-12352-WCH.

On May 14, 2002, Martin and Lee brought an action against S.E.E. and Tringali in the Norfolk Superior Court, <u>Paul Martin, et al v. S.E.E., Inc., et al</u>, Civil Action No. 02-801 (the "Norfolk Action"). That action was brought as a derivative action by Martin and Lee as stockholders of S.E.E. as well as for claims against Tringali individually. As will be demonstrated below, the defendants in the Norfolk Action have filed affirmative defenses and a counterclaim also based upon the same allegations of breach of fiduciary duty.

In this action, Martin and Lee have now filed a motion to dismiss based upon the abstention doctrine and the prior pending actions in the state courts, lack of jurisdiction, and the failure to satisfy the diversity requirements.

## II.  **ARGUMENT IN SUPPORT OF MOTION**

1.  <u>Count I Should Be Dismissed Under the Abstention Doctrine</u>

The operative allegations in the instant action and the operative allegations in the Plymouth Action, with respect to breach of fiduciary duty, are substantially the same. In the instant action, Tringali alleges in pertinent part, as set forth in the Complaint paragraphs referred to below, the following:

<u>The Instant Action Complaint</u>

S.E.E. has alleged in the instant action the following:

1.  That in 1996, S.E.E. embarked on a business plan to design, manufacture and market a microspectrophotometry system (the "Analytical Product") (¶9).

2.  That in May 1996, S.E.E. hired Martin as a research analyst to develop the Analytical Product (¶10).

3.  That on October 1, 1996, Lee (Martin's wife), began working at Wavetech a business that provided research and development consulting services to S.E.E. and that approximately six months later she was hired by S.E.E. (¶¶17, 19).

4.  That Martin and Lee were the persons primarily responsible for developing and marketing S.E.E.'s Analytical Product and that they acquired

knowledge of S.E.E.'s product development, trade secrets and confidential information including S.E.E.'s customer database (¶24).

5.    That on December 31, 2001, Martin and Lee organized Quantum Dynamics International, LLC ("Quantum"), with the intent of designing marketing and installing an analytical device to compete with S.E.E.'s product (¶¶31, 33).

6.    That on January 9, 2002, Martin and Lee resigned as officers and directors of S.E.E. (¶37).

7.    In Count I Tringali alleges that Martin and Lee breached their fiduciary duty by operating a business to compete with S.E.E., conspiring to compete with S.E.E. by expropriating S.E.E.'s confidential information, failing to perform their duties as employees of S.E.E. and destroying corporate records, etc. (¶49).

The Plymouth Action

1.    In the Plymouth Action S.E.E. alleged in Counts V and VI of the Amended Complaint (Exhibit "A" hereto), that both Martin and Lee breached their fiduciary duty including:

a.    That Quantum was formed by Martin and Lee on December 31, 2001, as a firm directly competitive to S.E.E. (¶7).

b.    That Martin formed, incorporated and commenced employment with Quantum while an employee, officer and director of S.E.E. (¶22).

c.    That Lee began working for Wavetech on October 1, 1996, approximately six months later was hired by S.E.E. (¶¶23, 24).

d.    That Martin and Lee breached their employment agreement by failing to maintain the confidentiality of S.E.E.'s proprietary information (¶¶33, 38).

2.    On May 20, 2002, S.E.E. filed a memorandum in the Plymouth Action entitled Reply of S.E.E., Inc. to the Opposition of Defendants to S.E.E., Inc.'s Motion for Leave to Amend the Complaint (Exhibit "B" hereto), in which it described its Amended Complaint in the following language on Page 1:

While the defendants were senior executives and corporate directors of SEE, they planned and formed a competing corporation, misappropriated confidential and proprietary information, and are using that information to compete unfairly with SEE.

