UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
|     Defendants | ) |

## PLAINTIFF PHILLIP TRINGALI'S OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSIONS TO RESPOND TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff, Phillip Tringali hereby opposes plaintiffs Paul Martin's and Jumi Lee's motion for extensions to respond to paper discovery. In support, Mr. Tringali states:

1. Mr. Tringali offered to grant defendants' requests for extensions if defendants agreed to respond to discovery instead of interposing bad-faith objections. They refused.

2. The present motion exemplifies the objections plaintiff sought to prevent. Defendants' counsel has repeatedly suggested that their discovery obligations should be stayed pending a decision on their motion to dismiss. Defendants' now ask that they be excused from discovery related to Count I of Tringali's complaint until the Court rules upon this motion.

3. Defendants' motion to dismiss argues that this court should abstain from Count I of this matter because similar claims brought by S.E.E., Inc. against the defendants are still pending in state court, and have become the property of S.E.E., Inc.'s trustee in bankruptcy. Defendants argues that Plaintiff is attempting to usurp the rights of the trustee.

4. **Defendants fail to disclose that they settled all of S.E.E.'s claims against them**

**over two (2) months ago. On August 1, 2005, the trustee settled all of its claims against the defendants in exchange for $5,000.00 and any claims the trustee might have had against Tringali. The Bankruptcy Court approved this settlement on August 18, 2005. See Exhibit 1.**

5.  Defendants have also suggested that they will object to the pending discovery because it seeks confidential information, despite plaintiff's offer to stipulate to a confidentiality order.

6.  Defendant's conduct is part of a well calculated strategy of litigation by attrition. Plaintiff has endured non-stop harassment regarding his automatic disclosure statement and responses to discovery, including a groundless motion to compel. Meanwhile, defendants have made only a token effort to comply with their disclosure obligations (See Exhibit 2), and actively seek to evade their discovery obligations through the present, frivolous motion.

7.  Defendants' bad-faith conduct that has already led plaintiff to file one motion for Rule 11 sanctions.[1] Plaintiff should not be forced to file repeated motions for sanctions just to force defendants to obey the Rules of Civil Procedure.

Wherefore, plaintiff Phillip Tringali respectfully requests that defendants' motion for an extension be DENIED, and that plaintiff be awarded his fees associated with opposing this motion.

---

[1] This motion is pending. Plaintiff seeks sanctions because defendants represented that plaintiff's complaint contains no allegations of conduct occurring in Massachusetts when, in fact, it contains two entire pages of such allegations.

Phillip Tringali
By his attorneys


<u>//Daniel Treger//</u>
Jeffrey J. Phillips, P.C.
B.B.O. #398480
Daniel Treger, Esq.
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| In Re: ) | |
| ) | Chapter 7 |
| S.E.E., Inc. ) | Case No. 04-12352-WCH |
| ) | |
| Debtor ) | |

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY AND FOR APPROVAL OF STIPULATION OF SETTLEMENT**

TO THE HONORABLE WILLIAM C. HILLMAN, BANKRUPTCY JUDGE:

Now come Debora Casey ("Trustee"), Chapter 7 Trustee of the bankruptcy estate of Chapter 7 Trustee of the bankruptcy estate of S.E.E., Inc. ("Debtor"), and respectfully moves pursuant to Federal Bankruptcy Rule 9019(a) and MLBR 9019 for an Order authorizing the Trustee to compromise the estate's controversies with and Paul Martin ("Martin") and Jumi Lee ("Lee") relative to certain claims and counterclaims asserted by the Debtor against Lee and Martin in non-bankruptcy litigation matters identified hereinafter. Briefly, pursuant to the terms of this compromise, Martin and Lee will pay to the estate $5,000 and withdraw their several proofs of claim in the aggregate amount of approximately $251,970 and they will be given an assignment of the claims and counterclaims as set forth hereinafter, all of which is set forth with more particularity hereinafter and in the Stipulation.

In support hereof, the Trustee states as follows:

**PRELIMINARY STATEMENT**

1. On March 23, 2004, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. Debora Casey is the duly appointed and acting Chapter 7 Trustee of the Debtor's bankruptcy estate.

## BACKGROUND

3.     The Debtor was in the business of designing, programming and selling and installing an analytical instrument known as a microspectrometer which incorporates software and hardware for use in the forensic science field for investigation of trace evidence.

4.     Philip Tringali ("Tringali") was the principal shareholder, officer and employee of the Debtor.

5.     Martin and Lee were employees, officers and minority shareholders of the Debtor.

6.     Martin and Lee terminated their employment with the Debtor in or about January 2002.

7.     Tringali and the Debtor allege that Martin and Lee organized a competing business to the Debtor's while still employed by the Debtor.

