UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF PHILLIP TRINGALI'S STATEMENT OF DISPUTED FACTS AND
LEGAL ELEMENTS PURSUANT TO FED.R.CIV.P. 56.1**

**I.    PLAINTIFF'S RESPONSE TO DEFENDANT JUMI LEE'S STATEMENT OF
UNDISPUTED FACTS**

1.    Undisputed.

2.    Undisputed.

3.    Undisputed.

4.    Undisputed.

**II.    PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS CREATING A
TRIABLE ISSUE**

1.    This matter involves a dispute between shareholders S.E.E., Inc., a closely held

Massachusetts Corporation.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 3.

2.    Count I of plaintiff's complaint alleges that defendants breached their fiduciary

duty to plaintiff, a fellow shareholder in S.E.E., Inc., a closely held Massachusetts Corporation,

by appropriating S.E.E.'s intellectual property, confidential information and good will, and by

1

diverting corporate opportunities that rightfully belonged to S.E.E., Inc.  Plaintiff's Complaint, ¶¶ 1-52.

3.      Count II of Plaintiff's complaint alleges that defendants made defamatory statements about him to S.E.E.'s distributors and sales representatives.  Plaintiff's Complaint, ¶¶ 44, 53-55.

4.      Defendants are married.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 4.

5.      Until January 2002, defendants were also employees, officers and directors of S.E.E., Inc   Exhibit "1", Affidavit of Phillip Tringali, ¶ 5.

6.      Immediately after leaving S.E.E., Inc., defendants began competing directly with S.E.E., Inc. through a corporation named Quantum Dynamics.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 6.

7.      In a claim that S.E.E. brought against Quantum Dynamics in Plymouth Superior Court, the defendants were compelled to produce telephone records for their home telephone number and their cell telephone numbers.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 7.

8.      These records revealed that during the two months after they resigned from S.E.E., the defendants contacted almost all of S.E.E.'s sales representatives, distributors, vendors, suppliers, employees, existing and prospective customers.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 8.

9.      Several of S.E.E., Inc.'s sales representatives and distributors informed Phillip Tringali that defendant Paul Martin had asked them to represent a competing corporation the defendants had formed.  Martin also told them that Mr. Tringali had improperly used S.E.E. funds and assets for his personal use.  Exhibit "1" Affidavit of Phillip Tringali, ¶ 9.

2

10.     After Jumi Lee left S.E.E., Inc., notes were discovered on her computer that revealed she harbored significant personal animosity towards Mr. Tringali.  See Exhibit "1", Affidavit of Phillip Tringali, ¶ 13; Exhibit "2".

11.     Jumi Lee was S.E.E.'s Vice President of Operations.  Her duties required her to interact with all of S.E.E.'s business associates, including its sales representatives and distributors.  See Exhibit "1", Affidavit of Phillip Tringali, ¶ 14.

12.     Plaintiff is unable to respond to defendant Jumi Lee's motion for partial summary judgment in this matter because discovery is incomplete.  Discovery has not closed in this matter, and, in fact, no scheduling conference has been held.  Exhibit "3", Affidavit of Plaintiff's Counsel, ¶ 4.

13.     Plaintiff has commenced discovery in this matter.  On September 14, 2005, plaintiff served his first set of interrogatories on defendant Paul Martin, in which he was instructed to identify all of defendants' contacts with S.E.E., Inc.'s distributors, sales representatives, vendors and suppliers, and existing and prospective customers from 2002 through 2004.  Exhibit "3", Affidavit of Plaintiff's Counsel, ¶ 5.

14.     On October 15, 2005, defendant responded to this discovery.   Out of fifteen interrogatories, defendant Paul Martin answered only five.  Exhibit "4".  Of the five interrogatories that specifically requested defendant to identify communications, (##1, 2, 3, 4, and 12), he answered only two (##1 and 12).  Id.

15.     Plaintiff's list of possible deponents is very large.  Defendants are known to have contacted S.E.E.'s suppliers, vendors, distributors and sales representatives and a large segment of S.E.E, Inc.'s existing and potential customers comprising more than 40 persons or corporate

entities.  There are over 40 potential deponents for Count II alone.   Exhibit "1" Affidavit of

Phillip Tringali, ¶ 8; Exhibit "3", Affidavit of Plaintiff's Counsel, ¶ 7.

