UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI          )
    Plaintiff          )          C. A. NO. 04-12708-MLW
                        )
V.          )
                        )
PAUL MARTIN AND JUMI LEE          )
    Defendants          )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER
AS TO CONFIDENTIAL AND PROPRIETARY INFORMATION**

## I.   PRELIMINARY STATEMENT

Fed.R.Civ.P. 26(c)(7) provides that the court may order that disclosure or discovery not be had with respect to the trade secrets or other confidential research, development or commercial material. In this case, the defendants have previously filed a motion to dismiss with respect to Count I of the complaint, which is relevant to the interrogatories and requests for documents served by the plaintiff, Phillip Tringali ("Tringali"). The defendants have therefore filed a motion for a protective order and this Memorandum is submitted in support thereof.

## II.   ARGUMENT AND AUTHORITY

### A.   The Plaintiff Is Engaged In Competitive Activities With Those Of The Defendants.

The plaintiff Tringali was the president and principal stockholder of S.E.E., Inc. ("S.E.E."), which was formerly engaged in business of the manufacture and sale of microspectrophotometers. The defendant, Paul Martin ("Martin"), prior to his employment by S.E.E. and during the term of his employment was engaged in the microspectrophotometer field and since he has terminated his employment from S.E.E. in January, 2002 has been engaged in his own business enterprises in the manufacture and sale of microspectrophotometers.

While S.E.E. filed bankruptcy in May, 2004, the plaintiff Tringali has continued as a sales representative for microspectrophotometers representing Nanometrics, Inc. of Milpitas, California, a large manufacturer of microspectrophotometers.

According to Tringali's deposition testimony (Exhibit "A" hereto), since the bankruptcy of S.E.E., Tringali has been engaged as a sole proprietor doing business as PT Technology, a sales manufacturer's representative.

A PT Technology document (Exhibit "B" hereto), states that "PT Technology" is pleased to represent the following companies and their products in New England, New York and Eastern Canada," and among the companies listed is Nanometrics of Milpitas, California. The products for which Tringali is the representative are those in the microspectrophotometer field and competitive with those of the defendants. Attached hereto as Exhibit "C" is a copy of the Nanometrics specifications for the NanoSpec 6100 and as Exhibit "D" for the NanoSpec 3000 model.

As set forth in the Affidavit of Paul Martin attached hereto, the NanoSpec 6100 is a direct competitor to the QDI Model 1000 and 2000 systems and the NanoSpec 3000 is a direct competitor to the QDI Model 2002 system. To assist the Court Martin has provided a "Competitive Comparison" (Exhibit "E" hereto), to demonstrate that while he believes that the QDI products are superior to the Nanometric products, providing information to Tringali with respect to confidential or proprietary information to the QDI products would cause Martin irreparable harm in his business, since Nanometrics is a direct competitor of Martin.

**B.    The Defendants Are Entitled To A Protective Order To Safeguard Trade Secrets or Other Confidential Research, Development or Commercial Information.**

Fed.R.Civ.P. 26(c)(7) provides that a court may issue a protective order that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated manner. The rule has been interpreted to protect from disclosure material which would

otherwise harm the disclosing party by placing it at a commercial disadvantage, <u>Nestle Foods Corp. v. Aetna Casualty & Surety Co.</u>, 129 F.R.D 483, (D.NJ 1990).

The court may require the disclosure of trade secrets where the information sought is relevant and necessary for preparation of the case for trial, however, courts are reluctant to order disclosure of trade secrets absent a clear showing of an immediate need for the information requested, <u>Duplan Corp. v. Deering Milliken, Inc.</u>, 397 F.Supp. 1146 (D.SC 1974).

