# United States District Court
# District of Massachusetts

PHILLIP TRINGALI,
    Plaintiff,

    V.                                 CIVIL ACTION NO. 2004-12708-MLW

PAUL MARTIN,
JUMI LEE,
    Defendants.

## *ORDER ON PLAINTIFF, PHILIP TRINGALI'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 (#8)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On December 27, 2004, plaintiff Philip Tringali ("Tringali") filed a two-count complaint (#1) against defendants Paul Martin ("Martin") and Jumi Lee ("Lee"). In Count I the plaintiff alleges that the defendants breached a fiduciary duty they owed to him as fellow shareholders of a closely held corporation. In Count II Tringali contends that Martin and Lee slandered him and, as a

consequence, that he has suffered damage to his reputation, economic losses and emotional distress. In lieu of filing an answer, on March 31, 2005, the defendants filed a motion to dismiss (#2) together with a memorandum in support (#3). The grounds asserted for the dismissal were abstention as to Count I, lack of jurisdiction as to both Counts I and II, and failure to satisfy the amount-in-controversy requirement of diversity jurisdiction as to both Counts I and II.

## II. *The Basis for the Requested Sanctions*

The Court has issued a Report and Recommendation on the motion to dismiss on February 23, 2006 recommending that the motion to dismiss be denied. Tringali alleges that the defendants' attorney violated Rule 11(b)(1) and (4), Fed. R. Civ. P., when he made certain averments in the memorandum in support of the motion to dismiss (#3) with respect to the lack of jurisdiction and the failure to satisfy the amount-in-controversy and so he seeks an award of sanctions.

Sanctions are not warranted with respect to the averments regarding the amount-in-controversy. However, the averments with respect to lack of personal jurisdiction are a different matter.

In his memorandum in support of the motion to dismiss (#3), the

defendants' attorney, after setting forth some of the law applicable to the issue of personal jurisdiction, states as follows:

> Here, Tringali has failed to allege any facts with regard to the transacting of any business by the defendants in Massachusetts for purposes of jurisdiction under [Mass.Gen.L. c. 223A] § 3(a) or any facts regarding causing any tortious injury under [Mass.Gen.L. c. 223A] § 3(c) or (d). The only allegation in the complaint with regard to conduct in Massachusetts is set forth in Paragraph 5 of the complaint, which states as follows:
>
>> 5. Venue is proper under 28 U.S.C. 1391 because all of the acts and omissions giving rise to the claims herein occurred in the Commonwealth of Massachusetts.
>
> Tringali has failed to alleged [sic] any facts which would permit this Court to conclude that his claim arises out of any activities on the part of either Martin or Lee necessary to establish personal jurisdiction under the Massachusetts Long Arm Statute. Moreover, the complaint fails to set forth any allegations upon which a reasonable inference could be drawn that either defendant had minimum contacts with Massachusetts sufficient to satisfy the due process clause. The complaint therefore, within its "four corners" as to which a motion to dismiss is properly directed, is totally deficient with regard to the issue of jurisdiction.

Defendant's Memorandum, Etc. (#3) at pp. 13-14.

Tringali calls these statements a "blatant misrepresentation" and "blatantly

false." Plaintiff, Philip Tringali's Motion for Sanctions, Etc. (#8) at pp. 1-2. Upon a reading of the allegations of the Complaint, set forth *infra,* the Court is constrained to agree.

### III.  *The Allegations Contained in the Complaint*

The facts as laid out in the Complaint are as follows:

Tringali is an individual residing in Halifax, Massachusetts. (#1 ¶1) Martin and Lee, husband and wife, are individuals residing in Atladena, California. (#1 ¶¶2-3)  These three individuals own all of the shares of S.E.E., Inc. ("S.E.E."), a closely held corporation organized under the laws of Massachusetts and headquartered in the Commonwealth. (#1 ¶¶6-7)

S.E.E. was founded by Tringali in 1988 "as a sales organization engaged in selling various analytical equipment and systems used in the microelectronic industry." (#1 ¶8)  The focus of the company changed somewhat in 1996 when "S.E.E. embarked upon a business plan to design, manufacture and market an integrated, computer operated microspectrophotometry system for use in the forensic sciences (the "Analytical Product")."  (#1 ¶9)

