UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI                    )
     Plaintiff                    )          C. A. NO. 04-12708-MLW
                                  )
V.                                  )
                                  )
PAUL MARTIN AND JUMI LEE            )
     Defendants                   )

**DEFENDANTS' REQUEST FOR STAY
OF ORDER ON MOTION FOR SANCTIONS**

     In accordance with MagR 2(c), the defendants request a stay of the Order on Motion for Sanctions dated February 27, 2006, and state as follows:

1.    On February 27, 2006, the Magistrate Judge entered an order on plaintiff Tringali's Motion for Sanctions, pursuant to Fed.R.Civ.P. 11, as against the defendants' counsel.

2.    The sanctions were based upon the Magistrate Judge's Report and Recommendation denying the defendants' motion to dismiss.

3.    Defendants have now filed, pursuant to MagR 3(c), an objection to the Report and Recommendation requesting a redetermination of same by the District Judge and believe they have meritorious grounds with respect to said objection.

4.    Pursuant to MagR 2(b), the defendants have also filed Defendants' Motion for Reconsideration of Order on Motion for Sanctions seeking a reconsideration of the sanctions by the District Judge and respectfully represent that they believe that they have good grounds for such reconsideration by the District Judge.

5.    Defendants' counsel brought to the attention of the District Judge and now the Magistrate Judge certain matters that were not before the Magistrate Judge when he ruled upon the Motion for Sanctions as well as the motion to dismiss, namely, the discovery proceedings initiated by Tringali's counsel in the Norfolk County Action on February 9, 2006.  In that regard, the defendants

have argued in the motion to dismiss that the Court should abstain based upon the counterclaim in the Norfolk County Action. Defendants have pointed out to the Court now that in Count One of the counterclaim in the Norfolk County Action, the plaintiff-in-counterclaim appears to be S.E.E., but in the prayers for relief there are two plaintiffs-in-counterclaim, namely, S.E.E. and Tringali.

6.      Further, on February 9, 2006, Tringali's counsel served notices of deposition to Martin and Lee in the Norfolk County Action and an attachment to those notices, to wit, a Schedule A comprising a request for documents (Exhibit "A" hereto). As pointed out in the Motion for Reconsideration of the Motion for Sanctions, the discovery request for documents in the Norfolk County Action consisting of twenty-two numbered requests, is identical, word-for-word, with the First Request for Production of Documents to Defendant Paul Martin which was served previously in this case on September 14, 2005 (Exhibit "B" hereto). This recent filing makes it clear that Tringali himself is pursuing the same cause of action for breach of fiduciary duty in the Norfolk County Superior Court as he is in Count I of the complaint in this action. We respectfully suggest that in urging the stay of the order on the motion for sanctions, that these recent discovery matters in the Norfolk County Action provide grounds for the District Court to now abstain from the instant action or to dismiss the complaint.

6.      In order to give the District Judge sufficient opportunity to review de novo the arguments on the motion to dismiss and to consider that the circumstances arising by the discovery proceedings served on February 9, 2006 in the Norfolk County Action, the defendants respectfully request a stay of the order on the motion for sanctions.

7.      As an aside, we leave for consideration by the Magistrate Judge to whom this request is initially directed, whether to reconsider both the Report and Recommendation on Motion to Dismiss and the order of sanctions based upon the fact that Tringali, as evidenced by the deposition notices of February 9, 2006, is clearly proceeding on the same cause of action in Norfolk County.

March 9, 2006,                                    Attorney for defendants,


                                                 _____/s/Roger S. Davis_____
                                                 Roger S. Davis
                                                 BBO No. 116320
                                                 DAVIS & RUBIN
                                                 One Bowdoin Square
                                                 Suite 901
                                                 Boston, MA  02114-2919
                                                 (617) 742-4300

QDI13:USDC:REQSTAY

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,            )
INDIVIDUALLY AND AS STOCKHOLDERS     )
ON BEHALF OF S.E.E., INC.            )
      Plaintiffs                     )
                                     )
vs.                                  )
                                     )
S.E.E., INC. AND                     )
PHILLIP TRINGALI,                    )
      Defendants

## NOTICE OF CONTINUED TAKING DEPOSITION OF PAUL MARTIN

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Monday, March 20

2006 at the law offices of Phillips & Angley, One Bowdoin Square,

Boston, Massachusetts the defendant Phillip Tringali, by his

attorney will recommence the deposition upon oral examination of

the plaintiff Paul Martin pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

_____

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.O. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

on all parties or their attorney of record this day by hand.

