UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI            )
      Plaintiff            )        C. A. NO. 04-12708-MLW
                          )
V.                         )
                          )
PAUL MARTIN AND JUMI LEE   )
      Defendants        )

**DEFENDANTS' MOTION FOR RECONSIDERATION
OF ORDER ON MOTION FOR SANCTIONS
AND REQUEST FOR ORAL ARGUMENT**

In accordance with MagR 2(b), the defendants move for reconsideration by the District Judge of the Magistrate Judge's Order on Plaintiff Phillip Tringali's Motion for Sanctions Pursuant to Fed.R.Civ.P. 11, dated February 27, 2006.

**I.    Designation Of Order For Which Reconsideration Is Requested**

The defendants object to that part of the order set forth on Page 14, which orders Attorney Davis to pay counsel fees to Tringali based upon one third of the cost, including reasonable attorney's fees in connection with Tringali's opposition to the defendants' motion to dismiss, and one half of the costs, including reasonable attorney's fees, in prosecution of the subject motion for sanctions.

**II.    Basis For Objection**

1.    <u>Defendants' Objection to Report and Recommendation on Defendants' Motion to Dismiss.</u>

On February 23, 2006, the Magistrate Judge entered a Report and Recommendation on Defendants' Motion to Dismiss ("Report and Recommendation") recommending denial of the defendants' motion to dismiss.

In accordance with MagR 3, the defendants have now filed written objections to said Report and Recommendation and respectfully suggest that there are meritorious grounds submitted to the District Judge to make a de novo determination with respect to the merits of that motion and to reject or

modify in whole or in part the findings or recommendations made by the Magistrate Judge.

Among the matters which have been advanced by the defendants in the objection to the Report and Recommendation are the findings by the Magistrate Judge with respect to the abstention argument asserted by the defendants in their motion to dismiss wherein the Magistrate found that in a related Norfolk County Action, that Tringali did not assert any claim against either of the defendants. Contrary to the finding by the Magistrate Judge, the defendants have asserted in their objection that the counterclaim filed in the Norfolk County Action in Count One of the counterclaim, is substantially identical to the claim for breach of fiduciary duty asserted by Tringali in this instant action and that while the counterclaim as initially filed in the pleading filed in the Norfolk County Action refers to the corporation, S.E.E., Inc., as the plaintiff in counterclaim, in the prayers for relief Tringali himself has been joined as a plaintiff in counterclaim and seeks damages, interest, costs and attorney's fees pursuant to the same Count One of the counterclaim.

On Page 9 of the answer and counterclaim, Tringali states in the prayers for relief as follows:

> WHEREFORE the <u>plaintiffs in counterclaim S.E.E., Inc and Phillip Tringali</u> (emphasis added) make the following requests for relief:
>
> 1.    That the Court award judgment to plaintiffs [referring to plaintiffs in counterclaim] for damages, together with interest, costs and attorney's fees, pursuant to Counts I through III;
>
> 2.    For such relief as the Court may deem just and proper.
>
> S.E.E., Inc. and Phillip Tringali,
> By their attorneys,
> _____
> Susan S. Maire, Esq.
> Oppenheim & Maire, LLP
> 313 Plymouth Street
> Halifax, MA  02338
> (781) 294-8000
> BBO #315360

More recently on February 9, 2006, counsel for Tringali in the Norfolk County Action served two deposition notices to both Martin and Lee. Attached to each notice was a Schedule A in identical form comprising a request for production of documents. A copy of the two notices and the Schedule A are attached (Exhibit "A" hereto). Previous to this notice of deposition, in the instant case, on September 14, 2005, a request for production of documents was served by Tringali entitled First Request for Production of Documents to Defendant Paul Martin (Exhibit "B" hereto).

In the instant case, Plaintiff's First Request for Production of Documents to Defendant Paul Martin, Exhibit "B," contains twenty-two numbered requests.

