UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI     )
   Plaintiff      )   C. A. NO. 04-12708-MLW
           )
V.           )
           )
PAUL MARTIN AND JUMI LEE )
   Defendants    )

**DEFENDANTS' MOTION FOR
STAY OF DISCOVERY AND FOR
MORE DEFINITE STATEMENT**

## PRELIMINARY STATEMENT

On or about December 28, 2004, the plaintiff, Phillip Tringali ("Tringali"), instituted this instant action against the defendants, Paul Martin ("Martin") and Jumi Lee ("Lee").

In Count I for breach of fiduciary duty, Tringali has alleged that Martin and Lee have appropriated trade secrets of the company, S.E.E., Inc. ("S.E.E."), as set forth in Paragraphs 49(b) and (c), as follows:

> 49. Martin and Lee breached their fiduciary duties to Tringali by conduct including, but not limited to the following acts, all committed while they were still stockholders of S.E.E.:
>
> b. Conspiring to compete with S.E.E. by expropriating S.E.E.'s confidential information, including but not limited to the specifications and work product for S.E.E.'s Enhanced Product, and S.E.E.'s database of customers and customer service and purchase histories, sales representatives and service agents;
>
> c. Converting all of S.E.E.'s confidential and proprietary information, and some or all of S.E.E.'s inventory of Analytical Product components;

On March 15, 2005, Martin and Lee filed a motion to dismiss the complaint, and subsequently on May 6, 2005, Tringali filed an opposition to

that motion.  The Magistrate Judge has now entered an order recommending dismissal of that motion.

In the course of discovery, Tringali served interrogatories and requests for production as to which Martin has objected to certain of the interrogatories and requests on the grounds that the same constitute trade secrets and proprietary information.

On November 2, 2005, Tringali then filed a motion to compel answers to interrogatories and production of documents as to those matters which Martin and Lee contend constitute their trade secrets and proprietary information.

On November 17, 2005, Martin filed an opposition to Tringali's motion to compel.

On November 8, 2005, Martin and Lee filed Defendants' Motion for Protective Order as to Confidential and Proprietary Information and on November 23, 2005, Tringali filed an opposition to Martin and Lee's Motion for a Protective Order.  The Court has now scheduled a hearing for March 22, 2006 on Tringali's Motion to Compel and Martin and Lee's Motion for a Protective Order.

Prior to submitting this Motion, which at that time defendants' counsel referred to as a "Motion for Definite Statement," Attorney Davis wrote to Attorney Treger by letter dated December 16, 2005 (Exhibit "A" hereto) enclosing a draft of the memorandum which is in support of this Motion, which is in substantially the same form as filed herewith.  In an effort to avoid further litigation of the discovery matters, Attorney Davis proposed that Tringali identify with particularity all documents relating to the trade secrets and confidential information alleged to have been misappropriated by Martin and Lee.

On December 29, 2005, as evidenced by two letters from Attorney Davis to Attorney Treger dated December 30, 2005, discussion was had concerning the Memorandum which had been previously furnished to Attorney Treger on December 16, 2005, requesting the documents enumerated in both letters (Exhibits "B" and "C" hereto).

On January 20, 2006, Attorney Treger provided a series of documents as set forth in his letter of the same date (Exhibit "D" hereto).  This was in partial response to the request for documents which is set forth in the letters of December 30, 2005 and Exhibits "B" and "C."

Item 3 in the letter of December 30, 2005, Exhibit "B," requested that Attorney Treger send a copy of the pleadings which he claims spell out in detail the alleged misappropriated information, however, he failed to do so nor has he directed defendants' counsel otherwise to the specific pleadings which spell that out in detail.

On or about January 24, 2006, Attorney Treger delivered a letter (Exhibit "E" hereto) making reference to the Rule 7.1 conference regarding the motion for more definite statement together with a CD computer disk.  That CD computer disk has now been analyzed and it consists of 671 files, one file of which consists of an amalgamation of assembly instructions, drawings and parts lists for the S.E.E. Models 1100 and 2100 products, however, that file contains no documents with respect to the Model 2200/Maximus system which has been the subject matter of Tringali's complaints of misappropriation by the defendants.

