UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI )
    Plaintiff )     C. A. NO. 04-12708-MLW
 )
V. )
 )
PAUL MARTIN AND JUMI LEE )
    Defendants )

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR
STAY OF DISCOVERY AND FOR
MORE DEFINITE STATEMENT**

    This Memorandum is submitted in support of the Defendants' Motion for Stay of Discovery and for More Definite Statement. The procedural matters which led to the filing of this Memorandum are set forth in the Motion.

    The Massachusetts Superior Court as well as Federal courts have afforded great protection to defendants who claim harm by way of revealing trade secrets and have ordered the plaintiff in a number of cases to specify including a specification under oath identifying with particularity the alleged misappropriated trade secrets. For this reason, Martin and Lee have now filed this Motion to require Tringali to provide a more definite statement as set forth in the body of the motion.

    In <u>L-3 Communications Security v. Reveal Imaging Technologies, Inc.</u>, Norfolk Superior Court, Docket No. 03-5810-BLS, there were a number of motions filed including a defendant's motion for a protective order, and several motions of which were related to trade secret and confidential information related motions.

    In <u>L-3 Communications</u>, on December 2, 2004, Judge van Gestel issued a twenty-four page Memorandum and Orders on Various Motions and Related Matters, however only the portion of that Memorandum which is relevant to trade secret and confidential information needs to be reproduced here, and is attached as Exhibit "1."

On the same date, December 2, 2004, Judge van Gestel issued a companion Order on the Reveal Parties' Motion for a Protective Order (Exhibit "2" hereto), in which he ordered the plaintiffs to produce in affidavit form a designation of the trade secrets which it claims the defendants misappropriated.

In the memorandum and order Judge van Gestel cited a number of cases in support of his determination that the plaintiffs should be required to specify the trade secrets which formed the basis of the alleged misappropriations, these cases are as noted below.

Cambridge Internet Solutions v. Avicon Group, Middlesex Superior Court 99-1841 (Exhibit "3" hereto), the court held:

> A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue.  See Microwave Research Corp. v. Sanders Assoc., 110 F.R.D. 669, 672 (D.Mass. 1986). Such identification is necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets.  Id. Consequently, plaintiff must demonstrate a factual basis for their claim and, where possible, identify their alleged trade secrets with some specificity.  Id. at 674. The court must strike a balance between "a plaintiff's right to discovery and a defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance."  Id. at 672, quoting Ray v. Allied Chemical Corp., 34 F.R.D. 456, 458 (S.D.N.Y. 1964).  In this case, defendants allege that C-Bridge's references to misappropriation of a business plan and of various unidentified documents fail to identify its alleged trade secrets with sufficient particularity.
>
> At this state of the proceedings, the court must determine whether C-Bridge has identified its alleged trade secrets with sufficient particularity to survive a motion to dismiss.  See Brum v. Town of Dartmouth, 44 Mass.App.Ct. 318, 321, 690 N.E.2d 844 (1998).  In the case of the Business Plan, C-Bridge has provided the requisite degree of specificity.  The business plan has been identified by C-Bridge as a single written document that was removed by Leary and Peters when they left C-Bridge to form Avicon.

> C-Bridge also alleges that the defendants misappropriated certain source codes, work processes and customer deliverables when they left C-Bridge's employ. Some of these documents originated in C-Bridge workshops, and others were developed for specific C-Bridge customers. Where C-Bridge should have knowledge of the particular documents and source codes at issue, it is appropriate for C-Bridge to identify with greater particularity the specific customer material it claims was misappropriated. Defendants are entitled to a more definite statement of the specific trade secrets at issue. See Mass.R.Civ.P. 12(e).

The judge entered an order in this case requiring the plaintiff to provide a more definite statement within thirty days "identifying with greater particularity the specific custom material and/or trade secrets it alleges to have been misappropriated."

Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161 (9th Cir. 1998), the issue before the court was the identification of trade secrets by the plaintiff, which the court discussed at page 1164-1165:

> A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 522 (9th Cir. 1993). The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons…skilled in the trade." (citations omitted).