3.    In a subsequent pleading entitled S.E.E., Inc.'s Opposition to Defendant's Motion to Strike filed on June 11, 2002 (Exhibit "C" hereto), in the introduction section S.E.E. described the Plymouth Action in the following language in the INTRODUCTION:

This case involves a very serious breach of fiduciary duty and theft of trade secrets by the defendants Paul Martin and Jumi Lee from S.E.E., Inc. Martin and Lee were officers, directors, shareholders and employees of S.E.E., Inc. and directed the design, manufacture and sale of S.E.E.'s forensic technology business. While officers, directors, employees, and shareholders of S.E.E., Martin and Lee founded Quantum International to compete directly with S.E.E. for its forensic technology business. Martin and Lee also failed to perform their duties as officers, directors and employees of S.E.E., Inc. and instead used their time and their positions as officers, directors and employees of S.E.E., Inc. to plan and establish Quantum International to compete directly with S.E.E., Inc. and to steal S.E.E., Inc.'s forensic technology business.

4.    On June 14, 2002, Tringali, as president of S.E.E., filed Plaintiff's Answers to Defendants' First Set of Interrogatories (Exhibit "D" hereto).  Of particular significance are Tringali's answers to the following interrogatories:

2.    State all facts on which you base the allegation in Paragraph 15, that "It was clearly understood from the commencement of Martin's employment with S.E.E. that the research and development work for which he was hired, was of a sensitive and very confidential nature and that he would not furnish any of S.E.E.'s confidential information to anyone at any time."

Ans.  …the plaintiff states that Paul Martin was aware of the need for confidentiality of information within the field through his employment with Nanometrics, as set forth in his affidavit.  Further, Paul Martin was a director of the corporation and knew or should have know of the duty of utmost loyalty to the corporation which would include maintaining the confidentiality of the corporations documents and trade secrets.

4.    State all facts on which you base the allegation in Paragraph 19, that "It was clearly understood from the commencement of Lee's association as a consultant and then subsequent employment with S.E.E. that the research and development work for which she was hired, was of a sensitive and very confidential nature and that she would not furnish any of S.E.E.'s confidential information to anyone at any time,

and as part of your answer all documents which evidence or support such allegation.

Ans. Jumi Lee was originally hired as a consultant. Implicit in the hiring and employment of a consultant is the consultant's promise to maintain the confidentiality of all of the client's business information to which the consultant will become privy in the course of fulfilling the terms of its employment. Defendant Jumi Lee was subsequently hired as developmental employee; implicit in the terms of her employment was the continuing and ongoing non-disclosure of work being developed for the employer, S.E.E., Inc. As a director of the corporation Lee knew or should have known of the duty of utmost loyalty to the corporation which would include maintaining the confidentiality of the corporations documents and trade secrets.

11.    State all facts on which S.E.E. bases the allegation in Paragraph 37 that "Martin and Lee have or will disclose to Quantum or others certain of S.E.E.'s trade secrets and confidential information," and as part of your answer:
a.    Describe in detail each of S.E.E.'s trade secrets and confidential information which S.E.E. claims that Martin and Lee have or will disclose to Quantum or others;

Ans. Martin and Lee are in possession of all of S.E.E., Inc.'s trade secrets in existence on January 9, 2002 by virtue of their positions within the corporation as Directors and Officers and key personnel in charge of both the development and the ongoing operations of the manufacturing part of S.E.E., Inc. Since they have complete and intimate knowledge of the entire business of S.E.E., Inc. clearly they have developed and structured the business plan, procedures and product of Quantum in a manner which will best serve Quantum in its direct competition with S.E.E., Inc.

b.    If S.E.E. claims that Martin and Lee have to date made any such disclosure, set forth the date of each such disclosure to Quantum and/or to any other party, of any of S.E.E.'s trade secrets and confidential information;

Ans. ...the plaintiff states that Martin and Lee have disclosed to Quantum all of the confidential information and trade secrets of S.E.E., Inc. both prior to their termination of employment and as Directors and subsequent to that termination. The product of Quantum has been developed and built using the technology and expertise developed and paid for by S.E.E.