8.     Tringali and the Debtor allege that Martin and Lee breached an implied contract with the Debtor, misappropriated trade secrets and confidential information, and breached a duty owed to the Debtor and Tringali.

9.     On or about March 22, 2002, the Debtor filed a complaint in the Plymouth Superior Court, *S.E.E. Inc., v. Martin, et al.,* Civil Action No. 02-306 ("Plymouth Action") asserting the claims based upon the allegations set forth in the previous paragraph as well as a claim under M.G.L. c. 93. Martin and Lee denied the allegations and are vigorously defending the Plymouth Action.

10.     In or about May 2002, Martin and Lee filed a complaint in the Norfolk Superior Court, *Martin, et al. v. S.E.E., Inc.,et al.,* Civil Action Number 02-801 ("Norfolk Action"), and shortly thereafter filed their First Amended Complaint. The Norfolk Action was brought as a derivative action on behalf of the Debtor and for common law causes of action alleging Tringali's

misuse of corporate funds in connection with the purchase and use of a vacation home, seeking the enforcement of a stock repurchase agreement claiming a value of $185,555, and for payment of vacation time and commissions earned, and asserts claims against Tringali for, *inter alia*, beach of fiduciary duty to Martin, Lee and the Debtor, breach of a covenant of good faith and fair dealing, breach of contract and payment of vacation time and commissions earned; and

11. Tringali and the Debtor filed an answer denying Martin and Lee's allegations and asserting counterclaims on behalf of the Debtor similar to the claims advanced in its initial complaint in the Plymouth Action.

12. Prior to the commencement of the instant Chapter 7 Case, on or about May 22, 2003, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts, Chapter 11 Case No. 03-14379-WCH. The Debtor removed the Plymouth Action and Norfolk Action to the Bankruptcy Court in its Chapter 11 case commencing adversary proceeding numbers 03-1224 and 03-1225.

13. The Plymouth Action and Norfolk Action are principally a shareholder dispute, and on or about December 11, 2003, the Bankruptcy Court abstained from the Debtor's Chapter 11 case and the two related adversary proceedings, all of which were subsequently dismissed.

14. The Trustee, by her counsel, has reviewed all of the litigation pleadings generated in the Plymouth Action and the Norfolk Action, as well as the pleadings filed in the Debtor's Chapter 11 case and the related adversary proceedings, and reviewed discovery requests and responses and certain deposition transcripts generated in connection with the litigation matters.

15. The Trustee, by her counsel, has assessed the merits of the claims and counterclaims asserted by the Debtor in the Plymouth Action and Norfolk Action.

16. Martin and Lee filed several proofs of claim in the approximate aggregate amount of

$251,970 ("Martin and Lee Claims") in the Debtor's Chapter 7 case. These claims represent more than 60% of the amount of claims of general unsecured creditors, and the withdrawal of these claims will more than double the percentage of dividend paid to the holders of allowed general unsecured claims.

17. A real dispute exists between the parties.

18. The parties acknowledge the cost, expense, uncertainties, and delays associated with any litigation matter and have agreed to settle and resolve the pending disputes among the parties.

## **THE SETTLEMENT**

19. Subject to the entry of an Order of the Bankruptcy Court approving this compromise and the Stipulation:

    i. Martin and Lee, jointly and severally, will pay to the Trustee $5,000 and withdraw the Martin and Lee Claims. The entry of an Order of the Bankruptcy Court approving this Stipulation shall effect the withdrawal of the Martin and Lee Claims without the need for further documentation.

    ii. In consideration of the foregoing, the Trustee will assign to Martin and Lee the claims and counterclaims asserted by the Debtor in the Plymouth Action and Norfolk Action. The entry of an Order of the Bankruptcy Court approving this compromise and Stipulation shall effect the assignment of such claims and counterclaims without the need for further documentation.

    iii. Effective upon the Bankruptcy Court's approval of this compromise and the Stipulation, and without the need for further documentation, Martin and Lee, for themselves and their employees, predecessors, successors, affiliates, companies, subsidiaries, assigns, partners, principals, attorneys, insurers, agents, representatives,

and heirs release the Trustee and the Debtor's bankruptcy estate of and from any and all claims, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands, and liabilities of every name and nature, both in Law and Equity.

iv. Effective upon the Bankruptcy Court's approval of this compromise and the Stipulation, and without the need for further documentation, other than the obligations arising under the Stipulation and the claims and counterclaims that are being assigned hereby, the Trustee, for the Debtor and the estate, releases Martin and Lee of and from any and all claims, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands, and liabilities of every name and nature, both in Law and Equity.

v. The compromise and Stipulation are conditioned upon a final Order of the Bankruptcy Court.  Upon such approval, this compromise and the Stipulation shall be binding upon and inure to the benefit of the parties thereto and their respective successors and assigns.

vi. No statements or recitals contained in this Motion or in the Stipulation shall be deemed an admission by either party and are contained herein and therein for settlement purposes only.