16.    As of this date, defendants' counsel has declined to agree to a scheduling proposal

that would allow plaintiff to conduct more than ten depositions.  In the event that permission to

conduct more than ten depositions is not granted,  will have to conserve the eight depositions that

will remain after defendants' depositions for the most promising witnesses.  Exhibit "3",

Affidavit of Plaintiff's Counsel, ¶ 8.

17.    Defendant's refusal to answer interrogatories or produce documents  has made it

difficult to narrow the list of possible deponents.  Exhibit "3", Affidavit of Plaintiff's Counsel, ¶

9; Exhibit "4"; Exhibit "5".

18.    In addition, Paul Martin's answers fail to account for all of the communications

known to have occurred between the defendants and S.E.E.'s sales representatives and

distributors.   In response to interrogatory 3, which specifically directed defendant Martin to

identify communications between the defendants and sales representatives or distributors of

S.E.E., Inc. between 2002 and 2004, Martin Stated that he contacted only two: David Patterson

and Manfred Feustel.  Exhibit "4".

19.    However, Martin's and Lee's telephone records indicate that between January 21

and February 9, 2002, one or both of them contacted Graham Bird, Maclyn Smith and Paul

Norderlander, all of whom were distributors or sales representatives of S.E.E.  Exhibit "1",

Affidavit of Phillip Tringali,  ¶ 11.

20.    In addition, S.E.E.'s Australian distributor, XTEK PTY LTD, terminated its

distribution agreement with S.E.E., Inc. on February 28, 2002, in order to become Quantum

4

Dynamic's distributor.  Exhibit "1", Affidavit of Phillip Tringali, ¶ 12; Exhibit "6".

21.    Though defendant's counsel did request that plaintiff dismiss Count II of his complaint as to defendant Jumi Lee, he never disclosed or discussed his intention to file a motion for partial summary judgment.   Had he done so, plaintiff would have agreed to dismiss Count II as to defendant Jumi Lee at the close of discovery if discovery revealed no evidence of defamatory statements against her.  Exhibit "3", Affidavit of Plaintiff's Counsel, ¶ 10.

## III.    ELEMENTS OF LAW

1.    Pursuant to Fed.R.Civ.P. 56(f):

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

2.     Fed.R.Civ.P. 56(f) allows a party opposing summary judgment additional time to conduct discovery on matters related to the motion, where a party shows that it commenced discovery before it received the summary judgment motion, and sets forth a plausible basis for

believing that further discovery may uncover facts that would influence the outcome of the

motion.  C.B Trucking, Inc., v. Waste Management, Inc., 37 F.3d 41, 45 (1998).

Phillip Tringali
By his counsel,

Date: October 21, 2005_____     //Daniel Treger//___
                                         Daniel Treger, Esq.
                                         B.B.O. #562147
                                       Jeffrey J. Phillips, P.C.
                                         B.B.O. #398480
                                       Phillips & Angley
                                         One Bowdoin Square
                                         Boston, MA 02114
                                         Tel. No.: (617) 367-8787

L:\LITG\Trng001\jumi lees motion for partial summary judgment\56.1.response.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF PHILLIP AFFIDAVIT IN SUPPORT OF HIS OPPOSITION TO DEFENDANT JUMI LEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.     My name is Phillip Tringali.

2.     I make this affidavit in support of my opposition to defendant Jumi Lee's Motion for Partial Summary Judgment of Count II of my complaint against her.

3.     This matter involves a dispute between shareholders S.E.E., Inc., a closely held Massachusetts Corporation.

4.     Defendants are married.

5.     Until January 2002, defendants were also employees, officers and directors of S.E.E., Inc

6.     Immediately after leaving S.E.E., Inc., defendants began competing directly with S.E.E., Inc. through a corporation named Quantum Dynamics.

7.     In a claim that S.E.E. brought against Quantum Dynamics in Plymouth Superior

1

Court, the defendants were compelled to produce telephone records for their home telephone number and their cell telephone numbers.

8.    These records revealed that during the two months after they resigned from S.E.E., the defendants contacted almost all of S.E.E.'s sales representatives, distributors, vendors, suppliers, employees, existing and prospective customers.

9.    Several of S.E.E., Inc.'s sales representatives and distributors informed me that during these conversations, defendant Paul Martin had asked them to represent a competing corporation the defendants had formed.  Martin also told them that I had improperly used S.E.E. funds and assets for my personal use.