Federal courts have consistently afforded a greater deal of protection to technical or trade information then to ordinary business information because of the threat of an economic injury resulting from disclosure to a competitor, <u>R&D Business Systems v. Xerox Corp.</u>, D.C. Colo. (1993), 152 F.R.D. 195, 196-197. The court held in that case that once a party objecting to discovery establishes that the information sought is a trade secret and that its disclosure might be harmful, that the burden then shifts to the party seeking discovery to establish that disclosure of the trade secret is both relevant and necessary. "[The] Court then must balance the need for the disclosure against the injury that would result from the disclosure." (citations omitted) The court went on to hold that a party objecting to the subpoena was therefore not required to disclose the identities of its suppliers, financial records, product specifications or drawings or any trade secret as defined by local law.

Alternatively, federal courts have restricted access to proprietary material to the opposing counsel, in cases involving confidentiality of business records. In <u>Sega Enterprises v. Accolade</u>, 997 F.2d 1510, 1532 (9th Cir. 1992), the court there granted a protective order noting that it may restrict access to disputed material to opposing party's counsel or to allow the parties to retain independent experts to evaluate the material which is subject to the protective order:

> Upon a showing that a protective order is warranted, see <u>American Standard, Inc. v. Pfizer, Inc.</u>, 828 F.2d 734, 739-44 (Fed.Cir. 1987), the court may restrict access to the disputed material to the opposing party's

counsel, or may allow the parties to retain independent experts to evaluate material that is subject to the protective order.  See, e.g., <u>Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.</u>, 682 F.Supp. 20, 22 (D.Del. 1988) (listing cases).  The latter solution is particularly helpful to the court in a case such as this one, in which the dispute is highly technical in nature.

### C. <u>There Is No Immediate Need For The Disclosure Of Trade Secrets And Other Confidential Information.</u>

As the court indicated in <u>Duplan Corp. v. Deering Milliken, Inc.</u>, 397 F.Supp. 1146 (D.SC 1974), in discussing the general rule concerning discovery of trade secrets before the federal courts, the court cited 4 Moore, Federal Practice, para. 26.60[4], at 242-45 (2d ed. 1970):

> No absolute privilege protects trade secrets from disclosure through the discovery process.  If the information sought is relevant and necessary, at the discovery stage of the litigation, to the preparation of the case of the applicant therefor, disclosure will be required.  However, the courts are loath to order disclosure of trade secrets absent a clear showing of an <u>immediate need</u> for the information requested. (emphasis added)  <u>Id</u>. at 1185.

In the present case the proceedings are only in the initial stages, a motion to dismiss is pending before the Court, and no scheduling conference has been had as of this date.  We respectfully submit there is no "immediate need" for the disclosure of the trade secrets or confidential information of Martin.

The court also noted in <u>Duplan</u>, the burden on the opposing party to establish relevancy of the documents requested:

> Once the privilege is asserted by the owner, the party seeking discovery must make a clear showing that the documents are relevant to the issues involved in this litigation.  In doubtful situations, production will not be ordered.  The court is aware that this standard is higher than the hurdle for discovery of unprivileged but relevant documents but this court considers such a higher standard necessary in order to guard against the possible use of doubtfully relevant trade secrets by the opposing parties for their own business ends.  In

4

> order to guard against the possible use of the trade
> secrets by a third party, the owner of the trade secrets
> should move for a protective order under Federal Rule
> of Civil Procedure 26(c)(7).

Indeed, Martin has now moved for a protective order as suggested by this case. Id. The court went on in <u>Duplan</u> to find that names of licensees and the amounts of royalties are confidential business matters entitled to the trade secret privilege as they are akin to customer lists. Also, the court held that specific technical information was privileged as trade secrets. Id. at 1186.

## III.  REQUESTS FOR PRODUCTION WHICH SEEK CONFIDENTIAL OR PROPRIETARY INFORMATION.

<u>Request No. 1</u>

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

<u>Grounds for Protective Order</u>

Certain customers and prospective customers of S.E.E. are now customers of Quantum, and the identities of Quantum customers constitute trade secrets or other confidential or commercial information. Additionally, such communications may include Quantum product information, which likewise constitutes trade secrets and confidential information.