In pursuit of this business plan, S.E.E. hired Martin in early May, 1996, to work as a research analyst in developing the Analytical Product. (#1 ¶10) Lee became employed by Wavetech, a consulting firm that provided research

and development advice to S.E.E., on or about October 1, 1996. (#1 ¶17)  As a Wavetech consultant, Lee worked with Martin in developing the Analytical Product and ultimately herself became an S.E.E. employee in or around April, 1997. (#1 ¶¶18-19)  While Martin and Lee supervised the development of the Analytical Product in California, S.E.E.'s sales business was located in Massachusetts. (#1 ¶12)

On February 28, 1997, in addition to becoming a director of S.E.E., Martin was given 10% of S.E.E.'s stock as well as an option to purchase additional stock at $.50 per share. (#1 ¶11)  About fifteen months later on May 13, 1998, Lee, too, was made an S.E.E. director, was granted 8000 shares of stock and an option to purchase more at $.50 per share. (#1 ¶20)  Lee received an additional 2000 shares of S.E.E. stock from the company on April 20, 1999. (#1 ¶21)

Martin and Lee moved to Quincy, Massachusetts when, in February of 2000, the Analytical Product and sales operations of S.E.E. were consolidated into a single facility in Middleboro, Massachusetts. (#1 ¶¶13-14)  In early April of that year Martin was promoted to the position of vice president of sales and marketing for the Analytic Product at S.E.E. (#1 ¶15)  The following month Lee received a promotion to the position of operations manager of S.E.E. (#1 ¶23)  It is alleged that

> As the personnel primarily responsible for developing and marketing S.E.E.'s analytical product, both Martin and Lee acquired, during their respective employment by S.E.E., comprehensive knowledge of S.E.E.'s most sensitive product development and customer-related trade secrets and confidential information, including but not limited to S.E.E.'s database of customer information.

Complaint #1 ¶24.

On or about August 28, 2000, Martin and Lee exercised their respective options, each purchasing an additional 5000 shares of S.E.E. stock. (#1 ¶¶16, 22) Together Martin and Lee owned 21% of S.E.E.'s stock by the start of 2001. (#1 ¶29)

S.E.E. earned $1.2 million from sales of the Analytical Product in 2000. (#1 ¶25) In 2001, the company started what was predicted to be a year-long development of an enhanced analytical product ("Enhanced Product") to be used not only in the forensic sciences, but also in the microelectronics manufacturing process. (#1 ¶26) Martin and Lee were to take the lead on the project in that they "were primarily responsible for managing the development, manufacture and marketing of the Enhanced Product, including the hiring of additional employees required to develop the product, and cultivating contacts with prospective customers." (#1 ¶27)

It is alleged that on December 31, 2001 while Martin and Lee were still employed by S.E.E., still serving as directors of the company and still holding a 21% ownership interest in the company, they filed articles of organization for a Massachusetts limited liability corporation, Quantum Dynamics International, LLC ("Quantum"). (#1 ¶¶31, 36)  The principal place of business for Quantum was Martin and Lee's residence. (#1 ¶32)   According to the allegations of the complaint, "Martin and Lee formed Quantum for the purpose, and with the intent of designing, marketing and installing an integrated, computerized analytical device to compete directly with S.E.E.'s product." (#1 ¶33)  Martin and Lee did not inform Tringali or S.E.E. that they were establishing Quantum, nor did they offer Tringali or S.E.E. the opportunity to participate in the new venture. (#1 ¶35[1])

When Martin and Lee failed in an attempt to force Tringali to sell them his shares of S.E.E. stock, on or about January 9, 2002, they resigned as employees and directors of S.E.E. (#1 ¶37)  It is alleged that before resigning, and unbeknownst to Tringali, the pair had:

---

[1] There appears to be a misstatement in the complaint where it is alleged that "[d]efendants Martin and Lee did not offer S.E.E. or Tringali the opportunity to participate in *S.E.E.'s* business. (#1 ¶35, emphasis added).  Presumably the allegation should read *Quantum's* business.