Date: February 9, 2006

_____

Daniel Treger, Esq.

L:\LITG\trng002\lee.not2.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,           )
INDIVIDUALLY AND AS STOCKHOLDERS    )
ON BEHALF OF S.E.E., INC.           )
     Plaintiffs                     )
                                    )
vs.                                 )
                                    )
S.E.E., INC. AND                    )
PHILLIP TRINGALI,                   )
     Defendants

## NOTICE OF CONTINUED TAKING DEPOSITION OF JUMI LEE

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Tuesday, March 21

2006, at the law offices of Phillips & Angley, One Bowdoin

Square, Boston, Massachusetts the defendant Phillip Tringali, by

his attorney will recommence the deposition upon oral examination

of the plaintiff Jumi Lee pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.O. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

on all parties or their attorney of record this day by hand.

Date:February 9, 2006

Daniel Treger, Esq.

L:\LITG\trng002\martin.not2.wpd

SCHEDULE A

DEFINITIONS

(1) Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) Document.

a. The word "document" includes without limitation the original or any copy of any notes, correspondence, memoranda (including written memoranda of telephone conversations, other communications, discussions, agreements, and any other acts, transactions or activities), contracts, agreements, letters, telegrams, evaluations, work papers, calendars, appointment books, diaries, instructions, order forms, records, sound recordings, forms, statements, photographs, x-rays, journals, notices, interoffice and interoffice communications, photostats, and any other written matter of any kind, including, but without limitation, any marginalia appearing on any documents or any other writing. A document in the possession, custody or control of another person is considered to be in the possession, custody or control of the defendant if the defendant has a right or privilege to examine it upon request or demand.

b. In the event that it is claimed that any communication or document responsive to any interrogatory is privileged or attorney's work product, each such communication or document should be fully identified in writing, except that the substance thereof need not be described to the extent it is claimed to be privileged.

(3) Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the

    (a) type of document;

    (b) general subject matter;

    (c) date of the document;  and

    (d) author(s), addressee(s), and recipient(s).

(5) Parties.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) Concerning.  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) State the Basis.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) Quantum means Quantum Dynamics International, LLC, its agents and employees.

(10) CRAIC means CRAIC  Technologies, LLC, its agents and employees

(11) S.E.E. means S.E.E., Inc, its agents or employees.

(12) Customer of S.E.E. means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) Prospective Customer of S.E.E. means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

### Request No. 1

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents  concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing,

developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No. 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No. 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A".

Request No. 14

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute  of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a. Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PAUL MARTIN

Pursuant to Fed.R.Civ.P., Rule 34 and Local Rules 26.5 and 34.1 of the United States District Court for the District of Massachusetts, plaintiff Phillip Tringali hereby requests that the defendant, Paul Martin respond to the following document request and produce documents at plaintiff's counsel's office in accordance with the Rules.

### DEFINITIONS

The uniform definitions set forth in Rule 26.5 of the Local Rules of the United States for the District of Massachusetts apply:

(1) *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in <u>Fed.R.Civ.P. 34(a)</u>. A draft or non-identical copy is a separate document within the meaning of this term.

(3) *Identify (With Respect to Persons).*  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents).*  When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document;  and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties.*  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person.*  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning.*  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis.*  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

2

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) *Quantum* means Quantum Dynamics International, LLC, its agents and employees.

(10) *CRAIC* means CRAIC  Technologies, LLC, its agents and employees

(11) *S.E.E.* means S.E.E., Inc, its agents or employees.