These requests seek communications between Martin and Lee's companies, Quantum and CRAIC, to customers or prospective customers, documents concerning product specifications, source codes, application papers, communications with vendors, distributors, sales representatives, telephone bills, promotional literature, upgrades, documents concerning sales of products developed by Quantum and CRAIC, parts purchased, etc.

The Schedule A to the February 9, 2006 deposition notices, part of Exhibit "A" hereto, also contain twenty-two numbered requests. These requests are identical and word-for-word with Exhibit "B," Plaintiff's First Request for Production of Documents to Defendant Paul Martin in the instant case.

The identical discovery requests in both cases makes it clear that Tringali is pursuing Count One of the counterclaim for breach of fiduciary duty as a plaintiff in counterclaim in the Norfolk County Action based upon the exact same cause of action as he has asserted in Count I of the complaint in this case.

Based upon this recent information, which the Magistrate Judge did not have before him when he ruled on the motion to dismiss, the defendants believe that the case for abstention is quite clear. Tringali seeks to have it both

ways by pursuing a claim for breach of fiduciary duty in both the Norfolk County Action and in the instant action.

This matter was not before the Magistrate Judge when he ruled upon the Motion to Dismiss, we respectfully suggest to this Court that apart from other grounds for reconsideration on a motion for sanctions, it is clear now that Tringali has brought the same cause of action in the Norfolk County Superior Court as he has in the instant case, namely, for breach of fiduciary duty. We further suggest that if the Court, based upon this information as well the other arguments in support of the Objection to Report and Recommendation on Defendants' Motion to Dismiss, reverses the Report and Recommendation and dismisses the complaint, then it should likewise vacate the order on the Motion for Sanctions. In this regard, we question the actions of Tringali's counsel in filing the recent deposition notices in the Norfolk County Action requesting the identical documents which he has requested in this instant action, the documents which clearly show that he is pursuing the counterclaim for breach of fiduciary duty in Norfolk County and we would ask the Court to consider that matter as part of this Motion for Reconsideration of the Order on Motion for Sanctions.

2.    <u>Defendants' Counsel Should Not be Subject to Sanctions.</u>

The crux of the Magistrate's finding that defendants' counsel made false representations and for an improper purpose relate to the claims made in the motion to dismiss that Tringali has failed to allege facts that the defendants transacted business in Massachusetts or caused tortious injury in Massachusetts. These claims are based upon the wording of the complaint itself, which we respectfully submit does not clearly state within the four corners of the document what acts of the defendants took place in Massachusetts and/or what acts of the defendants caused tortious injury in Massachusetts. Though the defendants may have been in error in asserting the grounds for the motion to dismiss, as stated in Moore's Federal Rules Pamphlet, §11.5(3), by the author "legal contentions that are unsuccessful, but

nevertheless merit serious consideration, should not be sanctioned under Rule 11."

In that regard, the allegations in the complaint could have been somewhat more precise by identifying the tortious acts which took place or affected or caused injury in Massachusetts and, notwithstanding the ruling by the Magistrate with respect to Count II for slander, that Count II on its face, merely states in Paragraph 53 that at various times on or after January 9, 2002, Martin and Lee made false statements to certain third persons regarding Tringali's improper use of corporate funds and other financial improprietaries. We respectfully suggest the allegations in Count II could have and should have been drafted more precisely.  We believe this falls in line with the further statement by the author Moore, §11.5(3) supra, "if, at the time an attorney presented the paper to the court, reasonable practitioners could have disagreed over the existence of a good faith argument in support of that paper, Rule 11 sanctions are inappropriate."

3.    The Defendants Object to the Authority of the Magistrate to Order Sanctions.

Defendants' counsel has been alerted to the question of whether the Magistrate Judge had authority to impose sanctions by the comments in Massachusetts Practice 46, Federal Practice, Savery, Corso & Harrington, at Page 255:

> There is some uncertainty whether a magistrate judge has the authority to impose sanctions under Rule 11.

While defendants' counsel has been unable to locate a decision from this circuit, there have been decisions in other circuits dealing with this question. In some of the circuits it has been held that the magistrate has such authority, however, the Court of Appeals for the Sixth and Seventh Circuits had held to the contrary that a magistrate lacks jurisdiction to enter a Rule 11 order.