What Attorney Treger failed to disclose is that the balance of the CD computer disk, 670 files, which have now been examined, contains 670 nonrelated files having nothing to do with this action, but appear to be files involving one or more litigation matters in which Mr. Treger's firm, Phillips & Angley, is counsel.  None of these actions involves either the plaintiff Tringali or the defendants.  In fact, at the time of furnishing this computer disk, Mr. Treger represented that this disk had been prepared by his client and contained documents relevant to this cause of action and in particular to the letters of December 30, 2005, Exhibits "B" and "C."

By letter dated February 23, 2006, defendants' counsel wrote to Attorney Treger advising him of the same, referring to the nonrelated litigation matter, Crampton v. Affiliated Clinical Engineering Services, Inc. (Exhibit "F" hereto).  A copy of one of the documents on 670 files, to wit, a complaint in that action is

attached hereto as Exhibit "G" hereto).  Attorney Treger has not responded to the letter of February 23, 2006.

As of the date of filing hereof no documents or information has been forthcoming with respect to the matters referred to in the letter of December 30, 2005 (Exhibit "C"), to wit, documents supporting the allegation that Martin and Lee misappropriated information with respect to the S.E.E. Model 2200. Moreover, the source code as referred to in the same letter, apparently only exists in electronic format as referred to in Attorney Treger's letter of January 20, 2006 and has not been made available to the defendants.

Martin and Lee are now filing herewith the subject motion to stay the discovery and to require that Tringali provide a more definite statement, identifying with particularity the alleged misappropriated trade secrets.  In support of this Motion, Martin and Lee have filed herewith a Memorandum in Support of Defendants' Motion for Stay of Discovery and for More Definite Statement.

More recently, discovery documents filed by Tringali's counsel in the Norfolk County Action, indicate that Tringali is attempting to try the same claim for breach of fiduciary duties on its merits in the Norfolk County Superior Court as he has set forth in Count I of his complaint in this action. As further grounds for staying discovery in this case we submit to the Court for its consideration these facts and documents.

On February 9, 2006, Tringali's counsel served two deposition notices for the taking of deposition of Martin and Lee together with a Schedule A request for documents (Exhibit "H" hereto). The Schedule A request for documents comprises twenty-two separately numbered requests.

Previously, in this action on September 14, 2005, Tringali served Plaintiff's First Request for Production of Documents to Paul Martin (Exhibit "I" hereto), consisting of twenty-two numbered requests.  The twenty-two numbered requests in both Schedule A and in this request for production are identical, word-for-word.

**L.R. 7.1 Certification**

In accordance with L.R. 7.1(A)(2), the undersigned certifies that he has conferred with Attorney Treger on December 15, 2005 regarding the subject of this Motion, and that in advance of filing the motion in court, has provided a copy of the supporting Memorandum.  Moreover, Attorney Treger in his letter of January 24, 2006, Exhibit "E," acknowledged that the parties had held an L.R. 7.1 conference.

WHEREFORE, Martin and Lee pray for relief as follows:

(1)    That the Court issue an order requiring the plaintiff, Phillip Tringali, within twenty (20) days from the date of allowance of this Motion, to provide defendants' counsel with a designation, setting forth with particularity and in language which can be understood by a layperson, exactly what the plaintiff claims to constitute the trade secrets allegedly misappropriated by the defendants that form the basis of this legal action, and also to produce to defendants' counsel all documents which contain, refer to, or incorporate by reference any of the trade secrets which the plaintiff claims were allegedly misappropriated by the defendants.

(2)    That the Court further order, pending completion of the more definite statement, that all discovery matters relating to any trade secret claims shall be stayed.

March 14, 2006                                    Attorney for defendants,

                                    _____
                                    Roger S. Davis
                                    BBO No. 116320
                                    DAVIS & RUBIN
                                    One Bowdoin Square
                                    Suite 901
                                    Boston, MA  02114-2919
                                    (617) 742-4300

QDI12:USDC:MOTDS

DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

## IN HAND

December 16, 2005

Daniel Treger, Esq.
PHILLIPS & ANGLEY
One Bowdoin Square
Boston, MA 02114

Re:    Phillip Tringali
Vs:    Paul Martin, et al
No:    04-12708

Dear Mr. Treger:

As I indicated to you, I intend to file a Motion for More Definite Statement
unless we can resolve this matter. In advance of filing the Motion I am
enclosing a draft of the memorandum which I have prepared setting forth the
law which will support the Motion. In the Motion I would ask the Court to
enter an order requiring Tringali to identify with particularity all trade secrets
and confidential information alleged to have been misappropriated by Martin
and Lee, to identify all documents containing the trade secrets and confidential
information which he has so identified, and further request the Court to stay
all discovery pending receipt of that information. If we cannot resolve this by
December 21, 2005, I will prepare and file the Motion together with this
memorandum.