In Xerox Corp. v. International Business Machines Corp., 64 F.R.D. 367, 371-372 (S.D.N.Y. 1974), the court ruled:

> At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are. Thus, after nearly a year of pre-trial discovery, Xerox should be able to identify in detail the trade secrets and confidential information alleged to have been misappropriated by IBM. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether Xerox can undertake a meaningful discovery program, which includes its attempt to trace the flow of trade secrets and

3

confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated. Therefore, in the list furnished to IBM pursuant to Special Master's instructions, Xerox shall

      (1) identify in detail all trade secrets and confidential information alleged to have been misappropriated by IBM;

      (2) list all documents which contain, refer to, or incorporate by reference Xerox trade secrets or confidential information; and

      (3) key all documents or portions thereof to the specific trade secrets and confidential information alleged to have been misappropriated by IBM.

For the reasons set forth above, the defendants respectfully request that this Court allow the Defendants' Motion for Stay of Discovery and for More Definite Statement and order the plaintiff Tringali to identify with particularity the alleged misappropriated trade secrets as set forth in the Prayers of the Motion.

March 14, 2006                    Attorney for defendants,

                                             /s/Roger S. Davis
                                           Roger S. Davis
                                           BBO No. 116320
                                           DAVIS & RUBIN
                                           One Bowdoin Square
                                           Suite 901
                                           Boston, MA  02114-2919
                                           (617) 742-4300

QDI12:USDC:MEMOSTAY

**NOTIFY**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 03-5810 BLS
(Judge van Gestel)

L-3 COMMUNICATIONS CORPORATION & others[1]

vs.

REVEAL IMAGING TECHNOLOGIES, INC. & others[2]

<u>MEMORANDUM AND ORDERS ON VARIOUS
MOTIONS AND RELATED MATTERS</u>

This matter is before the Court on a variety of motions, the most significant of which are, in their order of filing: the Reveal Parties' Motion for Protective Order, (Paper #23); the Reveal Parties' Motion for Partial Summary Judgment on Plaintiffs' Contract-Based Claims, (Paper #26); L-3 Delaware's Motion Under Mass. R. Civ. P. 56(f), (Paper #41); L-3 Delaware's Motion to Require Escrow of Defendants' Patent Applications, (Paper #74); L-3 Delaware's Motion for Partial Summary Judgment on Ownership of Patent Applications, (Paper #75); the Reveal Parties Motion for Partial Summary Judgment on the Ownership of Patent Applications and Trade Secret Misappropriations, (Paper #145); another L-3 Delaware Motion for Partial Summary Judgment on the Ownership of Patent Applications, (Paper #159); and the usual array of motions

---

[1] L-3 Communications Security and Detections Systems Corporation California; and L-3 Communications Security and Detection Systems Corporation Delaware. By an amended complaint, the sole remaining plaintiff became L-3 Communications Security and Detection Systems Corporation Delaware.

[2] Michael Ellenbogen ("Ellenbogen"), Richard Bijjani ("Bijjani"), James Buckley ("Buckley"), Bruce Lee ("Lee"), John Sanders ("Sanders") and Elan Scheinman ("Scheinman").

Regardless of what control – and there appears to be none – Hologic may have had over Vivid, it will do nothing to resurrect an agreement the two-year restraint of which was triggered 11 or 12 years ago. Similarly, when Ellenbogen hired L-3 Delaware employees away for Reveal, if ever, is a matter fully within the knowledge of L-3 Delaware, and is not something that otherwise needs to be discovered. And even if Reveal itself has non-competition covenants in its employment agreements, Reveal also would be barred by the special public interest from enforcing those agreements by injunctive means.

Thus, the public interest prevents L-3 Delaware from obtaining any injunctive relief relating to the activities of the Reveal Parties, and the law prevents L-3 Delaware from the right to enforce any of the Hologic Agreement, the Vivid Agreements, The PerkinElmer, Inc. agreements or the PerkinElmer, Inc. KCIP Agreement with Ellenbogen. The various counts in the amended complaint seeking such relief must be dismissed.