5.    In a subsequent pleading, Plaintiff's Amended Answers to Defendants' First Set of Interrogatories, dated September 6, 2002 (Exhibit "E" hereto), the following interrogatories and answers are significant:

2.    State all facts on which you base the allegation in Paragraph 15, that "It was clearly understood from the commencement of Martin's

employment with S.E.E. that the research and development work for which he was hired, was of a sensitive and very confidential nature and that he would not furnish any of S.E.E.'s confidential information to anyone at any time."

<u>Ans.</u>  The terms of Paul Martin's employment were to develop a technical division to manufacture products of S.E.E., for S.E.E.'s sole and exclusive use for which job he was paid by S.E.E. All of the work and subsequent product(s) developed, if any, were the property of S.E.E.  The technical details of the product were critical to the company's ability to successfully compete in the marketplace, all of which was known to Martin.  In addition, as a director, he had an ongoing legal fiduciary obligation to maintain the utmost loyalty to the corporation.

4.    State all facts on which you base the allegation in Paragraph 19, that "It was clearly understood from the commencement of Lee's association as a consultant and then subsequent employment with S.E.E. that the research and development work for which she was hired, was of a sensitive and very confidential nature and that she would not furnish any of S.E.E.'s confidential information to anyone at any time, and as part of your answer all documents which evidence or support such allegation.

<u>Ans.</u>  The facts of the hiring of Jumi Lee are within the knowledge of Paul Martin since he was the representative of S.E.E. who recommended hiring her, first as a consultant and subsequently as an employee.  She was paid by S.E.E. to consult regarding the development of S.E.E. products and then as an employee to develop products for S.E.E. As part of her job, Jumi Lee designed proprietary codes to ensure that only authorized S.E.E. employees could access the software of the instruments.  Jumi Lee also dealt with vendors who provided confidential engineering designs and was the S.E.E. employee who required the vendors to maintain the confidentiality of S.E.E.'s requirements.  Jumi Lee was also responsible or co-responsible with Paul Martin for writing confidentiality agreements to be signed by prospective employee(s) regarding the need to not disclose any information to which such prospective employee might become privy during the interview process.  Lee also testified that all technical intra-office communications were written on forms clearly marked "Confidential."

7.    If you claim that Martin breached his agreement to maintain the confidentiality of S.E.E.'s information and proprietary properties as alleged in Paragraph 26, state in detail all facts on which you base such allegation, and as part of your answer:

<u>Ans.</u>  The plaintiff sates that Paul Martin left S.E.E.'s employment with the complete database of the Corporation on his own computer as well as complete information regarding the Corporation's products. He has contacted vendors, customers and potential customers of S.E.E. to solicit business for his own corporation, Quantum.  But for his possession of the database of S.E.E. most of the persons and companies contacted by him would not be known to him. Also, Quantum has actively sought to acquire the servicing and up-dating of S.E.E. instruments previously sold.  Servicing cannot be done without the use of the tool designed and

6

developed by S.E.E. and a trade secret of S.E.E. to which Quantum and Martin have knowledge only by virtue of the former employment with S.E.E.

11.    State all facts on which S.E.E. bases the allegation in Paragraph 37 that "Martin and Lee have or will disclose to Quantum or others certain of S.E.E.'s trade secrets and confidential information," and as part of your answer:
a.    Describe in detail each of S.E.E.'s trade secrets and confidential information which S.E.E. claims that Martin and Lee have or will disclose to Quantum or others;

Ans.  Martin and Lee are in possession of all of S.E.E., Inc.'s trade secrets in existence on January 9, 2002 by virtue of their positions within the corporation as Directors and Officers and key personnel in charge of both the development and the ongoing operations of the analytical division of S.E.E., Inc.  With the knowledge of the trade secret of the research and development of the 2000 operating platform for the next generation of S.E.E. products, Martin and Lee have enabled Quantum to offer an instrument to compete with the instrument(s) of S.E.E. using the 2000 operating platform information developed for S.E.E.  Since they have complete and intimate knowledge and documentation of the business forecast of S.E.E., Inc. for the year 2002, clearly they have been able to developed and structured the business plan, including opportunities to be pursued, of quantum in a manner which will best serve Quantum in its direct competition with S.E.E., Inc. Quantum advertises it ability to service S.E.E.'s products, which it could perform only if S.E.E.'s trade secret tool to access the instrument is available to Quantum.