## BASIS FOR ALLOWANCE OF REQUESTED RELIEF

20. Pursuant to the proposed compromise, (i) Settlement Payment, and (ii) the withdrawal of the Martin and Lee Claims will settle all claims that the Debtor and the estate on the one hand, and Martin and Lee on the other could assert against one another without the need for further litigation.

21. The Trustee believes that the value of the proposed compromise equals or exceeds the net results that could be expected if this matter were litigated to a conclusion for the following reasons:

22. The Trustee has assessed the merits of the claims asserted by the Debtor against Martin and Lee. The analysis suggests the claims are speculative in nature, and it would be a questionable use of resources to expend significant money in pursuing the claims the Debtor presses. The claims are, essentially, grounded on the alleged misappropriation of trade secrets from Debtor by Martin and Lee who are former employees of the Debtor and who are spouses. They have been sued along with a competing business they incorporated shortly before their departure from the Debtor.

23. The Debtor was a small business consisting of little more than Martin and Lee, scientists handling the technical development of products for the Debtor, and Tringali, the Debtor's President who handled sales. The Debtor developed spectrometers for law enforcement use. After several years Tringali and Martin and Lee had a falling out, Martin and Lee quit, and they developed their own competing business. Tringali then sued, essentially claiming Martin and Lee betrayed the Debtor by stealing trade secrets, thereby unfairly competing with the Debtor. The Debtor's initial suit then sparked a further exchange of litigation between the Debtor and Martin and Lee. In response to the Norfolk Action, the Debtor brought counterclaims similar to the claims advanced in

its initial complaint against the Martin and Lee. In addition, Tringali later still filed his own individual action against the defendants in the US District Court (Boston), raising yet again similar claims to those originally brought by the Debtor in the Plymouth Action, this time in his role as a shareholder of the Debtor. Although the Debtor raises a number of claims against Martin and Lee in the Plymouth Action and Norfolk Action (e.g., averring Martin and Lee manipulated the Debtor's financial records to their advantage), at the core of the most substantial claims is the allegation of unfair theft of trade secrets and consequent unfair competition by the Martin and against the Debtor.

24.    In claiming theft of trade secrets by former employees the Debtor has a heavy burden to establish its "crystal clear" interest in the knowledge and skills allegedly misappropriated by the Martin and Lee. The Debtor must establish that the Martin and Lee were not simply using their own accumulated knowledge and skills. *Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass. App. Ct. 254 (1980). The analysis of claims such as that presented by the Debtor is of necessity highly fact specific. In order to assess whether information is genuinely a trade secret, six factors are employed:

> (1) the extent to which the information is known outside of the business; (2) the extent to which is known by employees and others in the business; the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the amount of effort or money expended by the employer in developing the information and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Warner-Lambert Company v. Execuquest Corp.*, 427 Mass. 46, 49 n. 8 (1998).

This standard presents formidable obstacles for the Debtor to surmount. The nub of the problem is that Martin and Lee appear to have been the heart and soul of the Debtor's accumulated technical knowledge and expertise. Indeed, the very nature of Martin and Lee's education and professional experience looks to have been in the field of science and technical development. The

Debtor never had the Martin and Lee sign any non-competition or nondisclosure agreements. Nonetheless, in its claims the Debtor is left in the position of having to argue that Martin and Lee should not be allowed to use their own scientific training, skills and expertise – which Martin and Lee brought to the Debtor, and not vice versa – to compete against the Debtor.  This does not appear to be a promising theory of recovery for the debtor under applicable law, especially considering the Debtor chose not have Martin and Lee agree to any contractual limits on the use of their own knowledge or skills.

25.   As the *Warner* case makes clear, this is not to suggest that the Debtor's case is impossible or might not prevail in some way or on some theory.  The problem here is that the facts developed thus far are not favorable, and the witnesses with the best knowledge of what Martin and Lee were doing in the months leading up to their departure from the Debtor are Martin and Lee themselves.  This factual deficit applies to all of the Debtor's claims, whether for asserted financial manipulation by Martin and Lees, or for theft of trade secrets/unfair competition/tortious interference with advantageous relations.  Compounding this shortage of supporting facts is the failure of the Debtor to aggressively seek and obtain discovery from defendants at the outset of the initial Debtor's lawsuit.  Although one approach to this case would be to undertake such discovery, this would be a decidedly expensive undertaking, and given the uncertain merits of the case it would not appear to be a prudent expenditure of time or money.