10.    Defendant's answer to interrogatory 3, which specifically directed him to identify communications between the defendants, and sales representatives or distributors of S.E.E., Inc. is incomplete.  Defendant Paul Martin claims to have contacted only two of S.E.E.'s distributors and representatives, David Patterson and Manfred Feustel.

11.    However, Martin's and Lee's telephone records indicate that between January 21 and February 9, 2002 one or both of them also contacted Graham Bird, Marlyn Smith and Paul Norderlander, all of whom were distributors or sales representatives of S.E.E..

12.    In addition, S.E.E.'s Australian distributor, XTEK PTY LTD, terminated its distribution agreement with S.E.E., Inc. on February 28, 2002, in order to become Quantum Dynamic's distributor.  Exhibit "6" is a copy of the termination letter.

13.    I have a good faith belief that defendant Lee also made such comments.   After Jumi Lee left S.E.E., Inc., I discovered notes on her computer that revealed she harbored significant personal animosity towards me.

2

14.     Jumi Lee was S.E.E.'s Vice President of Operations.  Her duties required her to interact with all of S.E.E.'s business associates, including its sales representatives and distributors.

Signed under the pains and penalties of perjury this 21st day of October, 2005.

// Phillip Tringali//
Phillip Tringali

L:\LITG\Trng001\jumi lees motion for partial summary judgment\tringali.aff.wpd

3

DO I want to buy SEE from Phil?
Pro:
1. Name,
2. Purchase orders
3. Credit line,
4. GSA contract. Many are already in places
5. He could trash us for banking relationship,
6. Customer basis. Paul worked hard to make it happen.  What is this worth?

Con:
1. Law suits (come and hounts us)
2. Ron Gallegher
3. Paying lots of money to PHIL for shown above.

What do we risk?

1. House
2. Car
3. Saving

Why??

1. Phil sues us
2. Company goes bankrupt.

How to win lawsuit? What is the odd of winning?

1. We first resign as directors citing irregular accounting practice as soon as possible
2. when he shows his teeth, we ask him to buy our shares.
3. He could not control 2 key people and now he has to sue to get it back
4.

What does he have to loose?
1. According to him 13 years of work-fuck him he did not do anything. He could keep his dam Company SEE
2. Egomaniac-He will loose everything
3. He has no idea what to do on things-inventory and so on.

What does SEE have right now?

1. Maine property- equity of ~150K
2. Fidelity~50K
3. A/R ~130 K including France
4. Inventory ~200K
5. PO worth ~250K
6. Deposit from Campanellie ~25K
7. Total of 820K
8. Spending (Payroll) 25K /2 weeks 50K/month : Burning rate ~100K/month
9. Lease payment for 3 more years ~150K
10. Still Phil can clear ~600K- perhaps inventory. Possibly means a lot at this situation

What is the obstacle to get those money?

1. Buy Jumi and Paul's share
2. Get Ron to rally. Total percentage of 25%- We can sue him-Table can turn.
3. Get evidence of misuse-Use of Maine property. Auto Expense , use for personal items.
4. Tax cheating ?? for several years.
5. Has to know what is

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

**AFFIDAVIT OF PLAINTIFF'S COUNSEL, DANIEL TREGER, ESQ.  PURSUANT TO FED.R.CIV.P. 56(f) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT JUMI LEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.      My name is Daniel Treger.

2.      I have been licensed to practice law in the Commonwealth of Massachusetts since 1992.  I am plaintiff's counsel of record in this matter.

3.      I make this affidavit in support of plaintiff's opposition to defendant Jumi Lee's motion for Partial Summary Judgment of Count II of plaintiff's complaint.

4.      Plaintiff is unable to respond to defendant Jumi Lee's motion for summary judgment because discovery is not complete.  Discovery has not closed in this matter, and, in fact, no scheduling conference has been held.

5.      Plaintiff has commenced discovery in this matter.  On September 14, 2005, I served plaintiff's first set of interrogatories, in which defendants were instructed to identify all of their contacts with S.E.E., Inc.'s distributors, sales representatives, vendors and suppliers, and

existing and prospective customers from 2002 through 2004.