<u>Request No. 2</u>

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

<u>Grounds for Protective Order</u>

Certain customers and prospective customers of S.E.E. are now customers of CRAIC and the identities of CRAIC customers constitute trade secrets or other confidential or commercial information. Additionally, such

communications may include CRAIC product information, which likewise constitutes trade secrets and confidential information.

Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

Product specifications of Quantum and CRAIC constitute trade secrets or other confidential research, development or other commercial information.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Grounds for Protective Order

Source codes of Quantum and CRAIC constitute trade secrets or other confidential research, development or other commercial information.

Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

Grounds for Protective Order

The identities of vendors of Quantum and CRAIC constitute trade secrets or other confidential development or other commercial information.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Grounds for Protective Order

Certain of S.E.E.'s distributors or sales representatives have become distributors or representatives of Quantum or CRAIC and communications with those persons or entities constitute trade secrets or other confidential commercial information.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Grounds for Protective Order

The customer records of Quantum or CRAIC would disclose the identities of their respective customers, which in turn constitute trade secrets or other confidential commercial information.

Request No. 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Grounds for Protective Order

To the extent that any upgrades or repair services were performed by customers who previously purchased S.E.E. instruments, the identity of those customers and documents relating thereto constitute trade secrets and other confidential research, development or commercial information.

Request No. 12

     All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Grounds for Protective Order

     This Request as worded would seek to require disclosure of specifications and other trade secrets or confidential research, development or commercial information of Quantum and CRAIC.

Request No. 13

     All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A".

Grounds for Protective Order

     This Request as worded would seek to require disclosure of specifications and other trade secrets or confidential research, development or commercial information of Quantum and CRAIC.

Request No. 17

     All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Grounds for Protective Order

     The documents requested would contain trade secrets or other confidential research, development or commercial information which may include specifications or other confidential information regarding CRAIC or Quantum products.

Request No. 18

     All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Grounds for Protective Order

     The documents requested would contain trade secrets or other confidential research, development or commercial information which may

include specifications or other confidential information regarding CRAIC or Quantum products.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and Mach 10:

a.    Absolute Reflectance Package.

Grounds for Protective Order

Software packages referred to contain and constitute trade secrets or other confidential research, development or commercial information.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002

Grounds for Protective Order

The identity of users of S.E.E. instruments, particularly since S.E.E. is no longer in business, constitute trade secrets or other confidential commercial information.

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

Grounds for Protective Order

There is no reason for the production of any records at this time concerning the income and expenses of Quantum and/or CRAIC. The documents are neither relevant nor material, and are not calculated to lead to any relevant or material information and furthermore, constitute confidential commercial information.

**IV.   INTERROGATORIES WHICH SEEK CONFIDENTIAL OR PROPRIETARY INFORMATION.**

Interrogatory No. 1

Identify each communication between you and any customer of S.E.E., Inc. that occurred between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

Certain customers of S.E.E. have now become customers of Quantum or CRAIC and the identity of those customers constitute the trade secrets of other confidential commercial information. Additionally, communications between these customers and CRAIC and Quantum may contain other confidential research development or commercial information concerning the products and specifications.

Interrogatory No. 2

Identify each communication between you and any prospective customer of S.E.E. that occurred between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

Certain prospective customers of S.E.E. have now become prospective customers of Quantum or CRAIC and the identity of those prospective customers constitute trade secrets or other confidential commercial information. Additionally, communications between these prospective customers and CRAIC and Quantum may contain other confidential research development or commercial information concerning the products and specifications.

Interrogatory No. 4

Identify each communication between you and any supplier of parts or services to S.E.E. that occurred between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

Certain suppliers of parts or services to S.E.E. have now become suppliers to Quantum or CRAIC and communications with, or the identification

of such suppliers constitute trade secrets or other confidential commercial information.

Interrogatory No. 5

Identify all persons with whom Quantum and CRAIC have transacted business during the period between September, 2002 and March 22, 2004 relative to the purchase, sale, leasing, rental or other transfer of any manner of analytical instrument.