> -duplicated the paper and digital records containing all of S.E.E.'s confidential and proprietary information, including but not limited to all of the design and development information for the Enhanced Product, and all of S.E.E.'s Analytical Product customer information, and had removed the copies from S.E.E.'s facility;
>
> -removed from the S.E.E. facility a portion of S.E.E's inventory of the components to be integrated into the Analytical Product and/or the Enhanced Product; and
>
> -destroyed certain of S.E.E.'s corporate records, including all paper records and digital information regarding the specifications for the Enhanced Product, all computer code written for integration into the Enhanced Product, and all documentation regarding the process developed for assembling and manufacturing the Enhanced Product.

Complaint #1 ¶¶38-40.

In short order after resigning from S.E.E. but while they were still stockholders, Martin and Lee started to market a product for Quantum, a company of which they were the sole equity owners, that was essentially S.E.E.'s proposed Enhanced Product. (#1 ¶42)  This marketing effort was directed to S.E.E.'s customers, representatives and distributors in head-to-head competition with S.E.E. (#1 ¶42)  During this time the couple also allegedly

> made false statements to S.E.E.'s Analytical Product distributor and certain of its Analytical Product sales representatives [that] Tringali had improperly used

>corporate funds of S.E.E. for personal purposes, and had engaged in other financial improprieties with respect to the operation of S.E.E.

Complaint #1 ¶44.

Martin and Lee's actions purportedly so impacted S.E.E.'s revenue that the company had to file for bankruptcy protection in 2003, and then ultimately for liquidation in 2004. (#1 ¶¶45-46) Motion for Sanctions (#8) at p. 13.

### *IV. Rule 11, Fed. R. Civ. P.*

Rule 11(b), Fed. R. Civ. P., provides, in pertinent part:

>**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney...is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances-
>
>**(1)** it is not being presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> * * *
>
>**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information and belief.

Rule 11(b)(1)(4), Fed. R. Civ. P.

### *V. Discussion*

The defendants' attorney made three "representations" or statements in Defendants' Memorandum, Etc. (#3)[2] which Tringali complains are violative of Rule 11, to wit:

(1) "...Tringali has failed to allege any facts with regard to the transacting of any business by the defendants in Massachusetts for purposes of jurisdiction under [Mass.Gen.L. c. 223A] § 3(a) or any facts regarding causing any tortious injury under [Mass.Gen.L. c. 223A] § 3(c) or (d)."

(2) "Tringali has failed to alleged [sic] any facts which would permit this court to conclude that his claim arises out of any activities on the part of either Martin or Lee necessary to establish personal jurisdiction under the Massachusetts Long Arm Statute."

(3) "...the complaint fails to set forth any allegations upon which a reasonable inference could be drawn that either defendant had minimum contacts with Massachusetts sufficient to satisfy the due process clause."

The Court does not deem these statements to come within the ambit of Rule 11(b)(4), Fed. R. Civ. P. That section deals with "denial of factual contentions" in such pleadings as an answer or in an opposition to a motion for

---

[2] Defendant's Memorandum in Support of Motion to Dismiss (#3) is signed by defendants' attorney, Roger S. Davis, Esquire, of the firm of Davis & Rubin. Thus, the prerequisite of a signature is met.

preliminary injunction. The defendants' attorney did not deny any of the factual contentions; he denied that any factual allegations which would support jurisdiction had been made at all in the complaint.

However, Rule 11(b)(1), Fed. R. Civ. P., prohibits representations "being presented for an improper purpose, such as…to cause unnecessary delay or needless increase in the cost of litigation." The standard by which the conduct is judged is an objective one. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 549 (1991). As the First Circuit has explained, the standard to be applied "…is an objective standard of reasonableness." *Cruz v. Savage,* 896 F.2d 626, 631 (1 Cir., 1990).

> In imposing sanctions under Rule 11 and measuring an attorney's conduct under this objective standard, courts should exercise caution. Courts should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct based upon what was reasonable at the time the attorney acted. Fed. R. Civ. P. 11 advisory notes.

*Cruz,* 896 F.2d at 631.