(12) *Customer of S.E.E.* means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) *Prospective Customer of S.E.E.* means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

Request No. 1

3

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004 , but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

4

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No 10

All promotional literature for  Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

5

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A"..

Request No. 14

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a.     Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

RESPECTFULLY SUBMITTED,
Phillip Tringali,
By his attorney,

Date: 9\14\05

_____
Jeffrey J. Phillips, Esq
B.B.O. #398480
Daniel Treger, Esq
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\LITG\Trng001\martinreq.wpd

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on 9\14\05

http://www.microspectra.com/prod01.htm

crospectrophotometer and Microspectrometer



# QDI Mach10™ MSP

The QDI Mach10™ Microspectrophotometer is the most advanced microspectrophotometer to date. It is a powerful yet user friendly tool for measuring the spectral characteristics of microscopic samples non-destructively. Samples can be as small as 2 microns across and require little preparation. The system can measure transmission, reflectance, and fluorescence spectra in the near-UV, visible, and NIR regions with high spectral resolution.



**Home**

**Up**



# QDi

**Home**

**Up**



QDI Mach1™ MSP

The QDI Mach1™ Spectrophotometer for Microscopes is used to give many models of microscopes spectroscopic capabilities without the expense of a dedicated system. It enables a scientist to measure the spectral characteristics of microscopic samples non-destructively. The system can measure transmission, reflectance, and fluorescence spectra in the visible and near infrared regions with high spectral resolution depending on the microscopes configuration.

represent your company going forward for all sales and support (the latter most important to ESR). However, nothing was mentioned by either of us regarding Foster & Freeman. I was told in an e-mail by Nick on 1 March that "The Fx5 is back there [at ESR] and working fine." (see below)

Apparently, the problems with this instrument continued past this time and Angus must have believed that Alphatech was still involved with this product but was not assisting F&F with it. Paul is going to call Angus directly to get his spin on this but this is how I read things from Paul's comments. So the negative comments about Alphatech in the Referee Review given by Angus appear to have been based on his perception that we were not doing what they expected to support the "entire package" (including the F&F FX5).

I have asked Paul to find out from Angus if this is indeed how he (Angus) viewed Alphatech when he gave his evaluation to DAIS in his role as our reference. More tomorrow on this.

Stay tuned,

Evan S.

>Date: Fri, 01 Mar 2002 08:36:50 +1100
>From: Nick Weber <nick@xtek.net>
>Subject: Head Up
>X-Envelope-To: evan.sales@alphatech.co.nz
>To: "Evan Snyder (E-mail)" <evan.sales@alphatech.co.nz>
>Cc: "'Nigel French (E-mail)'" <nigel@xtek.net>,
> "Nick Away (E-mail)" <nickw@xtek.net>
>X-MIMEOLE: Produced By Microsoft MimeOLE V6.00.2600.0000
>X-Mailer: Microsoft Outlook CWS, Build 9.0.2416 (9.0.2911.0)
>Importance: Normal
>X-MSMail-priority: Normal
>
Evan,

The Fx5 is back there and working fine.

More importantly, you might be interested to know that Paul Martin and S.E.E. have parted company. Paul and Phil couldn't see eye to eye over various matters. The upshot is that Paul has started his own company (QDI) with Jumi and already has an improved range of equipment including a less expensive low end system (which he and I worked out in New Zealand).

Paul has undertaken to pick up the warranty issues on all the equipment I've sold over the last two or three years, so I'm comfortable with the arrangements.

The upshot is that XTEK has informed S.E.E. that we no longer intend to represent them. It would seem to me that the same will happen at S.E.E. as it did at Nanometrics - the msp division will wither away without their input and ideas. I expect that Phil will be in touch with you very soon, if he has not already been offering some attractive deals. That's entirely up to you of course, but I know that I'll be sticking with Paul.

QDI - www.microspectra.com - will be attending the ANZFSS conference with us and showing their new range of instruments - perhaps you might like to come along as well?

Cheers,

Nick
nick@xtek.net
Website: www.xtek.net
Tel: +61 2 6280 6321
Fax: +61 2 6280 6518

00001 "β"