In Bennett v. General Caster Service of N. Gordon Co., 976 F.2d 985 (6th Cir. 1992), at 998 the court there stated:

Nothing in the Act expressly vests a magistrate judges with jurisdiction to enter orders imposing Rule 11 sanctions on parties. Rule 72(a) authorizes a magistrate judge to enter an order only as to a "pretrial matter…" that is not dispositive of a "claim or defense of a party." In the absence of any further limiting language in the rule or the statute pursuant to which the rule was implemented, we decline to read "claim" to encompass only the underlying substantive claim of a party and not a Rule 11 motion resulting in an award of money damages. In the present case, the magistrate judge's purported order entered pursuant to appellees' Rule 11 motion resulting in an award of money damages. Nothing remained but to execute the judgment; therefore, this purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a "claim" of a party. Because this was a dispositive matter, under Fed.R.Civ.P. 72(b), the magistrate judge should have issued a report and recommendation for *de novo* review by the district court.

In the 7th Circuit case, <u>Alpern v. Lieb</u>, 38 F.3d 933, 935 (7th Cir. 1994), the court there held:

Although an award under Rule 11 is conceptually distinct from a decision on the merits, it requires one party to pay money to another; the denial of a request for sanctions has an effect similar to the denial of a request for damages. The power to award sanctions like the power to award damages, belongs in the hands of the district judge. Certainly so if the district judge plans to treat an order to pay sanctions like an injunction and to punish nonpayment as contempt of court—for § 636(b)(1)(A) expressly denies to the magistrate judge any power to issue injunctions. (Just why an order to pay sanctions should be enforceable by contempt proceedings, when an order to pay money damages is not so treated, is obscure. We need not determine whether the characterization was proper.) A district judge may refer a dispute about sanctions to a magistrate judge for a recommendation under § 636(b)(1)(B) or § 636(b)(3), but the magistrate judge may not make a decision with independent effect.

In accordance with the decisions in the Sixth and Seventh Circuit, therefore, the defendants object to the order by the Magistrate Judge imposing the sanctions in question.

### III.    **L.R. 7.1 Certification**

The undersigned certifies in accordance with L.R. 7.1(A)(2) that he has conferred with opposing counsel and has attempted in good faith to resolve the issues, but has been unable to do so.

### VI.    **Request for Oral Argument**

The defendants believing that oral argument may assist the Court and wish to be heard hereby request oral argument of this motion.

### VII.    **Request for Relief**

We respectfully request that the District Judge reverse and vacate the order for sanctions.

March 9, 2006                                        Attorney for defendants,


   /s/Roger S. Davis
Roger S. Davis
BBO No. 116320
DAVIS & RUBIN
One Bowdoin Square
Suite 901
Boston, MA  02114-2919
(617) 742-4300

QDI13:USDC:MOTRECON

7

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                        SUPERIOR COURT DEPARTMENT
                                   CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,            )
INDIVIDUALLY AND AS STOCKHOLDERS     )
ON BEHALF OF S.E.E., INC.            )
      Plaintiffs                     )
                                     )
vs.                                  )
                                     )
S.E.E., INC. AND                     )
PHILLIP TRINGALI,                    )
      Defendants

### **NOTICE OF CONTINUED TAKING DEPOSITION OF PAUL MARTIN**

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Monday, March 20

2006 at the law offices of Phillips & Angley, One Bowdoin Square,

Boston, Massachusetts the defendant Phillip Tringali, by his

attorney will recommence the deposition upon oral examination of

the plaintiff Paul Martin pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

_____

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.0. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

on all parties or their attorney of record this day by hand.

Date:February 9, 2006

_____

Daniel Treger, Esq.