Very truly yours,

Roger S. Davis

RSD:cat
Enclosure

QDI12:USDC:DT

## DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

**VIA FACSIMILE**
**617-227-8992**

December 30, 2005

Daniel Treger, Esq.
PHILLIPS & ANGLEY
One Bowdoin Square
Boston, MA 02114

Re:   Phillip Tringali
Vs:   Paul Martin, et al
No:   04-12708

Dear Mr. Treger:

This is to confirm our telephone discussion of December 29, 2005 regarding our request for a more definite statement as set forth in the Memorandum in Support of Defendants' Motion for More Definite Statement, which I have not filed.

My understanding is that you will provide for me the following:

1.    A sample page from the ACT database, which will be representative of the 1,700 pages, spelling out the information which my clients are alleged to have misappropriated.

2.    Specifications for the Models 1100 and 2100 S.E.E. instruments as well as brochures for these instruments, if they are available.

3.    You will refer to me or send me a copy of the pleadings which you claim spell out in detail the alleged misappropriated information.

My understanding further is that this information will be in my hands by January 21, 2006, otherwise I will file the motion and the memorandum with the Court.

I have not yet consulted with my clients and am forwarding a copy of this letter to them to see if the items specified above would be all inclusive and if there is any additional information, I will notify you accordingly.

Very truly yours,

Roger S. Davis

RSD:cat
QDI12:USDC:DTFAX

# DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

## VIA FACSIMILE
## 617-227-8992

December 30, 2005

Daniel Treger, Esq.
PHILLIPS & ANGLEY
One Bowdoin Square
Boston, MA 02114

Re:    Phillip Tringali
Vs:    Paul Martin, et al
No:    04-12708

Dear Mr. Treger:

This is to supplement my earlier letter of this date. I believe that your client has also alleged that Martin and Lee misappropriated information with respect to the S.E.E. Model 2200, and in addition, my memory is that you also indicated that you would produce the source code. Accordingly, I believe the information which is spelled out in my first letter should include the Model 2200 in addition to the Models 1100 and 2100.

Additionally, I am requesting that you produce the following documents with respect to all models:

1.    The specifications;

2.    The optical design documents;

3.    Mechanical drawings;

4.    Parts list including microscope parts;

5.    Assembly instructions;

6.    Development notes for hardware and software;

7.    Source code and all revisions.

Very truly yours,

Roger S. Davis

RSD:cat

QDI13:USDC:DTFAX

# PHILLIPS & ANGLEY

ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE M. SWINFORD
KRISTEN M. PLOETZ

*ALSO ADMITTED IN DC AND CA

TELECOPIER (617) 227-8992

January 20, 2006
By Hand

Roger S. Davis, Esq.
Davis & Rubin
One Bowdoin Square
Suite 901
Boston, MA 02114-2919

Re:    Philip Tringali
       V. Paul Martin and Jumi Lee

Dear Attorney Davis:

Pursuant to our 7.1 conference regarding your motion for a more definite statement, enclosed herewith please find:

1. A representative sample of the data comprising S.E.E. Inc.'s ACT database.

2. Specifications and promotional literature for the S.E.E. Inc. 2000, 2100, and 1100 microspectrophotometers. Proposed specifications for the 2200 model have been produced.

The nature of the information at issue is described in detail in the plaintiff's automatic disclosure statement, as well as in plaintiff's opposition to defendants' motion for a protective order. However, in the interests of narrowing the purported disputes you have raised in your proposed motion for a more definite statement, I expect to make the following documents available on Monday:

1. CAD drawings;

2. Parts Lists;

3. Assembly instructions.

Roger S. Davis, Esq.
January 20, 2006
Page 2

As we discussed, source code exists only in electronic format at this time.