The motions concerning trade secret and confidential information issues.

Because of the foregoing resolution of the contract claims, the Court turns next to the trade secret and confidential document issues. L-3 Delaware contends that the Reveal Parties, when they left their employ by L-3 Delaware, PKI Delaware and Vivid Technologies, Inc., misappropriated confidential documents, information and trade secrets developed while in the employ of those three companies.

There are three significant impediments to the preliminary injunctive relief sought by L-3 Delaware on theses claims.

First is the public interest component discussed above. As this Court said earlier, "regardless of the economic consequences to the litigating parties – [ ] any order that disturbs or

20

is harmful to that public interest" should not be the subject of a preliminary injunction.

Second is whether the information for which protection is sought is a trade secret, or is confidential and protectable, which depends on many facts that are clearly in dispute at this time. L-3 Delaware, as the moving party, bears the burden of affirmatively demonstrating that there are no triable issues of fact. Pederson, supra, 404 Mass. at 17. On the present record, this Court cannot determine with sufficient certainty that L-3 Delaware has carried its burden. The same may also be said about the Reveal Parties' opposing request for summary judgment in their favor on the trade secret and related claims.

Third is that, particularly with regard to the alleged trade secrets, neither this Court, nor, it appears, the Reveal Parties, yet knows what those secrets are with sufficient definition to determine whether they are secrets, or if they have been taken and are being used in any way by the Reveal Parties. This leads directly to the Reveal Parties motion for a protective order.

No preliminary injunctive relief will be granted at this time on the trade secret and confidential information claims by L-3 Delaware.

The first of the several motions to be filed is the Reveal Parties Motion for Protective Order, (Paper #26). The protection sought, among others, is an order that L-3 Delaware be required to serve on the defendants a statement specifically identifying those trade secrets that form the basis of their trade secret misappropriations claims before any discovery may be had on those claims.

Massachusetts law, and the law elsewhere, supports such an order. See, e.g., Cambridge Internet Solutions v. Avion Group, 1999 WL 959673, *2 (Mass. Superior Court, September 21, 1999). See also Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1164-65 (9th Cir.

1998); Xerox Corp. v. International Business Machines Corp., 64 F.R.D. 367, 371 (S.D.N.Y. 1974).

> Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required to first identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.

Engelhard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del. Ch. 1986).

While admittedly arriving under a different circumstance, this Court takes to heart Justice Dreben's admonition in O'Connor v. City Manager of Medford, 7 Mass. App. Ct. 615, 619 (1979):

> Our judicial system is not "a mere game of skill or chance" in which the judge is merely an "umpire." In re Barnett, 124 F.2d at 1010-1011. We will not permit the rules to subvert a just result. . . .

As this Court said itself in Staffbridge, Inc. v. Gary D. Nelson Associates, Inc., Suffolk Superior Court No. 02-4912 BLS:

> Both for the defendants to respond to the charges against them, and for the Court to make appropriate findings and rulings on the case, there must be a clear designation that distinguishes unique or proprietary material from the vast body of [information alluded to in the amended complaint], and apprises a person what trade secrets [of L-3 Delaware] the plaintiff[ ] claim[s] are to be found in [any Reveal product]. That cannot be done on the present record.

For the foregoing reason, an appropriate order will issue on the Reveal Parties' motion.

The motions on patent related issues.

Perhaps the most complex of the issues presented to this Court are those related to patents. L-3 Delaware claims ownership in patent applications of the Reveal Parties, or at least in some of the claims therein. The Reveal Parties assert that what are now the claims in the applications are quite different from anything that L-3 Delaware ever conceivably had an interest

22

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                          SUPERIOR COURT
                                                      CIVIL ACTION
                                                      NO. 03-5810 BLS
                                                      (Judge van Gestel)

L-3 COMMUNICATIONS SECURITY AND
DETECTION SYSTEMS CORPORATION DELAWARE

vs.