b.    If S.E.E. claims that Martin and Lee have to date made any such disclosure, set forth the date of each such disclosure to Quantum and/or to any other party, of any of S.E.E.'s trade secrets and confidential information;

Ans.  The plaintiff states that Martin and Lee have disclosed to Quantum all of the confidential information and trade secrets of S.E.E., Inc. upon the organization of Quantum, in December 2001, prior to their resignation as employees and as Directors and subsequent to that termination.  The product of Quantum has been developed and built using the technology and expertise developed and paid for by S.E.E., in particular the 2000 operating platform of the Quantum instrument.

6.    In another pleading entitled Plaintiff's Answers to Defendant Paul Martin's First Set of Interrogatories dated October 1, 2002 (Exhibit "F" hereto), the following answers to interrogatories are also significant:

1.    State all facts on which you base the allegation in Paragraph 42 that Martin failed to perform his obligations to S.E.E., setting forth each such obligation which you contend that Martin failed to perform...

<u>Answer:</u>    During the time of his employment at S.E.E., Martin was instrumental in forming and became a principal in the corporation Quantum which was intended to and presently does directly compete with S.E.E. At the time that Martin left S.E.E., he took with him on his personal computer, which has been used during he employment, confidential files of S.E.E., especially those relating to customers' name, addresses and telephone numbers, contacts, and vendors, as well as files concerning forecasts of potential or probable business to be pursued by S.E.E. in the next year or so. As a key employee of S.E.E. Martin knew of the confidential nature of the information to which he was privy and was in part responsible for maintaining the confidentiality of S.E.E.'s information vis-à-vis non-employees. Within the corporation, memos to other employees were on paper marked "confidential." As an employee, officer and director, Martin had an obligation to be loyal to his employer's interests and to maintain the confidentiality of his employer's information.

6.    State all facts on which you base the allegation in Paragraph 53, that Martin breached his fiduciary duties to S.E.E. including each act which you claim to constitute a breach of such duty...

<u>Answer:</u>
    Martin had a duty to inform S.E.E. that he was a principal in a competing company while he was employed by and a key officer and director of S.E.E. He did not do so. At the meeting between the parties on Jan. 9, 2002, he still did not disclose that a competing company had been formed. Martin had a duty to maintain the trade secrets of S.E.E. and its confidential information. When he left the company, he took with him all of this confidential information on his laptop. This information has been made available to the competing company Quantum. The knowledge of the financial information of the S.E.E. has been available to Quantum enabling it to bid competitively against S.E.E.

7.    State all facts on which you base the allegation in Paragraph 58, that Lee breached her fiduciary duties to S.E.E. including each act which you claim to constitute a breach of such duty...

<u>Answer:</u>
    Lee had a duty to inform S.E.E. that she was a principal in a competing company while she was employed by and a key officer and director of S.E.E. She did not do so. At the meeting between the parties on Jan. 9, 2002, she still did not disclose that a competing company had been formed by her. Lee had a duty to maintain the trade secrets of S.E.E. and its confidential information. When she left the company, she took with her all of this confidential information on her laptop, as well as all the financial information of S.E.E. This information has been made available to the competing company Quantum. The knowledge of the financial information of the S.E.E. has been available to Quantum enabling it to bid competitively against S.E.E. Lee also took with her all of the files containing the trade secret development of the 2000 platform for the next generation of S.E.E. products.

It is clear from the pleadings in the Plymouth Action that the same allegations regarding breach of fiduciary duty are substantially the same as in the instant action.