26.   The Plymouth Action and Norfolk Action are still in the discovery stages and a substantial amount of time and expense is required to see these matters to a conclusion.  Martin and Lee have vigorously litigated these matters and have indicated, through their counsel, that they would appeal any adverse outcome in those litigation matters.  Taking into consideration the fees and expenses that would have to be incurred in litigating the matters to a conclusion the Trustee

estimates that compromise allows for at least the same net result which could have been expected had the Trustee succeeded in this dispute. The compromise resolves the dispute without the cost, expense, uncertainties, and delays associated with any litigation matter.

27.     Among the factors to be considered by the Court when called upon to approve or reject a proposed compromise are the following:

> (1) the probability of success were the claim to be litigated--given the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation--measured against the more definitive, concrete and immediate benefits attending the proposed settlement, *see Kowal v. Malkemus (In re Thompson ),* 965 F.2d at 1141 n. 5, 1145 (1st Cir.1992), (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement.
>
> *Quoting In re Healthco Intern., Inc. (Hicks, Muse & Co., Inc. v. Brandt, Trustee),* 136 F. 3d

183, 50 (1st Cir. 1998) *(citing Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir. 1995); *In re Texaco, Inc.,* 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988) *(citing Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

28.     Based upon the amount of funds now on hand as well as anticipated additional income into the estate, and accounting for the expected administrative expenses of the estate and the withdrawal of the Martin and Lee claims, the Trustee anticipates that a substantial dividend, exceeding 50%, will be paid to general unsecured creditors. That amount would be reduced by 30% if the Martin and Lee Claims were allowed.[1]

29.     Since the proposed compromise will result in at least the same net benefit to the estate as compared to prosecuting all matters to a successful conclusion, the approval of the proposed compromise is well within the bounds of the Court's discretion. *See In re Healthco Intern., Inc.*

---

[1] The Trustee anticipated objecting to these claims which she expects would also have been an expensive and lengthy process.

*(Hicks, Muse & Co., Inc. v. Brandt, Trustee),* 136 F. 3d at 50 (in considering its approval of a settlement the expectation is that the Bankruptcy Court assesses and balances the value of the claims being compromised against the value of the proposed settlement). *Citing Jeffrey v. Desmond,* 70 F. 3d at 185.

    30.    Moreover, the Trustee expects that Norfolk and Plymouth Actions could go on for years to come precluding the closing of this case any time soon.

    31.    Copies of this Motion and the Stipulation are being served on the US Trustee, the Debtor all creditors, other parties in interest and parties appearing in this case.

    WHEREFORE, the Trustee respectfully requests that the Court enter an Order:

    1.    Approving her compromise with the Debtor as set forth herein;

    2.    Approving the Stipulation of Settlement which is filed as an attachment hereto; and

    3.    Granting such other and further relief as is just and proper.

Debora Casey, Chapter 7 Trustee
By her attorneys,

/s/ Neil D. Warrenbrand
Neil D. Warrenbrand, BBO# 556938
Fitzpatrick & Warrenbrand LLP
One McKinley Square
Boston, MA 02109
Tel.: (617) 720-2286
Fax: (617) 723-1710
Email: ndwlaw@aol.com

Dated: August 1, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12708-MLW

PHILLIP TRINGALI )
    Plaintiff )
)
V. )
)
PAUL MARTIN AND JUMI LEE )
    Defendants )

**DEFENDANTS' INITIAL DISCLOSURES
PURSUANT TO RULE 26(a)(1)**

The defendants provide the following initial disclosures:

A.    Individuals having discoverable information are as follows:

    Paul Martin and Jumi Lee, 2400 N. Lincoln Avenue, Altadena, California, Tel: 626-296-6422

    Phillip Tringali, 98 Walnut Street, Halifax, Plymouth, Massachusetts, Tel: 781-293-5974

B.    Until such time as further discovery is taken, at this time the following documents:

    Documents relating to meetings of the Board of Directors of S.E.E.

    Balance sheets, financial statements, profit and loss statements

C.    Computation of damages: Not applicable.

D.    There are no insurance agreements applicable.

March 31, 2005                          Attorney for defendants,

                                                      Roger S. Davis
                                                      BBO No. 116320
                                                      DAVIS & RUBIN
                                                      One Bowdoin Square, Suite 901
                                                      Boston, MA 02114-2919
                                                      (617) 742-4300

QDI9:USDC:DISCLOSURES