6.     On October 15, 2005, I received the "responses" to my September paper discovery. Out of fifteen interrogatories, defendant Paul Martin answered only five. Exhibit "4". Of the five interrogatories that specifically requested defendant to identify communications, (#1, 2, 3, 4, and 12), he answered only two (#1 and 12).

7.     Plaintiff's list of possible deponents is very large. Defendants are known to have contacted S.E.E.'s suppliers, vendors, distributors and sales representatives and a large segment of S.E.E, Inc.'s existing and potential customers comprising more than 40 persons or corporate entities. There are over 40 potential deponents for Count II alone.

8.     As of this date, defendants' counsel has declined to agree to a scheduling proposal that would allow plaintiff to conduct more than ten depositions. In the event that permission to conduct more than ten depositions is not granted, I will have to conserve the eight depositions that will remain after defendants' depositions for the most promising witnesses.

9.     I had hoped to identify the appropriate candidates for depositions through written discovery. Defendant's refusal to answer interrogatories or produce documents [See Exhibit 5] has made this difficult, if not impossible.

10.     Though defendant's counsel did ask me to dismiss Count II of the complaint as to defendant Jumi Lee, he never disclosed or discussed his intention to file a motion for partial summary judgment.   Had he done so, I would have suggested that he defer the motion until the close of discovery, on the condition that plaintiff agree to dismiss count II against defendant Jumi Lee at that time if there were no grounds to oppose summary judgment.

2

Signed under the pains and penalties of perjury this 21st day of October, 2005.

 //Daniel Treger//   
Daniel Treger


L:\LITG\Trng001\jumi lees motion for partial summary judgment\Treger.aff.wpd

PHILLIP TRINGALI )
    Plaintiff )        C. A. NO. 04-12708-MLW
 )
V. )
 )
PAUL MARTIN AND JUMI LEE )
    Defendants )

### ANSWERS AND OBJECTIONS OF PAUL MARTIN
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

The defendant Paul Martin responds to Plaintiff's First Set of
Interrogatories as follows.

General Objections

1.    All rights and evidentiary objections are reserved notwithstanding the
answers set forth herein.

2.    The answers are based on information presently known to Martin, Martin
reserves the right to supplement, correct or amend these answers and
objections in the event future discovery or events reveals information which
would justify such supplementation, correction or amendment.

3.    Martin and Tringali are competitors in the microspectrophotometer
business. There is no noncompetition agreement existing between these
parties, and to the extent that any interrogatory seeks disclosure of trade
secrets and other confidential research, development or commercial
information of CRAIC Technologies, LLC ("CRAIC") or Quantum Dynamics, Inc.
("Quantum"), which would otherwise harm CRAIC or Quantum by placing either
company at a commercial disadvantage, Martin objects to such interrogatory.
Further, Martin should not be required to disclose trade secrets or other
confidential or proprietary information until such time as the Court has ruled
upon a motion for protective order, which will be filed with the Court.

4.    Notwithstanding the foregoing, Martin objects to answering
interrogatories which seek information after March 22, 2004, which is the date

on which S.E.E., Inc. ("S.E.E.") filed bankruptcy in the U.S. Bankruptcy Court. The interrogatories generally refer to the period January 9, 2002, which is the date Martin left the employ of S.E.E., through March 22, 2004, however, Tringali has been inconsistent in that regard and Martin answers as set forth herein are for the period January 9, 2002 to March 22, 2004.

Interrogatory No. 1

Identify each communication between you and any customer of S.E.E., Inc. that occurred between January 9, 2002 and March 22, 2004.

Objection

Certain customers of S.E.E. have become customers of Quantum or CRAIC. I was not subject to any noncompetition agreement with S.E.E. at the time I terminated employment on January 9, 2002 and therefore, I was free to compete with S.E.E. Any such communications constitute trade secrets or other confidential research, development or commercial information of Quantum and/or CRAIC and are the subject of a motion for protective order to be filed with the Court.

Interrogatory No. 2

Identify each communication between you and any prospective customer of S.E.E. that occurred between January 9, 2002 and March 22, 2004.

Objection

Certain prospective customers of S.E.E. have become customers of Quantum or CRAIC. I was not subject to any noncompetition agreement with S.E.E. at the time I terminated employment on January 9, 2002 and therefore, I was free to compete with S.E.E. Any such communications constitute trade secrets or other confidential research, development or commercial information of Quantum and/or CRAIC and are the subject of a motion for protective order to be filed with the Court.