Grounds for Protective Order

The identity of Quantum or CRAIC customers constitute trade secrets or other confidential, commercial information.

Interrogatory No. 6

Identify each person with discoverable knowledge of the development and specifications of the all products developed by CRAIC and/or Quantum between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

The identities of the persons who have knowledge of the development and specifications of Quantum and CRAIC products constitute confidential commercial information.

Interrogatory No. 7

Identify each vendor of component parts, software or services related to the design, assembly and manufacture of the all products developed by CRAIC and/or Quantum between January 9, 2002 and March 22, 2004.

Grounds for Protective Order

The identities of the vendors of component parts, software or services constitute trade secrets or other confidential commercial information of CRAIC and Quantum.

Interrogatory No. 13

Identify all persons who have ever acted as manufacturer's representatives and distributors of Quantum and/or CRAIC products.

Grounds for Protective Order

The identities of Quantum or CRAIC's representatives and distributors constitute trade secrets or other confidential commercial information.

## V.    **REQUEST FOR RELIEF**

The defendant Martin respectfully suggests that, in view of the present posture of this case, a stay of the aforementioned discovery would be appropriate, until such time as the Court has ruled on the pending Motion to Dismiss with respect to Count I of the Complaint.  Alternatively, should this Court determine that disclosure is to be made, Martin respectfully suggests that it should be limited in accordance with the order of the court used in Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262 (D.Mass. 1991).  In that case, the court fashioned an appropriate remedy with respect to disclosure of trade secrets where it entered an order limiting the disclosure as follows:

> …disclosure of the document(s) and answer is limited to plaintiff's counsel of record and two experts and/or independent consultants of counsel's choosing. Plaintiff's counsel of record shall use the information supplied only for litigation purposes.  Plaintiff's counsel of record is further ORDERED to sign a nondisclosure agreement and file a copy with this court on or before September 16, 1991, as suggested by plaintiff in its' opposition to the motion for a protective order.  (Docket Entry #28)  The nondisclosure agreement shall comply with the above restrictions limiting disclosure.  Id. at 264.

## VI.    **CONCLUSION**

For the reasons set forth above, the defendant Martin renews his Request for Relief, that the Court stay the discovery which is the subject matter of this Motion, and the Memorandum or, alternatively, enter a Protective Order in the suggested form as attached hereto as Exhibit "F".

November 8, 2005                        Attorney for defendants,


_____/s/Roger S. Davis_____
Roger S. Davis
BBO No. 116320
DAVIS & RUBIN
One Bowdoin Square
Suite 901
Boston, MA  02114-2919
(617) 742-4300

QDI11:USDC:MEMOPO

5

| 1 | A. | Yes. |
|---|----|------|

1    A.   Yes.

2    Q.   Are you employed or self-employed?

3    A.   Self-employed.

4    Q.   And the name of your business is what?

5    A.   PT Technology.

6    Q.   And the nature of that business is what?

7    A.   Sales manufacturer's representatives.

8    Q.   And what products do you sell?

9    A.   Primarily in the semiconductor business

10  for about six companies.

11    Q.   And where are you located, your business

12  address?

13    A.   At the home.

14    Q.   Do you have any employees?

15    A.   No.

16    Q.   And how long have you been engaged in

17  this particular business?

18    A.   Roughly just over a year.

19    Q.   Okay.  At some time, you were the

20  president of a company by the name of "S.E.E." --

21  that's S.E.E.; correct?