An improper purpose may be inferred from the circumstances. *See Bay State Towing Co. v. Barge American 21,* 899 F.2d 129, 133 (1 Cir., 1990). "[F]ailing to show any plausible defense or good reason for believing" the truth of a matter asserted would support a finding that the assertion was made for an

improper purpose. *Id.* Similarly, "[f]raudulent intent is often easy to infer from an affirmative false statement...". *O'Ferral v. Trebol Motors Corp.,* 45 F.3d 561, 564 (1 Cir., 1995).

In the instant case, defendants' attorney made representations which were obviously untrue ("Tringali has failed to allege **any** facts") since myriad facts were pled in the Complaint which dealt with the defendants' transacting business in Massachusetts, causing tortious injury in Massachusetts and the subject of the claims arising out of the defendants' activities in Massachusetts. Further, no explanation for these untrue representations is provided in Defendants' Opposition, Etc. (#9) to the motion for sanctions.

Defendants' counsel does argue in the opposition that with respect to Count II, "[t]here is nothing in [plaintiff's] complaint which indicates that any slanderous conduct was committed by the defendants so as to give this Court jurisdiction" but no such distinction between Count I and Count II was made in the representations which are alleged to have violated Rule 11. Further, in his opposition to the motion for sanctions, defendants' counsel complains that Tringali attached a copy of a related state court action to bolster his position. Defendants' Opposition, Etc. (#9) at pp. 3-5. However, Tringali attached that document in support of that portion of the motion for sanctions which was

12

based on defendants' challenge to the jurisdictional amount; the state court complaint has no relation to the facts pleaded in support of personal jurisdiction in the complaint in the instant case. Lastly, the fact that Tringali has the burden of proving personal jurisdiction once the defendants challenge personal jurisdiction does not give defendants' counsel license to make false representations to the Court.

## VI. *Findings and Order*

From all the facts and circumstances, the Court finds that defendants' counsel made the representations set forth on page 3, *supra,* that the representations were false, and that they were made for an "improper purpose", *i.e.,* "to harass [the plaintiff] [and] to cause unnecessary delay [and] needless increase in the cost of litigation." Rule 11(b)(1), Fed. R. Civ. P. The Court finds that Roger S. Davis, Esquire, the attorney who signed the pleading, is "responsible for the violation." Rule 11(c), Fed. R. Civ. P. The Court finds that Attorney Davis received adequate notice of the claimed violation in the form of Tringali's motion and had a reasonable opportunity to respond to it, and did, in fact, respond. *Id.*

The Court finds that a sanction must be imposed which is "sufficient to deter repetition of such conduct and comparable conduct by others similarly

situated." Rule 11(c)(2), Fed. R. Civ. P. The minimum sanction which meets this criteria is the payment by Attorney Davis of one-third of the costs, including attorney's fees, to Tringali in opposing the motion to dismiss and one-half of the costs, including reasonable attorney's fees, in prosecuting the motion for sanctions. The fractions are applied since the false statements which the Court finds violated Rule 11 related only to one of the three grounds of the motion to dismiss and formed the basis of the one of the two grounds for the motion for sanctions.

Accordingly, it is ORDERED that Plaintiff, Philip Tringali's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (#8) be, and the same hereby is, ALLOWED to the extent that Attorney Davis shall be obligated to pay to counsel for Tringali one-third of the costs, including reasonable attorney's fees, to Tringali in opposing the motion to dismiss and one-half of the costs, including reasonable attorney's fees, in prosecuting the motion for sanctions.

Counsel for the plaintiff shall file and serve, *on or before the close of business Friday, March 17, 2006*, an affidavit or affidavits documenting the amount that he will claim as the reasonable expenses, including attorney's fees, which the plaintiff incurred in opposing the motion to dismiss and in pursuing

the motion for sanctions.[3]  Attorney Davis is granted leave to file and serve a response/opposition to the amount claimed or any deficiencies in the supporting documentation *on or before the close of business Friday, April 7, 2006.*

                        */s/ Robert B. Collings*
                        ROBERT B. COLLINGS
                        United States Magistrate Judge

February 27, 2006.

---

[3] Plaintiff's attorney shall document the total costs; the Court will apply the fractions.