L:\LITG\trng002\lee.not2.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                              SUPERIOR COURT DEPARTMENT
                                         CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,                )
INDIVIDUALLY AND AS STOCKHOLDERS         )
ON BEHALF OF S.E.E., INC.                )
     Plaintiffs                          )
                                         )
vs.                                      )
                                         )
S.E.E., INC. AND                         )
PHILLIP TRINGALI,                        )
     Defendants

## NOTICE OF CONTINUED TAKING DEPOSITION OF JUMI LEE

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Tuesday, March 21

2006, at the law offices of Phillips & Angley, One Bowdoin

Square, Boston, Massachusetts the defendant Phillip Tringali, by

his attorney will recommence the deposition upon oral examination

of the plaintiff Jumi Lee pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.0. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing
on all parties or their attorney of record this day by hand.

Date:February 9, 2006

Daniel Treger, Esq.

L:\LITG\trng002\martin.not2.wpd

SCHEDULE A

DEFINITIONS

(1) Communication.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) Document.

a. The word "document" includes without limitation the original or any copy of any notes, correspondence, memoranda (including written memoranda of telephone conversations, other communications, discussions, agreements, and any other acts, transactions or activities), contracts, agreements, letters, telegrams, evaluations, work papers, calendars, appointment books, diaries, instructions, order forms, records, sound recordings, forms, statements, photographs, x-rays, journals, notices, interoffice and interoffice communications, photostats, and any other written matter of any kind, including, but without limitation, any marginalia appearing on any documents or any other writing.  A document in the possession, custody or control of another person is considered to be in the possession, custody or control of the defendant if the defendant has a right or privilege to examine it upon request or demand.

b. In the event that it is claimed that any communication or document responsive to any interrogatory is privileged or attorney's work product, each such communication or document should be fully identified in writing, except that the substance thereof need not be described to the extent it is claimed to be privileged.

(3) Identify (With Respect to Persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the

    (a) type of document;

    (b) general subject matter;

    (c) date of the document; and

    (d) author(s), addressee(s), and recipient(s).

(5) Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person. The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) Concerning. The term "concerning" means referring to, describing, evidencing, or constituting.

(8) State the Basis.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) Quantum means Quantum Dynamics International, LLC, its agents and employees.

(10) CRAIC means CRAIC  Technologies, LLC, its agents and employees

(11) S.E.E. means S.E.E., Inc, its agents or employees.

(12) Customer of S.E.E. means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) Prospective Customer of S.E.E. means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

### Request No. 1

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents  concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing,

developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No. 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No. 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A".

Request No. 14

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a. Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "1ow end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

PHILLIP TRINGALI,                      )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )
                                       )
PAUL MARTIN AND                        )
JUMI LEE,                              )
                                       )
            Defendants                 )

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PAUL MARTIN

Pursuant to Fed.R.Civ.P., Rule 34 and Local Rules 26.5 and 34.1 of the United States District Court for the District of Massachusetts, plaintiff Phillip Tringali hereby requests that the defendant, Paul Martin respond to the following document request and produce documents at plaintiff's counsel's office in accordance with the Rules.

### DEFINITIONS

The uniform definitions set forth in Rule 26.5 of the Local Rules of the United States for the District of Massachusetts apply:

(1) *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in <u>Fed.R.Civ.P. 34(a)</u>. A draft or non-identical copy is a separate document within the meaning of this term.

(3) *Identify (With Respect to Persons)*.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents)*.  When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document;  and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties*.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person*.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning*.  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis*.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

2

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) *Quantum* means Quantum Dynamics International, LLC, its agents and employees.

(10) *CRAIC* means CRAIC  Technologies, LLC, its agents and employees

(11) *S.E.E.* means S.E.E., Inc, its agents or employees.

(12) *Customer of S.E.E.* means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) *Prospective Customer of S.E.E.* means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

<u>Request  No. 1</u>

3

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004 , but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

4

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A"..

<u>Request No. 14</u>

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

<u>Request No. 15</u>

All documents concerning or relating to the organization of Quantum and/or CRAIC.

<u>Request No. 16</u>

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

<u>Request No. 17</u>

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

<u>Request No. 18</u>

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

<u>Request No. 19</u>

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

    a.     Absolute Reflectance Package.