Please be advised that these documents are being provided solely pursuant to Local Rule 7.1 in the interests of narrowing areas of dispute regarding your purported motion. My client does not acknowledge any obligation to produce additional documents pursuant to Fed.R.Civ.P. 26 or 33, as your clients have already served the number of requests permitted pursuant to local rules.

Very truly yours,

Daniel Treger

DT/hs
cc:    Client
       Jeffrey J. Phillips, PC
L:\LITG\Trng001\davis.11.20.03.wpd

# PHILLIPS & ANGLEY

ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

TELECOPIER (617) 227-8992

JEFFREY J. PHILLIPS. P.C.
JEFFREY T. ANGLEY. P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE M. SWINFORD
KRISTEN M. PLOETZ

*ALSO ADMITTED IN DC AND CA

January 24, 2006
By Hand

Roger S. Davis, Esq.
Davis & Rubin
One Bowdoin Square, Suite 901
Boston, MA 02114-2919

Re:     Philip Tringali V. Paul Martin and Jumi Lee

Dear Attorney Davis:

Further to our 7.1 conference regarding your motion for a more definite statement,
enclosed herewith please find a CD ROM containing:

1. Assembly instructions for S.E.E. Inc. microspectrophotometers  (pages 600-699);

2. AutoCAD drawings of S.E.E. microspectrophotometer parts and components (pages
700 - 807);

3. Parts lists for S.E.E. 1100 and 2100 microspectrophotometers (pages 808-815).

As previously stated, these documents are being provided solely pursuant to Local Rule
7.1 in the interests of narrowing areas of dispute regarding your purported motion. My client
does not acknowledge any obligation to produce additional documents pursuant to Fed.R.Civ.P.
26 or 33, as your clients have already served the number of requests permitted pursuant to local
rules.

Very truly yours,

Daniel Treger

DT/hs
enc.
cc:     Client (w/out enclosure)
        Jeffrey J. Phillips, PC
L:\LITG\Trng001\davis.l1.24.06.wpd

# DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

**VIA FACSIMILE**
**617-227-8992** 

February 23, 2006

Daniel Treger, Esquire
PHILLIPS AND ANGLEY
One Bowdoin Square, Suite 300
Boston, MA 02114

Re: Martin & Lee v. Tringali

Dear Mr. Treger:

My clients have reviewed the 671 files which were on the CD which you sent me. One file was from Tringali and is an amalgamation of the 1100 and 2100 instructions, but contains nothing on the 2200 system which Tringali claims my clients have appropriated. The other 670 files on the CD appear to be from a litigation matter, <u>Crampton v. Affiliated Clinical Engineering Services, Inc.</u>, C.A. MICV2002-00128. Obviously, this production is not in the spirit of the matters which we discussed, especially the 670 nonrelevant files on this CD.

Very truly yours,

Roger S. Davis

RSD:cat

DICTATED BUT NOT READ

QDI12:MARTIN:DTFAX

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                              SUPERIOR COURT
                                          CIVIL ACTION NO.

DIANA CRAMPTON AND                )
STEVEN CRAMPTON,                  )
                                  )
        Plaintiffs                )
                                  )
v.                                )       COMPLAINT
                                  )
AFFILIATED CLINICAL               )
ENGINEERING SERVICES, INC.,       )
                                  )
        Defendant                 )

## PARTIES

1.    The plaintiff, Diana Crampton, is an individual residing at 11 Clorinda Road, Wilmington, Middlesex County, Massachusetts and is the lawful wife of Steven Crampton.

2.    The plaintiff, Steven Crampton, is an individual residing at 11 Clorinda Road, Wilmington, Middlesex County, Massachusetts and is the lawful husband of Diana Crampton.

3.    Defendant Affiliated Clinical Engineering, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts having a usual place of business at Two Electronics Avenue, Danvers, Essex County, Massachusetts.

## COUNT I

### DIANA CRAMPTON VS. AFFILIATED CLINICAL ENGINEERING, INC.

4.    The plaintiff repeats paragraphs one (1) through three (3) of the complaint and incorporates the same by reference herein.