REVEAL IMAGING TECHNOLOGIES, INC. & others[1]

ORDER ON THE REVEAL PARTIES'
MOTION FOR A PROTECTIVE ORDER

Pursuant to the Memorandum and Orders on Various Motions and Related Matters filed on this date, insofar as the Reveal Parties' Motion for a Protective Order, (Paper #23), is concerned, the Court issues the following:

ORDER

i.  On or before December 20, 2004, the plaintiff, L-3 Communications Security and Detection Systems Corporation Delaware, ("L-3 Delaware"), through its counsel, may have the opportunity to provide to the Court and the defendants, through their counsel, a designation, in affidavit form and under oath, that sets forth with rigorous and focused particularity what, and only what, L-3 Delaware claims to constitute the trade secrets allegedly misappropriated by any of the defendants that are actually incorporated in the CT-80 product and those trade secrets that otherwise form the basis for this law suit.

    The designation must, with clarity that can be understood by a lay person, make clear and distinguish what is protectable from that which is not.

ii. Upon receipt of the designation referred to in paragraph (i) above, the defendants shall have until January 10, 2005, to submit to the Court and counsel for L-3 Delaware, a response to the designation.

---

[1] Michael Ellenbogen ("Ellenbogen"), Richard Bijjani ("Bijjani"), James Buckley ("Buckley"), Bruce Lee ("Lee"), John Sanders ("Sanders") and Elan Scheinman ("Scheninman").

   If the response is other than an acceptance of the adequacy of the designation, the defendants' response, like L-3 Delaware's designation, shall be in affidavit form and under oath.

iii. The Court will hold a status conference on January 17, 2005, at 2:00 p.m., for the purpose of discussing the future course of this case.

  A. If no designation is served by L-3 Delaware within the time provided, then this Court will grant summary judgment in favor of the defendants on those aspects of those counts relating to the trade secret issues and will expect the parties to present proposals for further discovery and litigation, if any, on all aspects of the case then remaining.

  B. If a designation is served and accepted for adequacy, without waiving any rights to challenge the trade secret nature of what is designated, then the Court will expect the parties to present proposals for further discovery and litigation, if any, on all aspects of the case then remaining.

  C. If a designation is served and not accepted for adequacy, then the Court, at the status conference, will accept such written filings either side chooses to make and will hear oral argument on the parties' respective positions. The Court's subsequent decision on the adequacy of the designation will dictate whether the case proceeds on those aspects of those counts relating to the trade secret issues or just on those other aspects of the case then remaining.

iv. Pending resolution of the foregoing process, any discovery relating to any trade secret claims shall be <u>STAYED</u>, unless otherwise agreed to in writing by the parties.

*/s/ Allan van Gestel*
Allan van Gestel
Justice of the Superior

DATED: December 2, 2004

2

1 of 100 DOCUMENTS

**Cambridge Internet Solutions, Inc. v. The Avicon Group, and others n1**

n1 John C. Leary, Douglas W. Peters, Christopher W. Brown and Christopher W. Casgar.

99-1841

SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX

*10 Mass. L. Rep. 539; 1999 Mass. Super. LEXIS 387*

**September 20, 1999, Decided**
**September 21, 1999, Filed**

**DISPOSITION:** [*1] Plaintiffs' motion to dismiss Count III of Casgar's counterclaim DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants for breach of contract, misappropriation of trade secrets, intentional interference with contractual and advantageous relations, and violation of Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A. Defendant competitors moved to dismiss under *Mass. R. Civ. P. 12(b)(6)*. Plaintiff moved to dismiss defendant employee's intentional interference counterclaim.

**OVERVIEW:** Defendant competitors left plaintiff's employ to form defendant corporation, and then hired defendant employee away from plaintiff. Plaintiff filed suit, alleging breach of contract, misappropriation of trade secrets, intentional interference with contractual and advantageous relations, and violation of the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A. Defendant competitors moved to dismiss pursuant to *Mass. R. Civ. P. 8, 12*(b)(6). Plaintiff likewise moved to dismiss defendant employee's counterclaim, which alleged that plaintiff intentionally interfered with defendant employee's advantageous business relations with defendant corporation. Although defendants were entitled to more definite statement of specific trade secrets at issue, court held that plaintiff's claims alleged facts sufficient to survive defendant competitors' dismissal motion. Taking counterclaim's allegations as true, defendant employee alleged sufficient facts to survive plaintiff's dismissal motion because intentional interference with advantageous business relations claim could be based on plaintiff's institution of a lawsuit designed to interfere with business relationship.