<u>The Norfolk Action</u>

1.    In the Norfolk Action S.E.E. and Tringali filed a pleading entitled Defendant S.E.E., Inc. and Phillip Tringali's Answer to Plaintiffs' Complaint and Counterclaim (Exhibit "G" hereto).  Tringali set forth certain affirmative defendants which essentially incorporate the same allegations in the instant action alleging breach of fiduciary duty in the Second and Third Defenses:

> Second Defense:  The plaintiffs falsely and maliciously, and without reasonable and probable cause, have alleged they are acting on behalf of the corporation and in the best interests of the corporation even while they are seeking to destroy the corporation by misappropriation and use of the corporation's trade secrets and confidential information, are actively interfering with the corporation's economic opportunities and even thought [sic] they are stockholders, are engaging in active competition with the corporation.

> Third Defense:  The plaintiffs are estopped from obtaining any relief in this action by reason of their representations and conduct that are in breach of their fiduciary duties as stockholders of the defendant corporation, which representations and conduct was intended to induce the defendant to place the said plaintiffs in positions of power and trust and with access to all confidential information and trade secrets of the defendant and as a result, the plaintiffs misappropriate confidential information and trade secrets, all to the detriment of the defendant.

2.    In the Counterclaim it was alleged in Count I, Paragraph 15 – 24, that Martin and Lee committed breach of fiduciary duty by organizing a competing business while stockholders of S.E.E., that they resigned without notice, that they failed to develop the S.E.E. product, and that within two weeks of their resignation they contacted S.E.E.'s vendors, representatives and customers with a product virtually identical to S.E.E.

3.    Tringali in his Answers to interrogatories in the Norfolk Action entitled Answers of the Defendant Phillip Tringali to First Set of Interrogatories of Paul Martin (Exhibit "H" hereto), stated:

1.    State all facts on which you base the allegation in Paragraph 10 of the Counterclaim that Jumi Lee ("Lee") transferred S.E.E.'s confidential financial information to her laptop computer...

Ans.  Prior to her resignation, Lee was observed transferring data from the S.E.E. Computer(s) to her personal laptop.  Lee also directed a secretary of S.E.E. to make copies of financial and insurance information as well as information pertaining to the Maine property.

5.    State all facts on which you base the allegations in Paragraph 22 of the Counterclaim that the plaintiffs contacted S.E.E.'s vendors, representatives and customers "with a product virtually identical to S.E.E.'s product...

Ans.  The product being marketed by the plaintiffs' corporations uses the same software and operates in the same manner as the product of S.E.E. except for the use of the 2000 platform, which was developed while the plaintiffs were employed by S.E.E.

4.    Answers of the Defendant S.E.E., Inc. to First Set of Interrogatories of Plaintiff Paul Martin (Exhibit "I" hereto), the following answers are significant:

2.    State all facts on which you base the allegations in the Second Defense that the plaintiffs have misappropriated and used S.E.E.'s trade secrets and confidential information, are interfering with S.E.E.'s economic opportunities and are engaged in active competition with S.E.E...

Ans.  The plaintiffs have established two competing corporations which are in direct competition to S.E.E. in a limited, specific marketplace.  By virtue of the transfer of all of the S.E.E. confidential information contained on the corporation computers to Martin and Lee's personal laptop computers, the plaintiffs have contacted customers, agents and vendors of S.E.E. to establish the develop their own business.  The plaintiffs have listed as their own product, the products of S.E.E. in the bidding process to obtain business from customers.  The plaintiffs have issued unauthorized orders which have interfered with job orders to vendors.  The potential customers of the plaintiffs' corporations are the same customers as those of S.E.E., Inc.

3.    State all facts on which you base the allegations in the Third Defense that the plaintiffs are in breach of their fiduciary duties as stockholders of S.E.E...

Ans.  The stockholders of a small, closely held corporation owe a fiduciary duty to the other stockholders and the corporation.  This duty includes taking o action which would harm the corporation.  The plaintiffs have incorporated two corporations whose purpose is to manufacture a competing product in the same marketplace as the product(s) and marketplace of S.E.E.  They are actively seeking to have S.E.E. customers buy their product(s) rather than S.E.E.'s product(s).