Interrogatory No. 3

Identify each communication between you and any representative or distributor of S.E.E. that occurred between January 9, 2002 and March 22, 2004.

Answer

In late January or early February of 2002, I spoke with Dave Patterson and informed him that I had left S.E.E. At various times from late January, 2002 to March, 2004, I spoke with Manfred Feustel. He initiated the first contact, expressed interest in acting as a sales representative of Quantum at various times, however, he was never engaged as a sales representative.

Interrogatory No. 4

Identify each communication between you and any supplier of parts or services to S.E.E. that occurred between January 9, 2002 and March 22, 2004.

Objection

See answer to Interrogatory No. 1, and further answering, certain suppliers of parts or services to S.E.E. have become suppliers of Quantum and CRAIC and communication between Quantum and/or CRAIC and such suppliers constitute trade secrets or other confidential research, development or commercial information which is the subject of a motion for protective order to be filed with the Court. Further objecting, this interrogatory seeks information which is not relevant or material to the subject matter of this action.

Interrogatory No. 5

Identify all persons with whom Quantum and CRAIC have transacted business during the period between September, 2002 and March 22, 2004 relative to the purchase, sale, leasing, rental or other transfer of any manner of analytical instrument.

Objection

This interrogatory is vague and ambiguous as the term "analytical instrument" is not defined, and I am unable to answer the interrogatory as

3

worded. Furthermore, the identities of Quantum and CRAIC's customers constitute trade secrets or other confidential research, development or commercial information and are the subject of a motion for protective order to be filed with the Court. Further objecting, this interrogatory seeks information which is not relevant or material to the subject matter of this action.

## Interrogatory No. 6

Identify each person with discoverable knowledge of the development and specifications of the all products developed by CRAIC and/or Quantum between January 9, 2002 and March 22, 2004.

## Objection

Persons with discoverable knowledge of the development or specifications of the CRAIC or Quantum products would involve disclosure of its customers, employees, consultants and representatives all of which constitute trade secrets or other confidential research, development or commercial information of CRAIC and/or Quantum, which are the subject of a motion for protective order to be filed with the Court.

## Interrogatory No. 7

Identify each vendor of component parts, software or services related to the design, assembly and manufacture of the all products developed by CRAIC and/or Quantum between January 9, 2002 and March 22, 2004.

## Objection

Identification of vendors or parts, software or services constitute trade secrets or other confidential research, development or commercial information which is the subject of a motion for protective order to be filed with the Court.

## Interrogatory No. 8

Identify all goods and services sold by S.E.E. Inc., in relation to which you were required to obtain any level of security clearance from any agency or

4

branch of the United States government by setting forth the contracting agency, contracting officer, and contract number.

Answer

S.E.E. sold a microspectrophotometer to the Secret Service and to the FBI, however, I have no knowledge of the contracting officer or contract number.

Interrogatory No. 9

Identify all goods and services sold by Quantum and/or CRAIC since January 9, 2002, in relation to which you have been required to obtain any level of security clearance from any agency or branch of the United States government by setting forth the contracting agency, contracting officer, and contract number.

Answer

Any goods or services sold by Quantum or CRAIC to a government agency I believe are the subject of a confidentiality or secrecy agreement with the United States government and I am unable to disclose any information regarding same.

Interrogatory No. 10

Identify all persons who have ever been employed by Quantum and/or CRAIC.

Answer

The present employees are:

Dr. Paul Martin
Dr. Jumi Lee
Dr. Jim Thorne
Saya Yamaguchi
Susan Harkness
Mark Maechtlen

and each of them have their usual place of business at 2400 N. Lincoln Avenue, Altadena, California. Vitaly Telishevshy is a former employee, he is

now employed by Arecont, which also has its usual place of business at 2400
N. Lincoln Avenue aforesaid.

### Interrogatory No. 12

Identify all communications between you and Sarah Walbridge.
### Answer

My recollection is that Sarah Walbridge was offered a position as an
employee of Quantum on or about March 7, 2002, subsequently the offer was
withdrawn approximately May, 2002.