22    A.   Yes.

23    Q.   When did you originally form S.E.E.?

24    A.   1988.

July 18, 2005

# PT Technology

**Is pleased to represent the following companies and their products in New England, New York, and Eastern Canada.**

## GTI Technologies, Inc.- Shelton, CT          www.gtitechnologies.com

- Wafer Thickness Measurement Systems
- Wafer Grinding Systems
    - Si, GaAs, InP, SiC, Sapphire, Ceramics, Quartz
- Wafer Scribers and Bonders
- Semi-Auto Probe Station
- Gas Detection and Monitoring Systems
- Carbon Fiber End Effectors
- Takatori Products
    - Tape Laminating, Wafer Mounting, Tape Removal, Wire Saws

## Integrated Designs, LP- Carrollton, TX      www.integrated-designs.com

- Chemical Delivery Systems
- Resist Pumps
    - Cybor, IDI
- Dispense Systems
    - Resist, EBR, SOG, Low-K, Solvent

## Micro-Metric, Inc.- San Jose, CA          www.micro-metric.com

- Optical Metrology Systems
    - CD Measurements
    - Overlay Measurements
    - 2"-12" Wafers
    - Masks and Reticles
- Fiber Optic Measurement Systems
    - Fiber, V-Groove, Ferrule
    - Concentricity, Diameters, Spacing, Pitch
- Coordinate Measurement Systems

"B"

## Nanometrics Inc. - Milpitas CA                    www.nanometrics.com

- Film Thickness Measurement Systems
  - o Table Top: Manual and Semi Automated
  - o Fully Automated w/ DUV-NIR Spectroscopic Ellipsometry
- Fully Automated OCD Metrology Systems
- Fully Automated UDI Metrology System

## SSS, Inc. - Montvalle NJ                    www.s-cubed.com

- Flexi-PCS
  - o Spin Coat, Develop, Bake Systems
- TruClean Double-Sided Scrubbing Systems
  - o Round, Square, Rectangular, to 300mm
- Cyclone Chemical Processing Systems
  - o Cleaning, Etching, Liftoff

**Please contact us for any questions or assistance we may provide for our product lines. We may be reached at the following information.**

**PT Technology**                    Tel:    781-293-5974
**98 Walnut St.**                     Fax    781-294-0504
**Halifax ,MA 02338**                 Mobile:339-933-3365

Email: ptringali@aol.com



**NEWS**  **PRODUCTS**  **SOLUTIONS**  **INVESTORS**  **SUPPORT**  **CONTACT**  **CAREERS**

OCT 21 2005 03:19:03 PM

**RELATED TECHNOLOGIES**
Spectroscopic Reflectometry

Spectroscopic Ellipsometry

Combined SR / SE

**RELATED PRODUCTS**
NanoOCD/DUV 9010
NanoSpec 9000 Series

Nanometrics FLX
Nanometrics ATLAS
NanoSpec 9200
NanoSpec 9100
NanoSpec 8000

NanoSpec 6100 [tabletop]
NanoSpec 3000 [tabletop]

N2000 Software
NanoNet

**NanoSpec® 6100**
Tabletop Film Analysis System

The NanoSpec 6100 is a fast, low cost tabletop film thickness and mapping system that provides a broad range of measurement capabilities for thin film metrology. The 6100 utilizes non-contact spectroscopic reflectometry to measure sites as small as 10µm in diameter on production wafers. The computerized sample stage coupled to a robust autofocus system enables automatic generation of film thickness uniformity maps. The system will measure wafer substrates in the size range of 75 to 200mm and photomasks from 5 to 9 inches square.

The 6100 measures film thickness in the range of 200Å - 20µm with the visible light source (400 to 800nm halogen lamp) and 25Å - 20µm with optional UV light source (210 - 400nm deuterium lamp). The upper thickness range can be extended to 70µm with the thick film option. Optical constants n and k can be determined with the XMP option.

A variety of substrates are easily measured and mapped with the motorized, precision x-y sample stage with a resolution of better than 1µm. The high-resolution color graphics display provides contour and 3D film thickness mapping.