<u>Request No. 20</u>

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

<u>Request No. 21</u>

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

RESPECTFULLY SUBMITTED,
Phillip Tringali,
By his attorney,

Date: 9/14/05

Jeffrey J. Phillips, Esq
B.B.O. #398480
Daniel Treger, Esq
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\LITG\Trng001\martinreq.wpd

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on _____

http://www.microspectra.com/prod01.htm

crospectrophotometer and Microspectrometer

# QDi ™

## QDI Mach10™ MSP

The QDI Mach10™ Microspectrophotometer is the most advanced microspectrophotometer to date. It is a powerful yet user friendly tool for measuring the spectral characteristics of microscopic samples non-destructively. Samples can be as small as 2 microns across and require little preparation. The system can measure transmission, reflectance, and fluorescence spectra in the near-UV, visible, and NIR regions with high spectral resolution.



**Home**

**Up**

*A*

trophotomet.    l microspectrometer





The QDI Mach1™ Spectrophotometer for Microscopes is used to give many models of microscopes spectroscopic capabilities without the expense of a dedicated system. It enables a scientist to measure the spectral characteristics of microscopic samples non-destructively. The system can measure transmission, reflectance, and fluorescence spectra in the visible and near infrared regions with high spectral resolution depending on the microscopes configuration.

represent your company going forward for all sales and support (the latter
most important to ESR). However, nothing was mentioned by either of us
regarding Foster & Freeman. I was told in an e-mail by Nick on 1 March that
"The Fx5 is back there [at ESR] and working fine." (see below)

Apparently, the problems with this instrument continued past this time and
Angus must have believed that Alphatech was still involved with this
product but was not assisting F&F with it. Paul is going to call Angus
directly to get his spin on this but this is how I read things from Paul's
comments. So the negative comments about Alphatech in the Referee Review
given by Angus appear to have been based on his perception that we were not
doing what they expected to support the "entire package" (including the F&F
FX5).

I have asked Paul to find out from Angus if this is indeed how he (Angus)
viewed Alphatech when he gave his evaluation to DAIS in his role as our
reference. More tomorrow on this.

Stay tuned,

Evan S.

>Date: Fri, 01 Mar 2002 08:36:50 +1100
>From: Nick Weber <nick@xtek.net>
>Subject: Head Up
>X-Envelope-To: evan.sales@alphatech.co.nz
>To: "Evan Snyder (E-mail)" <evan.sales@alphatech.co.nz>
>Cc: "'Nigel French (E-mail)'" <nigel@xtek.net>,
> "Nick Away (E-mail)" <nickw@xtek.net>
>X-MIMEOLE: Produced By Microsoft MimeOLE V6.00.2600.0000
>X-Mailer: Microsoft Outlook CWS, Build 9.0.2416 (9.0.2911.0)
>Importance: Normal
>X-MSMail-priority: Normal
>
Evan,

The Fx5 is back there and working fine.

More importantly, you might be interested to know that Paul Martin and
S.E.E. have parted company. Paul and Phil couldn't see eye to eye over
various matters. The upshot is that Paul has started his own company (QDI)
with Jumi and already has an improved range of equipment including a less
expensive low end system (which he and I worked out in New Zealand).

Paul has undertaken to pick up the warranty issues on all the equipment
I've sold over the last two or three years, so I'm comfortable with the
arrangements.

The upshot is that XTEK has informed S.E.E. that we no longer intend to
represent them. It would seem to me that the same will happen at S.E.E. as
it did at Nanometrics - the msp division will wither away without their
input and ideas. I expect that Phil will be in touch with you very soon,
if he has not already been offering some attractive deals. That's entirely
up to you of course, but I know that I'll be sticking with Paul.

QDI - www.microspectra.com - will be attending the ANZFSS conference with
us and showing their new range of instruments - perhaps you might like to
come along as well?

Cheers,

Nick
nick@xtek.net
Website: www.xtek.net
Tel: +61 2 6280 6321
Fax: +61 2 6280 6518