-1-

5.    At all times herein concerned, defendant Affiliated Clinical Engineering, Inc., operated and controlled a business which specialized in the maintenance, inspection and repair of medical equipment on behalf of Cambridge Health Alliance at Somerville Hospital, Highland Avenue, Somerville, Middlesex County, Massachusetts.

6.    On or about September 15, 2000, plaintiff Diana Crampton, a surgical nurse while working at Cambridge Health Alliance at Somerville Hospital and while in the exercise of due care, was caused to sustain severe personal injury when she received an electrical shock when she plugged in a piece of medical equipment which piece of medical equipment was maintained, inspected and/or repaired by the Defendant.

7.    Defendant in the exercise of reasonable care knew or should have known, that the piece of medical equipment that severely injured the plaintiff Diana Crampton was not in a safe condition and presented an inexcusable risk of harm to individuals using said medical equipment.

8.    Defendant was negligent in its failure to inspect and/or its failure to properly repair the medical equipment, its failure to maintain the medical equipment in a reasonably safe condition free from defects, and its failure to warn plaintiff Diana Crampton of the defects occurring therein.

9.   As a direct and proximate result of defendant's negligence, plaintiff Diana Crampton suffered great pain of body and mind, has required hospital and medical care, has required surgery, has been incapacitated for an extended period of time and her health and ability to engage in her normal and usual activities have been permanently and adversely affected.

WHEREFORE, the plaintiff, Diana Crampton, demands judgment against defendant Affiliated Clinical Engineering, Inc., in an amount which the jury shall determine to be necessary and proper to compensate her for her injuries together with interest and costs.

## COUNT II

### STEVEN CRAMPTON V. AFFILIATED CLINICAL ENGINEERING, INC.

10.   Plaintiff, Steven Crampton, repeats and realleges the allegations contained in paragraph one (1) through nine (9) of the complaint and incorporates the same by reference.

11.   At all times relevant hereto, the plaintiff Steven Crampton was married to the plaintiff Diana Crampton.

12.   As a direct and proximate result of the negligence of the defendant, Affiliated Clinical Engineering, Inc., the plaintiff Steven Crampton suffered the loss of companionship, love, affection and consortium of his wife Diana Crampton.

WHEREFORE, the plaintiff Steven Crampton, demands judgment against defendant Affiliated Clinical Engineering, Inc. in an

-3-

amount which the jury shall determine to be necessary and proper to compensate him for his injuries together with interest and costs.

DIANA CRAMPTON AND STEVEN CRAMPTON
By their attorney,

Date:
___

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\LITG\crmp001\com.wpd

## VERIFICATION TO COMPLAINT

We, Diana Crampton And Steven Crampton being duly sworn, depose and say that we are the plaintiffs in the within entitled action, that we have read the foregoing complaint and know the contents thereof; and that the same is true except as to matters therein stated to be alleged on information and belief.

Signed under the pains and penalties of perjury this _____ day of November, 2001.

_____
Diana Crampton

_____
Steven Crampton

L:\LITG\crmp001\com.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,           )
INDIVIDUALLY AND AS STOCKHOLDERS    )
ON BEHALF OF S.E.E., INC.           )
        Plaintiffs                  )
                                    )
vs.                                 )
                                    )
S.E.E., INC. AND                    )
PHILLIP TRINGALI,                   )
        Defendants

### NOTICE OF CONTINUED TAKING DEPOSITION OF PAUL MARTIN

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Monday, March 20

2006 at the law offices of Phillips & Angley, One Bowdoin Square,

Boston, Massachusetts the defendant Phillip Tringali, by his

attorney will recommence the deposition upon oral examination of

the plaintiff Paul Martin pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

_____
Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.O. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

on all parties or their attorney of record this day by hand.