**OUTCOME:** Court denied defendant competitors' motion to dismiss plaintiff's claims alleging breach of contract, misappropriation of trade secrets, intentional interference with contractual and advantageous relations, and Massachusetts Consumer Protection Statute violations. Court denied plaintiff's motion to dismiss defendant employee's counterclaim alleging intentional interference with advantageous business relations.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] Pursuant to *Mass. R. Civ. P. 12(b)(6)*, a complaint must be dismissed if it fails to state a legal claim on which relief may be granted against the defendant. The court must accept all the facts asserted in the plaintiff's complaint as true and determine whether those facts constitute a viable cause of action against defendant. For dismissal under *Mass. R. Civ. P. 12(b)(6)*, a court must find beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets*
[HN2] A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue. Such identification is necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets. Consequently,

Case 1:04-cv-12708-MLW   Document 43-4   Filed 03/14/2006   Page 2 of 5

Page 2

10 Mass. L. Rep. 539; 1999 Mass. Super. LEXIS 387, *

plaintiffs must demonstrate a factual basis for their claim and, where possible, identify their alleged trade secrets with some specificity. The court must strike a balance between a plaintiff's right to discovery and a defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance.

*Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets*
[HN3] In order to prove that specific information qualifies as a trade secret, a business must also prove that it took the necessary steps to insure the material's confidentiality. The business must demonstrate that it pursued an active course of conduct designed to inform employees that such secrets and information were to remain confidential.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Trade Secrets Law > Protection of Secrecy > General Overview*
[HN4] A court will permit a plaintiff to prevail on a motion to dismiss unless it appears with certainty that he is entitled to no relief under any combination of facts that could be proved in support of his claim.

*Trade Secrets Law > Misappropriation Actions > General Overview*
*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*
[HN5] As a general rule, the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A, does not apply to disputes arising out of the employment relationship.

*Trade Secrets Law > Misappropriation Actions > General Overview*
*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*
[HN6] Post-employment activities arising from contractual undertakings entered into as part of an employment relationship are not actionable under the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*
[HN7] Contract disputes between an employer and an employee are "private in nature" and do not occur in the ordinary "conduct of any trade or business" as contemplated by the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.

*Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets*
*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*
[HN8] Alleged violations of non-disclosure agreements that were signed as part of the employer-employee relationship, are not actionable under the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.

*Antitrust & Trade Law > Consumer Protection*
*Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets*
[HN9] Employees may properly plan to compete with their employer and take steps to do so while still employed without being obliged to disclose their plans. There are, however, certain limitations on the conduct of an employee who plans to compete with an employer. Certain breaches of duty may expose the employee to liability under the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN10] In evaluating a motion to dismiss a counterclaim, the court must accept as true the allegations of the counterclaim, as well as any inferences that may be drawn from it. A counterclaim will not be dismissed for failure to state a claim unless it appears beyond doubt that the claimant can prove no set of facts in support of his counterclaim that would entitle him to relief.

*Torts > Business & Employment Torts > Interference With Prospective Advantage*
[HN11] In Massachusetts, a claim for intentional interference with advantageous business relations may be based on the institution of a lawsuit designed to interfere with a business relationship.

**JUDGES:** Regina L. Quinlan, Justice of the Superior Court.

**OPINIONBY:** REGINA L. QUINLAN

**OPINION:** Memorandum Of Decision And Order On Defendants Leary, Peters, and Brown's Motion To Dismiss Counts III, V, VI, and VIII of Plaintiff's Complaint And Plaintiff's Motion To Dismiss Count III of Defendant Casgar's Counterclaim

On July 16, 1999, this matter came before the court for hearing on the motion of defendants John C. Leary ("Leary"), Douglas W. Peters ("Peters") and Christopher W. Brown ("Brown"), collectively, ("the defendants") n2 to dismiss those counts of plaintiff's complaint, i.e. Count

10 Mass. L. Rep. 539; 1999 Mass. Super. LEXIS 387, *

III alleging breach of contract, Count VI alleging misappropriation of trade secrets, and Count VIII alleging intentional interference with contractual and advantageous relations, and violation of G.L.c. 93A.