4.    State all facts on which you base the allegations in the Fifth Defense that the plaintiffs' conduct or actions have injured or damaged S.E.E...

Ans.  The plaintiffs' deliberate failure to hire additional personnel left the corporation without a viable research department if the resignations of the plaintiffs were accepted, and unable to proceed with immediate further development of product; the deliberate interference with S.E.E.'s order to Dynamic Light Control delayed the completion of product by S.E.E. to its economic harm; the use of processes such as the 2000 platform developed by and for S.E.E., and the removal of all of the development information from the S.E.E. computers and corporate files have injured the S.E.E. corporations ability to compete with the product the plaintiff alleges to be theirs.

The abstention doctrine has evolved permitting the withholding of federal jurisdiction over actions commenced in the U.S. District Court in favor of concurrent state-court proceedings, Colorado River Water Conservation District v. U.S., 424 U.S. 800 (1976).  In Colorado River and subsequent decisions, the Supreme Court has listed a number of factors to be considered in determining abstention by the federal courts in favor of concurrent state proceedings:

1.    which court first assumed jurisdiction over the matter at issue;

2.    avoidance of piecemeal litigation;

3.    the order in which the actions commenced and the progress made in each;

4.    whether federal or state law provides the rule of decision on the merits; and

5.    the adequacy of the state-court proceedings to protect the rights of the litigants.

The foregoing factors are present in this case.  The state courts, Plymouth and Norfolk, assumed jurisdiction over the matters almost three years ago and there has been discovery proceedings in both cases, including recently the deposition of Tringali in the Norfolk Action.  Proceeding with this case would add to rather than avoid piecemeal litigation.  Clearly, both state court actions are grounded on state law and there is no showing by Tringali of any inadequacy in the state court proceedings.  Simply put, the instant action alleging breach of fiduciary duty under Count I is simply an attempt to usurp

11

the corporate cause of action belonging to S.E.E., Inc., which is now pending in the Plymouth Action, and to further usurp the duties and discretion of the trustee in bankruptcy. The prosecution of the Plymouth Action is subject to the determination of the bankruptcy trustee and that does not vest Tringali with the authority to substitute himself in place of the corporation. See, also, Solomon S.A. v. Scott USA L.P., 117 FRD 320, 321 (D.Mass. 1987):

> A district court may, in its discretion, defer or abate proceedings where another suit, involving identical issues, is pending in either a federal or state court, and where it would be duplicative, uneconomical, and vexatious to proceed otherwise. (citations omitted)

Therefore, the defendants respectfully request that the Court dismiss Count I with prejudice.

2.    The Motion To Dismiss Should Be Allowed On The Basis Of Lack of Jurisdiction.

Pursuant to Mass. G.L. c.223A §3, a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's conduct, which include the following: [2]

(a)    transacting any business in this commonwealth;

(c)    causing tortious injury by an act or omission in this commonwealth;

(d)    causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

A claim of personal jurisdiction over a non-resident defendant such as the defendants presents a two-fold inquiry: "(1) as the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under state law consistent with basic due process requirements mandated by the

---

[2] The other sub-provisions (b), (e)–(h) are not relevant here.

United States Constitution." <u>Stanton v. AM General Corp.</u>, 50 Mass.App.Ct. 116, 117 (2000) quoting <u>Good Hope Indus., Inc. v. Ryder Scott Co.</u>, 378 Mass. 1, 5-6 (1979). "Jurisdiction is authorized only where the answer to both inquiries is yes." <u>Cunningham v. Ardrox, Inc.</u>, 40 Mass.App.Ct. 279, 281 (1996).