### Interrogatory No. 13

Identify all persons who have ever acted as manufacturer's
representatives and distributors of Quantum and/or CRAIC products.
### Objection

Identification of Quantum or CRAIC's representatives and distributors
constitutes trade secrets or other confidential research, development or
commercial information of CRAIC and/or Quantum, which is the subject of a
motion for protective order to be filed with the Court. Further objecting, this
interrogatory seeks information which is not relevant or material to the subject
matter of this action.

### Interrogatory No. 14

Please describe any policy maintained by Quantum or CRAIC, whether
formal or informal, or written or oral, regarding the non-disclosure of
proprietary information, confidential information or trade secrets.
### Answer

Pursuant to Rule 33(d), I will produce the business records responsive to
this interrogatory.

### Interrogatory No. 15

Identify any document concerning any of S.E.E.'s products, customers or
prospective customers that was in your custody after January 9, 2002.

6

Answer

The only documents I am aware of is a S.E.E. product brochure, which was available to the general public.

Signed under the pains and penalties of perjury this 14th day of October, 2005.

As to Answers:

_Paul Martin_

Paul Martin

As to Objections:

October ___, 2005

Attorney for defendants,

_Roger S. Davis_

Roger S. Davis
BBO No 116320
DAVIS & RUBIN
One Bowdoin Square
Suite 901
Boston, MA  02114-2919
(617) 742-4300

QDI.11.SDC:ANSWERS

7

PHILLIP TRINGALI          )
        Plaintiff          )          C. A. NO. 04-12708-MLW
                           )
V.                         )
                           )
PAUL MARTIN AND JUMI LEE   )
        Defendants         )

### RESPONSE OF THE DEFENDANT PAUL MARTIN
### TO PLAINTIFF'S FIRST REQUEST FOR
### PRODUCTION OF DOCUMENTS

The defendant, Paul Martin ("Martin"), responds to Plaintiff's First Request for Production of Documents as follows.

## I.    **General Objections**

1.    All rights and evidentiary objections are reserved notwithstanding the responses set forth herein.

2.    The responses are based on information presently known to Martin, Martin reserves the right to supplement, correct or amend these responses and objections in the event future discovery or events reveals information which would justify such supplementation, correction or amendment.

3.    By making documents available to the plaintiff, Phillip Tringali ("Tringali"), Martin does not waive and does not intend to waive, any objections which he may have regarding the plaintiff's use of any document or of any information contained in any documents, and expressly reserves: (i) all questions regarding competency, relevance, materiality and admissibility of all information produced; (ii) the right to object to plaintiff's use of any information produced, in whole or in part, in any later stage or proceeding in this litigation on any and all proper grounds; and (iii) the right to object on any and all proper grounds, at any time, to other discovery procedures involving or relating to any information produced.

4.     Martin and Tringali are competitors in the microspectrophotometer business. There is no noncompetition agreement existing between these parties, and to the extent that any Request seeks the production of secret or other confidential research, development or commercial information of Martin, CRAIC Technologies, LLC ("CRAIC") or Quantum Dynamics International, LLC ("Quantum"), which would otherwise harm Martin by placing him at a commercial disadvantage, Martin objects to such Request. Further, Martin should not be required to produce trade secrets or other confidential research, development or commercial information until such time as the Court has ruled upon a motion for protective order, which will be filed with the Court.

5.     Notwithstanding the foregoing, Martin objects to producing any documents which were created or came into existence after March 22, 2004, which is the date on which S.E.E., Inc. filed bankruptcy in the U.S. Bankruptcy Court. The Requests for Production generally refer to documents during the period from January 9, 2002, which is the date Martin left the employ of S.E.E., through March 22, 2004, which is the date of S.E.E.'s bankruptcy filing, however, Tringali has been inconsistent in that regard. Request Nos. 16, 17, 18, 19 and 20 seek documents from and after January 9, 2002 and fail to include the limiting date March 22, 2004.

## II.    **Responses**

Request No. 1

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information of Quantum, which are the subject of a motion for protective order to be filed with the Court. Certain customers or prospective customers of S.E.E. have become customers of

2

Quantum and therefore communications with those customers contain trade secrets or other confidential research, development or commercial information.

## Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

## Objection

The documents requested contain trade secrets or other confidential research, development or commercial information of CRAIC, which are the subject of the motion for protective order to be filed with the Court. Certain customers or prospective customers of S.E.E. have become customers of CRAIC and therefore communications with those customers contain trade secrets or other confidential research, development or commercial information.

## Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

## Response

Martin will produce the documents requested to the extent that they do not constitute trade secrets or other confidential research, development or commercial information. These are the same documents which are the subject of Request No. 10. Otherwise, he objects to all other documents containing product specifications for Quantum or CRAIC on the grounds that such documents contain trade secrets or other confidential research, development or commercial information and are the subject of a motion for protective order to be filed with the Court.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Objection

The term "analytical device" is not defined and therefore, Martin objects to this Request on the grounds that the wording is vague and ambiguous. Notwithstanding, if this Request refers to products developed by CRAIC and/or Quantum, then such documents contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court.


Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Response

Martin will produce such documents.


Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

Objection

The identities of the vendors of Quantum and CRAIC and communications with such vendors contain trade secrets or other confidential research, development or commercial information, which are the subject of a motion for protective order to be filed with the Court.

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Response

No such documents exist. Notwithstanding, he will produce only such documents that do not contain trade secrets or other confidential research, development or commercial information.


Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Objection and Response

Martin objects to producing any documents after March 22, 2004, consistent with the other Requests which limit the period to March 22, 2004, notwithstanding, he will produce only such documents that do not contain trade secrets or other confidential research, development or commercial information.


Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Objection

The telephone records of Quantum and CRAIC would disclose the identities of their respective customers, which constitute trade secrets or other confidential research, development or commercial information and are the subject of a motion for protective order to be filed with the Court.

Request No. 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Objection and Response

Martin objects to producing any documents after March 22, 2004, consistent with the other Requests which limit the period to March 22, 2004, notwithstanding, he will produce only such documents that do not contain trade secrets or other confidential research, development or commercial information.

Request No. 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Objection

To the extent that any upgrades or repairs or services were performed for customers who previously purchased S.E.E. instruments, the identity of those customers and the documents relating thereto constitute trade secrets and other confidential research, development or commercial information, which are the subject of a motion for protective order to be filed with the Court.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information and are the subject of a motion for protective order to be filed with the Court.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A".

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information and are the subject of a motion for protective order to be filed with the Court.

Request No. 14

All documents, including employment contracts, concerning, in whole in or in part, any policy of confidentiality maintained by Quantum and/or CRAIC.

Response

Martin will produce such documents which do not contain trade secrets or other confidential research, development or commercial information.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Response

Martin will produce such documents. Martin will produce documents which are in his custody, control or possession.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Response

If any documents exist which to not constitute trade secrets or other confidential research, development or commercial information of Quantum or CRAIC, they will be produced.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court. Notwithstanding, Martin further objects to produce any documents after March 22, 2004

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court. Notwithstanding, Martin further objects to produce any documents after March 22, 2004

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and Mach 10:

a.      Absolute Reflectance Package.

Objection

The documents requested contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002

## Objection

The documents requested contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court. Notwithstanding, Martin further objects to produce any documents after March 22, 2004

## Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

## Response

No such documents exist.

## Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

## Objection

The documents requested contain trade secrets or other confidential research, development or commercial information which are the subject of a motion for protective order to be filed with the Court. Further, the documents reflecting the income and expenses of Quantum of CRAIC are irrelevant and immaterial and not calculated to lead to any relevant or material information.

October ⅄1, 2005

Attorney for defendants,

Roger S. Davis
BBO No. 116320
DAVIS & RUBIN
One Bowdoin Square
Suite 901
Boston, MA 02114-2919
(617) 742-4300

QDH LUSDC:RESPPOD

9



**XTEK** PTY LTD   ABN 21 008 665 245

25 Yallourn Street, Fyshwick, Canberra, Australia
P.O. Box 333, Fyshwick, ACT 2609, Australia

Facsimile: (+61-2) 6280 6518
Telephone:    (02) 6280 6321
Internet:    www.xtek.net

S.E.E. Inc.
48 Leona Drive, Suite D
Middleborough, MA 02346 USA

Attn: **Phil Tringali**

Dear Phil,

**This letter is to serve as termination notice to S.E.E. Incorporated.**

XTEK is terminating its Distribution relationship with S.E.E. effective as of this date.

Thank you for your support in the past and please be assured of our best intentions at all times.

Sincerely,

**Nick Weber**
**Manager, Scientific & Forensic Products**
**XTEK Pty Ltd**

**28th February 2002**