**APPLICATIONS**

Film Analysis

Critical Dimension Metrology

Overlay Metrology

Defect Inspection

Surface Profiling

Mask Metrology

©2004 Nanometrics Incorporated. All Rights Reserved. | legal info


**NANOmetrics**

INNOVATION. RELIABILITY. EXPERIENCE.        process control metrology solutions

NEWS    PRODUCTS    SOLUTIONS    INVESTORS    SUPPORT    CONTACT    CAREERS        OCT 21 2005 03:19:19 PI

## RELATED TECHNOLOGIES
Spectroscopic Reflectometry

Spectroscopic Ellipsometry

Combined SR / SE

## RELATED PRODUCTS
NanoOCD/DUV 9010
NanoSpec 9000 Series

Nanometrics FLX
Nanometrics ATLAS
NanoSpec 9200
NanoSpec 9100
NanoSpec 8000

NanoSpec 6100 [tabletop]
NanoSpec 3000 [tabletop]

N2000 Software
NanoNet

**NanoSpec® 3000**
Tabletop Film Analysis System

The NanoSpec 3000 is a low cost, film thickness measurement system that utilizes a modern small spot spectroscopic reflectometer that is built on a simple-to-use tabletop platform. The rugged, solid state linear diode array provides fast, precise measurements of single-layer films such as oxide, nitride and photoresist, as well as the top layer on film stacks of up to 3 layers in the thickness range of 250A to 35µm. The flexible software platform makes it simple and easy for the user to configure measurement programs and recipes for both simple and advanced measurement applications. With the ability to select film constants, scan ranges and substrate types, the 3000 is the ideal tool for rapid measurement program development. Data management features include a database, statistical analysis, histograms and the ability to export data files. Both tabular and Cauchy dispersion models are available for use and material files may be imported and exported. Optical constants n and k can be determined with the XMP option.

## APPLICATIONS
Film Analysis

Critical Dimension Metrology

Overlay Metrology

Defect Inspection

Surface Profiling

Mask Metrology

home | news | products | solutions | investor | support | contact | careers | email alert

©2004 Nanometrics Incorporated. All Rights Reserved. | legal info



# Competitive Comparison

## *CRAIC Technologies vs. Nanometrics*

|  | CRAIC Technologies QDI 202 | Nanometrics NanoSpec 3000 |
|---|---|---|
| Microspectrometer | Yes | Yes |
| Reflectance | Yes | Yes |
| Spectral Range | Visible-NIR | Visible-NIR |
| Measure Film Thickness on Semiconductor Wafers | Yes | Yes |
| Measure Film Thickness on Flat Panel Displays | Yes | Yes |
| Tabletop Model | Yes | Yes |

Reasons CRAIC QDI 202 is superior

| Confidential | CRAIC Technologies QDI 202 | Nanometrics NanoSpec 3000 |
|---|---|---|
| Microspectrometer | 1 micron sampling area | 10 micron sampling area |
| Reflectance | Yes | Yes |
| Transmittance | Yes | No |
| Fluorescence | Yes | No |

|  | CRAIC Technologies QDI 2000 | Nanometrics NanoSpec 6100 |
|---|---|---|
| Microspectrometer | Yes | Yes |
| Reflectance | Yes | Yes |
| Spectral Range | UV-Visible-NIR | UV-Visible-NIR |
| Measure Film Thickness on Semiconductor Wafers | Yes | Yes |
| Measure Film Thickness on Flat Panel Displays | Yes | Yes |
| Tabletop Model | Yes | Yes |

Reasons CRAIC QDI 2000 is superior

| Confidential | CRAIC Technologies QDI 2000 | Nanometrics NanoSpec 6100 |
|---|---|---|
| Microspectrometer | 1 micron sampling area | 10 micron sampling area |
| Reflectance | Yes | Yes |
| Transmittance | Yes | No |
| Fluorescence | Yes | No |



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI          )
     Plaintiff          )          C. A. NO. 04-12708-MLW
               )
V.          )
               )
PAUL MARTIN AND JUMI LEE          )
     Defendants          )

## PROPOSED PROTECTIVE ORDER

1.    The term "Confidential – Attorney Eyes Only" as used herein means any type or classification of information that is designated in good faith as confidential by the producing person or party, whether it be a document, information contained in a document, physical exhibits, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