Date:February 9, 2006

_____
Daniel Treger, Esq.

L:\LITG\trng002\lee.not2.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,          )
INDIVIDUALLY AND AS STOCKHOLDERS   )
ON BEHALF OF S.E.E., INC.          )
    Plaintiffs                     )
                                   )
vs.                                )
                                   )
S.E.E., INC. AND                   )
PHILLIP TRINGALI,                  )
    Defendants

## NOTICE OF CONTINUED TAKING DEPOSITION OF JUMI LEE

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

Please take notice that at 10:00 a.m. on Tuesday, March 21 2006, at the law offices of Phillips & Angley, One Bowdoin Square, Boston, Massachusetts the defendant Phillip Tringali, by his attorney will recommence the deposition upon oral examination of the plaintiff Jumi Lee pursuant to Rule 30 of the Massachusetts Rules of Civil Procedure, before a notary public in and for the Commonwealth of Massachusetts or before some other officer authorized by law to administer oaths. Pursuant to Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to produce, at the deposition, the documents and things described in Schedule "A" hereto.  The oral examination will continue from day to day until completed. You are invited to attend and cross-examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.0. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

on all parties or their attorney of record this day by hand.

Date:February 9, 2006

Daniel Treger, Esq.

L:\LITG\trng002\martin.not2.wpd

SCHEDULE A

DEFINITIONS

(1) Communication.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) Document.

a. The word "document" includes without limitation the original or any copy of any notes, correspondence, memoranda (including written memoranda of telephone conversations, other communications, discussions, agreements, and any other acts, transactions or activities), contracts, agreements, letters, telegrams, evaluations, work papers, calendars, appointment books, diaries, instructions, order forms, records, sound recordings, forms, statements, photographs, x-rays, journals, notices, interoffice and interoffice communications, photostats, and any other written matter of any kind, including, but without limitation, any marginalia appearing on any documents or any other writing.  A document in the possession, custody or control of another person is considered to be in the possession, custody or control of the defendant if the defendant has a right or privilege to examine it upon request or demand.

b. In the event that it is claimed that any communication or document responsive to any interrogatory is privileged or attorney's work product, each such communication or document should be fully identified in writing, except that the substance thereof need not be described to the extent it is claimed to be privileged.

(3) Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the

    (a) type of document;

    (b) general subject matter;

    (c) date of the document;  and

    (d) author(s), addressee(s), and recipient(s).

(5) Parties.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) Concerning.  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) State the Basis.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) Quantum means Quantum Dynamics International, LLC, its agents and employees.

(10) CRAIC means CRAIC  Technologies, LLC, its agents and employees

(11) S.E.E. means S.E.E., Inc, its agents or employees.

(12) Customer of S.E.E. means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) Prospective Customer of S.E.E. means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

### Request No. 1

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

## Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

## Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

## Request No. 6

All documents  concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

## Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

## Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

## Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing,

developing, manufacturing, and/or marketing of Quantum and CRAIC
products between January 9, 2002 through March 22, 2004,
including telephone numbers listed in the names of Quantum and
CRAIC.

Request No. 10

All promotional literature for Quantum and/or CRAIC products
dating from between January 9, 2002 through March 22, 2004,
including but not limited to all documents posted on websites
maintained by Quantum and/or CRAIC.

Request No. 11

All documents of, concerning or relating to upgrades of
S.E.E. instruments, repairs or service performed on S.E.E.
instruments by Quantum and/or CRAIC from January 9, 2002 through
March 22, 2004.

Request No. 12

All documents concerning sales of products developed by
Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first
prototypes of the Mach 1 and/or the Mach 10, as identified in
Exhibit "A".

Request No. 14

All documents, including employment contracts, concerning,
in whole or in part, any policy of confidentiality maintained by
Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a. Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

    All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PAUL MARTIN

Pursuant to Fed.R.Civ.P., Rule 34 and Local Rules 26.5 and 34.1 of the United States

District Court for the District of Massachusetts, plaintiff Phillip Tringali hereby requests that the

defendant, Paul Martin respond to the following document request and produce documents at

plaintiff's counsel's office in accordance with the Rules.

### DEFINITIONS

The uniform definitions set forth in Rule 26.5 of the Local Rules of the United States for

the District of Massachusetts apply:

(1) *Communication.* The term "communication" means the transmittal of information (in

the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal

in scope to the usage of this term in <u>Fed.R.Civ.P. 34(a)</u>. A draft or non-identical copy is a

separate document within the meaning of this term.

(3) *Identify (With Respect to Persons)*. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents)*. When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document; and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties*. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person*. The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning*. The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis*. When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

2

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) *Quantum* means Quantum Dynamics International, LLC, its agents and employees.