> n2 Defendants Avicon Group, Inc. and Casgar are not parties to the motion to dismiss.

Plaintiff Cambridge Internet Solutions, Inc. ("C-Bridge") poses [*2] the motion and moves to dismiss Count III of defendant Christopher W. Casgar ("Casgar")'s Counterclaim, which alleges intentional interference with advantageous relations. For the following reasons, defendants' motion to dismiss will be *ALLOWED* in part and *DENIED* in part. C-Bridge's motion to dismiss will be *DENIED*.

BACKGROUND

C-Bridge, founded in October 1996, designs computer systems to help businesses integrate their operations for planning, purchase of raw materials, production, shipment and sales. Defendants Leary, Peters and Brown left C-Bridge's employ to form the Avicon Corporation ("Avicon"). Avicon then hired the defendant Casgar from C-Bridge. While employed by C-Bridge, the defendants and Casgar each signed Proprietary Information, Invention and Non-Disclosure Agreements ("non-disclosure agreements"). Casgar also signed a non-competition agreement.

C-Bridge alleges that the defendants violated their non-disclosure agreements by using C-Bridge's written business plan and documents developed during an off-site C-Bridge workshop as the basis for Avicon's business plan. C-Bridge also argues that Avicon's business is in direct competition with C-Bridge, [*3] and that the defendants intentionally interfered with C-Bridge's contractual and advantageous relations by 1) using C-Bridge's proprietary information to interfere with C-Bridge's clients and prospective investors and 2) inducing Casgar to leave his employment with C-Bridge to work for Avicon.

Defendants argue that Counts III, V, VI and VIII of the complaint should be dismissed because C-Bridge failed to state its claims with sufficient particularity, and because C-Bridge has failed to state a claim on which relief can be granted. See *Mass.R.Civ.P. 8*, *12*(b)(6).

In his Answer to C-Bridge's complaint, Casgar denies that Avicon is in competition with C-Bridge and alleges in Count III of his counterclaim that C-Bridge intentionally interfered with Casgar's advantageous business relations with Avicon. C-Bridge moves to dismiss Count III of that counterclaim, alleging that Casgar has failed to plead the elements of a claim for intentional interference with advantageous relations.

DISCUSSION

[HN1] Pursuant to *Mass.R.Civ.P. 12(b)(6)*, a complaint must be dismissed if it fails to state a legal claim on which relief may be granted against the defendant. The court must accept all the [*4] facts asserted in the plaintiff's complaint as true and determine whether those facts constitute a viable cause of action against defendant. For dismissal under *Mass.R.Civ.P. 12(b)(6)*, a court must find "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584, 602 N.E.2d 1085 (1992)*. C-Bridge argues that defendants' motion to dismiss fails to satisfy this standard.

a. Misappropriation of Trade Secrets

[HN2] A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue. See *Microwave Research Corp. v. Sanders Assoc., 110 F.R.D. 669, 672 (D.Mass. 1986)*. Such identification is necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets. *Id.* Consequently, plaintiffs must demonstrate a factual basis for their claim and, where possible, identify their alleged trade secrets with some specificity. *Id. at 674*. The court must strike a balance between "a plaintiff's right to discovery and a [*5] defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance." *Id. at 672*, quoting *Ray v. Allied Chemical Corp., 34 F.R.D. 456, 458 (S.D.N.Y. 1964)*. In this case, defendants allege that C-Bridge's references to misappropriation of a business plan and of various unidentified documents fail to identify its alleged trade secrets with sufficient particularity.