The question of whether a defendant's activities constitute the transaction of business in the Commonwealth for purposes of jurisdiction under §3(a) of the long arm statute is assessed on a case by case basis. <u>Droukas v. Divers Training Academy</u>, 375 Mass. 149, 156-157 (1978). This assessment "calls for an evaluation of the relations between the parties, their respective activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and the Commonwealth of Massachusetts." <u>Telco Communications, Inc. v. New Jersey State Firemen's Mut. Benevolent Assoc.</u>, 41 Mass.App.Ct. 225, 228-29 (1996). The sources of information for this analysis are the complaint and any affidavits filed by the parties. <u>Id.</u> at 229. When asserting jurisdiction based on the Massachusetts long arm statute, "[a] plaintiff has the burden of establishing facts to show that the ground relied on under §3 is present." <u>Id.</u> at 230.

Here, Tringali has failed to allege any facts with regard to the transacting of any business by the defendants in Massachusetts for purposes of jurisdiction under §3(a) or any facts regarding causing any tortuous injury under §3(c) or (d). The only allegation in the complaint with regard to conduct in Massachusetts is set forth in Paragraph 5 of the complaint, which states as follows:

> 5.    Venue is proper under 28 U.S.C. 1391 because all of the acts and omissions giving rise to the claims herein occurred in the Commonwealth of Massachusetts.

Tringali has failed to alleged any facts which would permit this Court to conclude that his claim arises out of any activities on the part of either Martin or Lee necessary to establish personal jurisdiction under the Massachusetts Long Arm Statute. Moreover, the complaint fails to set forth any allegations

upon which a reasonable inference could be drawn that either defendant had minimum contacts with Massachusetts sufficient to satisfy the due process clause. The complaint therefore, within its "four corners," as to which a motion to dismiss is properly directed, is totally deficient with regard to the issue of jurisdiction.

Tringali cannot satisfy the constitutional due process requirement in that he has filed to show, let alone allege, that the defendants have purposely established "minimum contacts" with Massachusetts such that they could "reasonably anticipate being haled into court in this state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980). It is essential for Tringali to show and allege that there was some act by which the defendants availed themselves of the privilege of conducting activities within the forum state thereby invoking the benefits and protections of its laws, Burger King Corp. v Rudzewicz, supra at 475.

Based upon the complaint on its face, Tringali has failed to allege any facts which would establish jurisdiction and, therefore, both Counts I and II should be dismissed on the grounds of lack of jurisdiction.

3.    The Plaintiff Has Failed To Establish Diversity Jurisdiction.

Tringali claims that jurisdiction is proper under 28 U.S.C. §1332, as alleged simply in Paragraph 4, that "the amount in controversy is greater than $75,000.00." Defendants challenge this allegation and state that there is nothing in the complaint that shows, in any way, that the amount in controversy does in fact exceed the threshold amount of $75,000.00.

While the failure to establish diversity jurisdiction as to the amount in controversy is grounds for this Motion as to both Counts I and II, it should be pointed out that in the event that the Court dismisses Count I based upon the abstention doctrine and the actions pending in the state courts, then in addition to the lack of jurisdiction with respect to Count II alleging slander,

14

there is a lack of diversity jurisdiction with respect to the amount in controversy also as to Count II.

The First Circuit has held in <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1 (1st Cir. 2001), that when the allegation with respect to the damages is challenged, then the burden is upon the plaintiff to allege with sufficient particularity the facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.

The court stated in <u>Frederick v. ConAgra, Inc.</u>, 713 F.Supp. 41, 47 (D.Mass. 1989), that when the defendant files a motion to dismiss the plaintiff then has the burden of proving jurisdiction "by showing that it does not appear to legal certainty that its claim is for less than the jurisdiction amount."

## III.    <u>CONCLUSION</u>

For the reasons set forth above, the defendants respectfully request that the Court dismiss the complaint with prejudice.

March 18, 2005

Attorney for defendants,

Roger S. Davis
BBO No. 116320
DAVIS & RUBIN
One Bowdoin Square
Suite 901
Boston, MA  02114-2919
(617) 742-4300

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument was served upon the attorney of record for each other party at his respective address as shown by the pleadings of record herein by first class mail on _10 hand on 3/18/05_ .

QDI9:USDC:MEMODISM

15