2.    Information designated as "Confidential – Attorney Eyes Only" shall be that information, which if disclosed to persons of expertise in the area would harm the producing or designating party, or reveal significant technical or business advantages of the producing or designating party, and shall be disclosed only to the following persons:

    (a)    Outside attorneys of record and members and employees of their firms;

    (b)    Any other outside attorneys retained by any of the parties to render advice to or represent the party in this action, who have submitted an acknowledgment in the form of Exhibit "A," which is attached hereto (hereinafter "Exhibit A"), to opposing counsel by the party retaining such person;

    (c)    Outside consultants or outside experts who are retained in connection with this action, whose review of the specific Confidential information is reasonably necessary to assist in the

"F"

prosecution or defense of this litigation and who have submitted an acknowledgment in the form of Exhibit A to opposing counsel by the party retaining such person.

3.    All information designated as "Confidential – Attorney Eyes Only" provided to a receiving party shall be maintained and kept in the offices of the outside attorney of record for the receiving party.

4.    Nothing shall be regarded as "Confidential – Attorney Eyes Only" information if it is information that:

(a)    Is in the public domain at the time of disclosure as evidenced by a written document;

(b)    Becomes a part of the public domain through no fault of the other party as evidenced by a written document;

(c)    The receiving party can show by written document that the information was in its rightful and lawful possession at the time of disclosure without restriction as to disclosure.

5.    Information produced in this action may be designated by any party or parties as "Confidential – Attorney Eyes Only" information by marking every page containing such information as follows:

"CONFIDENTIAL – ATTORNEY EYES ONLY"

Any other information produced electronically in this action may be designated as "Confidential – Attorney Eyes Only" by sufficient notice containing such designations at the time of the production of such electronic information.

6.    (a)    Information disclosed at (i) the deposition of a party or one of its present or former officers, directors, employees, agents, or independent experts retained by counsel for purposes of this litigation or (ii) the deposition of a third party (which information pertains to a party) may be designated by any party (including the third party) as "Confidential – Attorney Eyes Only" information by indicating on the record at the deposition that the testimony is

"Confidential – Attorney Eyes Only" and is subject to the provisions of this Order.

(b)    Any party may also designate information disclosed at such deposition as "Confidential – Attorney Eyes Only" by designating the information at the deposition, or by notifying all of the parties, in writing, within fourteen (14) days after receipt of the transcript, of the specific pages and lines of the transcript which should be treated as "Confidential – Attorney Eyes Only" thereafter.  Each party shall attach a copy of such written notice to the face of the transcript and each copy thereof in his possession, custody, or control.  All deposition transcripts shall be treated as "Confidential – Attorney Eyes Only" for a period of fourteen (14) days after receipt of the transcript.

(c)    To the extent possible, the court reporter shall segregate into separate transcripts, information designated as "Confidential – Attorney Eyes Only" with blank, consecutively numbered pages being provided in a non-designated main transcript.  The separate transcript containing "Confidential – Attorney Eyes Only" shall have page numbers in the sequence of the manner in which testimony was taken, as if those pages were not segregated.

(d)    If during the course of a deposition, testimony is being elicited that is designated "Confidential – Attorney Eyes Only," anyone other than the deponent and the court reporter, will be excluded for the duration of such designated testimony.

7.    (a)    A party shall not be obligated to challenge the propriety of a designation as "Confidential – Attorney Eyes Only" at the time made and a failure to do so shall not preclude a subsequent challenge thereto.  In the event that any party to this action disagrees at any stage of these proceedings with the designation by the designating party of any information as "Confidential – Attorney Eyes Only," the parties shall first try to resolve such

dispute in good faith on an informal basis.  If the dispute cannot be resolved, either party may move the Court for a resolution.

(b)     By stipulation, the parties may provide for exceptions to this Order and any party may seek an Order of this Court modifying this Protective Order.