(10) *CRAIC* means CRAIC Technologies, LLC, its agents and employees

(11) *S.E.E.* means S.E.E., Inc, its agents or employees.

(12) *Customer of S.E.E.* means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) *Prospective Customer of S.E.E.* means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

Request No. 1

3

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004 , but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

4

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A"..

Request No. 14

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a.    Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.

RESPECTFULLY SUBMITTED,
Phillip Tringali,
By his attorney,

Date: 9/14/05

_____
Jeffrey J. Phillips, Esq
B.B.O. #398480
Daniel Treger, Esq
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\LITG\Trng001\martinreq.wpd

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on 9/14/05

_____

http://www.microspectra.com/prod01.htm

crospectrophotomete, and Microspectrometer



# QDi™

## QDI Mach10™ MSP

The QDI Mach10™ Microspectrophotometer is the most advanced microspectrophotometer to date. It is a powerful yet user friendly tool for measuring the spectral characteristics of microscopic samples non-destructively. Samples can be as small as 2 microns across and require little preparation. The system can measure transmission, reflectance, and fluorescence spectra in the near-UV, visible, and NIR regions with high spectral resolution.



Home

Up





trophotomet.    l microspectrometer





The QDI Mach1™ Spectrophotometer for Microscopes is used to give many models of microscopes spectroscopic capabilities without the expense of a dedicated system. It enables a scientist to measure the spectral characteristics of microscopic samples non-destructively. The system can measure transmission, reflectance, and fluorescence spectra in the visible and near infrared regions with high spectral resolution depending on the microscopes configuration.

represent your company going forward for all sales and support (the latter most important to ESR). However, nothing was mentioned by either of us regarding Foster & Freeman. I was told in an e-mail by Nick on 1 March that "The Fx5 is back there [at ESR] and working fine." (see below)

Apparently, the problems with this instrument continued past this time and Angus must have believed that Alphatech was still involved with this product but was not assisting F&F with it. Paul is going to call Angus directly to get his spin on this but this is how I read things from Paul's comments. So the negative comments about Alphatech in the Referee Review given by Angus appear to have been based on his perception that we were not doing what they expected to support the "entire package" (including the F&F FX5).

I have asked Paul to find out from Angus if this is indeed how he (Angus) viewed Alphatech when he gave his evaluation to DAIS in his role as our reference. More tomorrow on this.

Stay tuned,

Evan S.

>Date: Fri, 01 Mar 2002 08:36:50 +1100
>From: Nick Weber <nick@xtek.net>
>Subject: Head Up
>X-Envelope-To: evan.sales@alphatech.co.nz
>To: "Evan Snyder (E-mail)" <evan.sales@alphatech.co.nz>
>Cc: "'Nigel French (E-mail)'" <nigel@xtek.net>,
> "Nick Away (E-mail)" <nickw@xtek.net>
>X-MIMEOLE: Produced By Microsoft MimeOLE V6.00.2600.0000
>X-Mailer: Microsoft Outlook CWS, Build 9.0.2416 (9.0.2911.0)
>Importance: Normal
>X-MSMail-priority: Normal
>
Evan,

The Fx5 is back there and working fine.

More importantly, you might be interested to know that Paul Martin and S.E.E. have parted company. Paul and Phil couldn't see eye to eye over various matters. The upshot is that Paul has started his own company (QDI) with Jumi and already has an improved range of equipment including a less expensive low end system (which he and I worked out in New Zealand).

Paul has undertaken to pick up the warranty issues on all the equipment I've sold over the last two or three years, so I'm comfortable with the arrangements.

The upshot is that XTEK has informed S.E.E. that we no longer intend to represent them. It would seem to me that the same will happen at S.E.E. as it did at Nanometrics - the msp division will wither away without their input and ideas. I expect that Phil will be in touch with you very soon, if he has not already been offering some attractive deals. That's entirely up to you of course, but I know that I'll be sticking with Paul.

QDI - www.microspectra.com - will be attending the ANZFSS conference with us and showing their new range of instruments - perhaps you might like to come along as well?

Cheers,

Nick
nick@xtek.net
Website: www.xtek.net
Tel: +61 2 6280 6321
Fax: +61 2 6280 6518

00001 "β"