At this stage of the proceedings, the court must determine whether C-Bridge has identified its alleged trade secrets with sufficient particularity to survive a motion to dismiss. See *Brum v. Town of Dartmouth, 44 Mass. App. Ct. 318, 321, 690 N.E.2d 844 (1998)*. In the case of the Business Plan, C-Bridge has provided the requisite degree of specificity. The business plan has been identified by C-Bridge as a single written document that was removed by Leary and Peters when they left C-Bridge to form Avicon.

C-Bridge also alleges that the defendants misappropriated certain source codes, work processes and customer

Case 1:04-cv-12708-MLW    Document 43-4    Filed 03/14/2006    Page 4 of 5

Page 4
10 Mass. L. Rep. 539; 1999 Mass. Super. LEXIS 387, *

deliverables when they left C-Bridge's employ. Some of these documents originated in C-Bridge workshops, [*6] and others were developed for specific C-Bridge customers. Where C-Bridge should have knowledge of the particular documents and source codes at issue, it is appropriate for C-Bridge to identify with greater particularity the specific customer material it claims was misappropriated. Defendants are entitled to a more definite statement of the specific trade secrets at issue. See *Mass.R.Civ.P. 12(e)*.

[HN3] In order to prove that specific information qualifies as a trade secret, a business must also prove that it took the necessary steps to insure the material's confidentiality. See *Jet Spray Cooler, Inc. v. Gifford K. Crampton, 361 Mass. 835, 841, 282 N.E.2d 921 (1972)*. The business must demonstrate that it pursued an "active course of conduct designed to inform . . . employees that such secrets and information were to remain confidential." *Id. at 841*. C-Bridge argues that it has satisfied this standard by marking documents confidential and by having employees and customers sign confidentiality agreements.

[HN4] A court will permit a plaintiff to prevail on a motion to dismiss "unless it appears *with certainty* that he is entitled to no relief under [*7] any combination of facts that could be proved in support of his claim." *44 Mass. App. Ct. at 322* (emphasis in original). The defendants were key management employees of C-Bridge who had access to certain customer-specific information. C-Bridge has made at least a minimal showing that it took steps to protect the secrecy of certain trade secret information to which the defendants had access as C-Bridge employees.

   b. Breach of Contract

C-Bridge claims that by misappropriating its trade secrets, the defendants breached their non-disclosure agreements. The defendants argue that this claim also must fail because of C-Bridge's failure to identify the alleged confidential/and or proprietary information with sufficient particularity. Specifically, the defendants argue that if C-Bridge cannot support its claim for breach of non-disclosure agreements where it has failed to identify properly the trade secrets it alleges have been disclosed as the basis of the breach of contract claim. Where C-Bridge sufficiently identified its Business Plan as a confidential document and is being allowed to submit a more definite statement regarding the other confidential materials it claims were misappropriated, [*8] defendants are not entitled to have this count dismissed.

   c. Intentional Interference with Contractual and Advantageous Relations

The defendants allege that C-Bridge's claim for intentional interference fails to state a claim on which relief may be granted. See *Mass.R.Civ.P. 12(b)(6)*. Where C-Bridge has established that it had a non-competition agreement with Casgar, and that the defendants, as principals of Avicon, Inc., solicited Casgar to leave C-Bridge to accept employment with Avicon, it has stated a sufficient cause of action to survive a motion to dismiss. See *Brum, 44 Mass. App. Ct. at 321*.

C-Bridge further alleges that the defendants used proprietary customer information to lure prospective clients away from C-Bridge and to discourage potential investors from investing in C-Bridge. These allegations, which must be taken as true for the purpose of this motion, are sufficient to survive a motion to dismiss. See *Brum, 44 Mass. App. Ct. at 321*.