8.     In the event that a consultant or expert, as defined in Paragraph 2(c) above, is retained by either party to furnish technical or consulting services or to give testimony with respect to the subject matter of this action and a party desires to disclose to such consultant or expert any "Confidential – Attorney Eyes Only" information marked by the other party, the disclosing party must deliver to opposing counsel a copy of a signed Exhibit A executed by the consultant or expert and a copy of the consultant's or expert's curriculum vitae at least five (5) business days prior to disclosure of such "Confidential – Attorney Eyes Only" information, by first class mail.

In the event that a party, which has produced such "Confidential – Attorney Eyes Only" information, objects to its disclosure to a consultant or expert by an opposing party, such objecting party shall deliver a notice of objection to such disclosing party within five (5) business days after receiving a copy of Exhibit A and the consultant's or expert's curriculum vitae by first class mail, whichever occurs first.  In such event, disclosure of the "Confidential – Attorney Eyes Only" information shall not be made to such consultant or expert until the parties agree, in writing, that such disclosure may be made or the Court rules on the dispute.  The objecting party shall fully state in its notice of objection its reasons and grounds for such objection. Failure to timely give notice of objection to opposing counsel shall operate as a waiver of the objection.

Unless the dispute is resolved by agreement of counsel, the objecting party may move within five (5) business days after giving notice of its objections for a ruling by the Court on the dispute.  Absent such motion within said time, the objection shall be deemed withdrawn.

9.      A copy of this Protective Order shall be furnished to each third party required to produce documents.  Such third parties may produce documents designated as "Confidential – Attorney Eyes Only" pursuant to the terms of this Protective Order and all such information shall be treated in accordance with this Protective Order.

10.     In the event that a party wishes to use any "Confidential – Attorney Eyes Only" information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this litigation, such "Confidential – Attorney Eyes Only" information used therein shall be filed with the Court in a sealed envelope bearing the legend:

"CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER"

11.     The Clerk of this Court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, affidavits, briefs, memoranda of law, or other papers that have been filed in court in this litigation that have been designated, in whole or in part, as "Confidential – Pursuant to Protective Order."

12.     Within sixty days after the final conclusion of this litigation, including all appeals, all originals or reproductions of any documents produced by a party containing "Confidential – Attorney Eyes Only" information shall be returned to the producing party or destroyed with the exception of one archival copy kept under custody and control of outside attorneys of record, unless the parties otherwise agree in writing.  Insofar as the provisions of any protective orders entered in this action restrict the communication and use of the documents produced thereunder, such orders shall continue to be binding after the conclusion of this litigation except (a) that there shall be no restriction on documents and things that are used as trial or public hearing exhibits in court (unless such exhibits were filed under seal) and (b) that a party may seek the written permission of the producing party or further order of the Court with respect to dissolution or modification of such protective order.

Entered as an Order by the Court.


November _____, 2005                    _____

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI          )
     Plaintiff          )          C. A. NO. 04-12708-MLW
                           )
V.                        )
                           )
PAUL MARTIN AND JUMI LEE  )
     Defendants         )

**CONSULTANT OR EXPERT ACKNOWLEDGMENT**

I, _____ declare that:

1.    My address is _____

_____. My present occupation is _____

_____, and I am currently employed by _____

_____, I have been retained by _____

_____ with respect to this litigation (for experts/attorneys only). A true copy of my curriculum vitae is attached (for experts/attorneys only).

2.    I have received a copy of the Protective Order in this action and have carefully read and understand its provisions.

3.    1 will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use for other purposes other than for this lawsuit, any information designated "Confidential – Attorney Eyes Only", which I receive in this action, except to the extent that such information so designated is or becomes public domain information or otherwise is not deemed "Confidential – Attorney Eyes Only" in accordance with the Protective Order.

7

4.    I declare under penalty of perjury that the foregoing is true and correct.


Executed: _____          _____
                    Date                                              Name