   d. Chapter 93A

Finally, the defendants argue that C-Bridge's claim for violation [HN5] of G.L.c. 93A ("93A"), the Massachusetts Consumer Protection Statute, should be dismissed. See *Mass.R.Civ.P.* [*9] *12(b)(6)*. As a general rule, 93A does not apply to disputes arising out of the employment relationship. See *Manning v. Zuckerman, 388 Mass. 8, 12, 444 N.E.2d 1262 (1983)*. C-Bridge argues, however, that *Manning* does not apply to a claim for misappropriation of trade secrets where the employee is no longer employed by the owner of the trade secrets. See *Peggy Lawton Kitchens Inc. v. Hogan, 18 Mass. App. Ct. 937, 940, 466 N.E.2d 138 (1984)*. [HN6] Post-employment activities arising from contractual undertakings entered into as part of an employment relationship are not actionable under c. 93A. *Informix v. Rennell, 41 Mass. App. Ct. 161, 163, 668 N.E.2d 1351 (1996)*. "Contract [HN7] disputes between an employer and an employee are . . . 'private in nature' and do not occur in the ordinary 'conduct of any trade or business' as contemplated by [93A]." *Id.* [HN8] Alleged violations of non-disclosure agreements that were signed as part of the employer-employee relationship, are not actionable under c. 93A. *Id.*

That does not end the inquiry, however. Plaintiffs also allege that these defendants' intentional interference with C-Bridge's contractual [*10] and advantageous business relations constitutes a violation of 93A. [HN9] Employees may properly plan to compete with their employer and take steps to do so while still employed without being obliged to disclose their plans. *Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172, 565 N.E.2d 415 (1991)*. "There are, however, certain limitations on the conduct of an employee who plans to compete with an employer . . ." *Id. at 172-73*. Certain breaches of duty may expose the

Case 1:04-cv-12708-MLW   Document 43-4   Filed 03/14/2006   Page 5 of 5

Page 5
10 Mass. L. Rep. 539; 1999 Mass. Super. LEXIS 387, *

employee to liability under G.L.c. 93A. *Id.* On the basis of the allegations made, the court cannot say that there is no set of facts which would subject the defendants to liability under G.L.c. 93A.

e. Casgar's Counterclaim

C-Bridge moves to dismiss Count III of defendant Casgar's counterclaim, which alleges that C-Bridge intentionally interfered with Casgar's advantageous relations with Avicon. Casgar alleges in his Answer that Avicon is not in competition with C-Bridge; that the two companies are engaged in very different businesses. Consequently, Casgar argues that C-Bridge's entire suit is frivolous, and was intended merely to interfere with his business relationship with Avicon. C-Bridge [*11] argues that Count III must be dismissed under *Mass.R.Civ.P. 2(b)(6)* because Casgar has failed to state a claim on which relief may be granted. Specifically, C-Bridge argues that Casgar has failed to show that C-Bridge interfered with Casgar's business relationship with Avicon or that C-Bridge caused Casgar actual pecuniary harm. See *Morochnick v. Quigley, 17 Mass. App. Ct. 1035, 1036, 461 N.E.2d 1220 (1984)*.

[HN10] In evaluating a motion to dismiss a counterclaim, the court must accept as true the allegations of the counterclaim, as well as any inferences that may be drawn from it. *Mulvanity v. Pelletier, 40 Mass. App. Ct. 106, 108, 661 N.E.2d 952 (1996)*. A counterclaim would not be dismissed for failure to state a claim unless it appears beyond doubt that the movant can prove no set of facts in support of his counterclaim that would entitle him to relief. See *Nader v. Citron, 372 Mass. 96, 98, 360 N.E.2d 870 (1977)*.

[HN11] In Massachusetts, a claim for intentional interference with advantageous business relations may be based on the institution of a lawsuit designed to interfere with a business relationship. See *Powers v. Leno, 24 Mass. App. Ct. 381, 385, 509 N.E.2d 46 (1987)*. [*12] Taking the allegations of Casgar's counterclaim as true, Casgar has alleged sufficient facts to survive a motion to dismiss.

ORDER

For the foregoing reasons, it is hereby *ORDERED* that Defendants' motion to dismiss is *DENIED*. However, the plaintiff is *ORDERED* to provide a more definite statement within thirty days of this order identifying with greater particularity the specific customer material and/or trade secrets it alleges to have been misappropriated.

Plaintiffs' motion to dismiss Count III of Casgar's counterclaim is *DENIED*.

Regina L. Quinlan

Justice of the Superior Court

Dated: September 20, 1999