UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI              )
     Plaintiff              )              C. A. NO. 04-12708-MLW
                            )
V.                            )
                            )
PAUL MARTIN AND JUMI LEE      )
     Defendants            )

**DEFENDANTS' MOTION FOR LEAVE
TO FILE FURTHER MEMORANDUM
IN SUPPORT OF THE FOLLOWING:**

**1.     DEFENDANTS' MOTION FOR PROTECTIVE
ORDER AS TO CONFIDENTIAL AND
PROPRIETARY INFORMATION**

**2.     OPPOSITION TO TRINGALI'S
MOTION TO COMPEL ANSWERS TO
INTERROGATORIES AND PRODUCTION
OF DOCUMENTS**

I.     <u>RECENT DISCOVERY IN NORFOLK COUNTY ACTION</u>

On November 2, 2005, the plaintiff, Phillip Tringali ("Tringali"), filed
Defendant [sic] Phillip Tringali's Motion to Compel Answer to Interrogatories
and Production of Documents.  In opposition, on November 17, 2005, the
defendants filed Defendant Paul Martin's Opposition to Plaintiff's Motion to
Compel Answer to Interrogatories and Production of Documents.

On November 8, 2005, the defendants, Paul Martin ("Martin") and Jumi
Lee ("Lee"), filed Defendants' Motion for Protective Order as to Confidential and
Proprietary Information and on November 23, 2005, Tringali filed Plaintiff
Phillip Tringali's Verified Opposition to Defendants' Motion for a Protective
Order.

The Court has now scheduled a hearing by the Magistrate Judge on
March 22, 2006.  Recent events have come to light with respect to discovery
documents filed in another action in Norfolk Superior Court, <u>Martin, et al v.</u>

S.E.E., et al, C.A. No. 02-801 (the "Norfolk County Action"), which has been the subject of prior pleadings in this case.

On February 9, 2006, in the Norfolk County Action Tringali's counsel served two deposition notices to both Martin and Lee together with in each case an identical request for documents.

The request for documents which were attached to the two deposition notices in the Norfolk County Action are identical, word-for-word, with Plaintiff's First Request for Production of Documents to Defendant Paul Martin, which is the subject matter of the hearing before the Magistrate Judge on March 22, 2006.  It is clear that Attorney Treger intends to litigate the subject matter of the breach of fiduciary duty claim in the Norfolk County Action as evidenced by the two deposition notices and the requests for documents attached.  Defendants' counsel has now filed with the Court on March 14, 2006 Defendants' Motion for Stay of Discovery and for More Definite Statement, which motion takes into account in part the recent discovery proceedings in the Norfolk County Action.  We believe that the Magistrate Judge should consider at the hearing on March 22, 2006 the fact that Tringali has filed identical discovery requests in both actions and intends to litigate the subject matter of the alleged breach of fiduciary duty in the Norfolk County Action. Accordingly, we have attached hereto for consideration by the Magistrate Judge the following exhibits:

Exhibit A – Plaintiff's First Request for Production of Documents to
Defendant Paul Martin in the instant action

Exhibit B – Two deposition notices and the attached Schedule A in the
Norfolk County Action

II.    DEFENDANTS' MOTION FOR STAY OF DISCOVERY AND FOR MORE DEFINITE STATEMENT

On March 14, 2006, Martin and Lee filed with this Court Defendants' Motion for Stay of Discovery and for More Definite Statement.  One of the bases for that Motion is a result of discovery requests of Martin and Lee to Tringali. In an effort to avoid litigation regarding those discovery requests

correspondence was exchanged between both counsel the result of which it was understood that Tringali would furnish further documentation with respect to the alleged misappropriated information.  Tringali has failed to furnish and provide such discovery and moreover, he provided a CD computer disk consisting of 671 files only one of which contained any documentation which in any way is relevant to this case.  The other 670 files without explanation, apparently consist of nonrelated files having nothing to do with this cause of action, but files involving one or more litigation matters in which Attorney Treger's firm, Phillips & Angley, is counsel.  We ask the Court to consider this stonewalling by Tringali as further grounds for our opposition to Tringali's motion to compel answers to interrogatories and production of documents.  We also ask the Court to consider the merits of the Motion for Stay of Discovery and for More Definite Statement in connection with the Defendants' Motion for a Protective Order and the Opposition to Tringali's Motion to Compel.

III.     L.R. 7.1 CERTIFICATION

The undersigned certifies that on March 9, 2006, that he conferred by telephone with Attorney Treger regarding this Motion but was unable to resolve the same in that conference.

WHEREFORE, the defendants pray that this Motion be allowed and that the Court accept as an additional filing in connection with the hearing on plaintiff's motion to compel scheduled for March 22, 2006 this Motion and the attached materials.


March 14, 2006                                          Attorney for defendants,


                                          /s/Roger S. Davis
                                         Roger S. Davis
                                         BBO No. 116320
                                         DAVIS & RUBIN
                                         One Bowdoin Square
                                         Suite 901
                                         Boston, MA  02114-2919
                                         (617) 742-4300

QDI12:USDC:MOTMEMO

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12708-MLW

| | |
|---|---|
| PHILLIP TRINGALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL MARTIN AND | ) |
| JUMI LEE, | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PAUL MARTIN

Pursuant to Fed.R.Civ.P., Rule 34 and Local Rules 26.5 and 34.1 of the United States

District Court for the District of Massachusetts, plaintiff Phillip Tringali hereby requests that the

defendant, Paul Martin respond to the following document request and produce documents at

plaintiff's counsel's office in accordance with the Rules.

### DEFINITIONS

The uniform definitions set forth in Rule 26.5 of the Local Rules of the United States for

the District of Massachusetts apply:

(1) *Communication.* The term "communication" means the transmittal of information (in

the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal

in scope to the usage of this term in <u>Fed.R.Civ.P. 34(a)</u>. A draft or non-identical copy is a

separate document within the meaning of this term.

(3) *Identify (With Respect to Persons).*  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents).*  When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document;  and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties.*  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person.*  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning.*  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis.*  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

2

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) *Quantum* means Quantum Dynamics International, LLC, its agents and employees.

(10) *CRAIC* means CRAIC  Technologies, LLC, its agents and employees

(11) *S.E.E.* means S.E.E., Inc, its agents or employees.

(12) *Customer of S.E.E.* means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) *Prospective Customer of S.E.E.* means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

REQUESTS

Request  No. 1

3

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004 , but not limited to, any computerized data base used to track customer contacts, such as ACT.

Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

4

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing, developing, manufacturing, and/or marketing of Quantum and CRAIC products between January 9, 2002 through March 22, 2004, including telephone numbers listed in the names of Quantum and CRAIC.

Request No 10

All promotional literature for Quantum and/or CRAIC products dating from between January 9, 2002 through March 22, 2004, including but not limited to all documents posted on websites maintained by Quantum and/or CRAIC.

Request No 11

All documents of, concerning or relating to upgrades of S.E.E. instruments, repairs or service performed on S.E.E. instruments by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 12

All documents concerning sales of products developed by Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first prototypes of the Mach 1 and/or the Mach 10, as identified in Exhibit "A"..

Request No. 14

All documents, including employment contracts, concerning, in whole or in part, any policy of confidentiality maintained by Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

    a.     Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached

hereto as Exhibit "B".

Request No. 22

All documents reflecting the income and expenses of Quantum and/or CRAIC from

January 7, 2002 through March 22, 2004.

RESPECTFULLY SUBMITTED,
Phillip Tringali,
By his attorney,


_____
Jeffrey J. Phillips, Esq
B.B.O. #398480
Daniel Treger, Esq
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

Date:  9|14|05

L:\LITG\Trng001\martinreq.wpd

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on  9|14|05

crospectrophotometer and Microspectrometer



# QDI Mach10™ MSP

The QDI Mach10™ Microspectrophotometer is the most advanced microspectrophotometer to date. It is a powerful yet user friendly tool for measuring the spectral characteristics of microscopic samples non-destructively. Samples can be as small as 2 microns across and require little preparation. The system can measure transmission, reflectance, and fluorescence spectra in the near-UV, visible, and NIR regions with high spectral resolution.



Home

Up



trophotomet.    1 microspectrometer



# QDi

## QDI Mach1™ MSP

The QDI Mach1™ Spectrophotometer for Microscopes is used to give many models of microscopes spectroscopic capabilities without the expense of a dedicated system. It enables a scientist to measure the spectral characteristics of microscopic samples non-destructively. The system can measure transmission, reflectance, and fluorescence spectra in the visible and near infrared regions with high spectral resolution depending on the microscopes configuration.

Home

Up

represent your company going forward for all sales and support (the latter most important to ESR). However, nothing was mentioned by either of us regarding Foster & Freeman. I was told in an e-mail by Nick on 1 March that "The Fx5 is back there [at ESR] and working fine." (see below)

Apparently, the problems with this instrument continued past this time and Angus must have believed that Alphatech was still involved with this product but was not assisting F&F with it. Paul is going to call Angus directly to get his spin on this but this is how I read things from Paul's comments. So the negative comments about Alphatech in the Referee Review given by Angus appear to have been based on his perception that we were not doing what they expected to support the "entire package" (including the F&F FX5).

I have asked Paul to find out from Angus if this is indeed how he (Angus) viewed Alphatech when he gave his evaluation to DAIS in his role as our reference. More tomorrow on this.

Stay tuned,

Evan S.

>Date: Fri, 01 Mar 2002 08:36:50 +1100
>From: Nick Weber <nick@xtek.net>
>Subject: Head Up
>X-Envelope-To: evan.sales@alphatech.co.nz
>To: "Evan Snyder (E-mail)" <evan.sales@alphatech.co.nz>
>Cc: "'Nigel French (E-mail)'" <nigel@xtek.net>,
> "Nick Away (E-mail)" <nickw@xtek.net>
>X-MIMEOLE: Produced By Microsoft MimeOLE V6.00.2600.0000
>X-Mailer: Microsoft Outlook CWS, Build 9.0.2416 (9.0.2911.0)
>Importance: Normal
>X-MSMail-priority: Normal
>
Evan,

The Fx5 is back there and working fine.

More importantly, you might be interested to know that Paul Martin and S.E.E. have parted company. Paul and Phil couldn't see eye to eye over various matters. The upshot is that Paul has started his own company (QDI) with Jumi and already has an improved range of equipment including a less expensive low end system (which he and I worked out in New Zealand).

Paul has undertaken to pick up the warranty issues on all the equipment I've sold over the last two or three years, so I'm comfortable with the arrangements.

The upshot is that XTEK has informed S.E.E. that we no longer intend to represent them. It would seem to me that the same will happen at S.E.E. as it did at Nanometrics - the msp division will wither away without their input and ideas. I expect that Phil will be in touch with you very soon, if he has not already been offering some attractive deals. That's entirely up to you of course, but I know that I'll be sticking with Paul.

QDI - www.microspectra.com - will be attending the ANZFSS conference with us and showing their new range of instruments - perhaps you might like to come along as well?

Cheers,

Nick
nick@xtek.net
Website: www.xtek.net
Tel: +61 2 6280 6321
Fax: +61 2 6280 6518

00001 "B"

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,            )
INDIVIDUALLY AND AS STOCKHOLDERS     )
ON BEHALF OF S.E.E., INC.            )
      Plaintiffs                     )
                                     )
vs.                                  )
                                     )
S.E.E., INC. AND                     )
PHILLIP TRINGALI,                    )
      Defendants

### NOTICE OF CONTINUED TAKING DEPOSITION OF PAUL MARTIN

To:  Roger S. Davis, Esq.
     Davis & Rubin
     One Bowdoin Square, Suite 901
     Boston, MA 02114-2919

     Please take notice that at 10:00 a.m. on Monday, March 20

2006 at the law offices of Phillips & Angley, One Bowdoin Square,

Boston, Massachusetts the defendant Phillip Tringali, by his

attorney will recommence the deposition upon oral examination of

the plaintiff Paul Martin pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

_____

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.O. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing
on all parties or their attorney of record this day by hand.

Date:February 9, 2006

_____

Daniel Treger, Esq.

L:\LITG\trng002\lee.not2.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 02801

PAUL MARTIN AND JUMI LEE,            )
INDIVIDUALLY AND AS STOCKHOLDERS     )
ON BEHALF OF S.E.E., INC.            )
      Plaintiffs                     )
                                     )
vs.                                  )
                                     )
S.E.E., INC. AND                     )
PHILLIP TRINGALI,                    )
      Defendants

### NOTICE OF CONTINUED TAKING DEPOSITION OF JUMI LEE

To:   Roger S. Davis, Esq.
      Davis & Rubin
      One Bowdoin Square, Suite 901
      Boston, MA 02114-2919

      Please take notice that at 10:00 a.m. on Tuesday, March 21

2006, at the law offices of Phillips & Angley, One Bowdoin

Square, Boston, Massachusetts the defendant Phillip Tringali, by

his attorney will recommence the deposition upon oral examination

of the plaintiff Jumi Lee pursuant to Rule 30 of the

Massachusetts Rules of Civil Procedure, before a notary public in

and for the Commonwealth of Massachusetts or before some other

officer authorized by law to administer oaths. Pursuant to

Mass.R.Civ.P. 30(b)(5) and 30, deponent is further directed to

produce, at the deposition, the documents and things described in

Schedule "A" hereto.  The oral examination will continue from day

to day until completed. You are invited to attend and cross-

examine.

PHILLIP TRINGALI,
By his attorney,

Date: February 9, 2006

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger
B.B.O. 562140
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing
on all parties or their attorney of record this day by hand.

Date:February 9, 2006

Daniel Treger, Esq.

L:\LITG\trng002\martin.not2.wpd

SCHEDULE A

DEFINITIONS

(1) Communication.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) Document.

a. The word "document" includes without limitation the original or any copy of any notes, correspondence, memoranda (including written memoranda of telephone conversations, other communications, discussions, agreements, and any other acts, transactions or activities), contracts, agreements, letters, telegrams, evaluations, work papers, calendars, appointment books, diaries, instructions, order forms, records, sound recordings, forms, statements, photographs, x-rays, journals, notices, interoffice and interoffice communications, photostats, and any other written matter of any kind, including, but without limitation, any marginalia appearing on any documents or any other writing.  A document in the possession, custody or control of another person is considered to be in the possession, custody or control of the defendant if the defendant has a right or privilege to examine it upon request or demand.

b. In the event that it is claimed that any communication or document responsive to any interrogatory is privileged or attorney's work product, each such communication or document should be fully identified in writing, except that the substance thereof need not be described to the extent it is claimed to be privileged.

(3) Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document;  and

(d) author(s), addressee(s), and recipient(s).

(5) Parties.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) Concerning.  The term "concerning" means referring to, describing, evidencing, or constituting.

(8) State the Basis.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory;  and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Additional definitions are as follows:

(9) Quantum means Quantum Dynamics International, LLC, its agents and employees.

(10) CRAIC means CRAIC  Technologies, LLC, its agents and employees

(11) S.E.E. means S.E.E., Inc, its agents or employees.

(12) Customer of S.E.E. means any person who purchased products manufactured by S.E.E. Inc. prior to your separation from S.E.E., Inc.

(13) Prospective Customer of S.E.E. means any person contacted by S.E.E., Inc., its agents or employees regarding the purchase of products manufactured by S.E.E., Inc. prior to January 11, 2002.

## REQUESTS

### Request No. 1

All documents concerning communications between Quantum and customers or prospective customers of S.E.E. during the years from January 9, 2002 through March 22, 2004 including, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 2

All documents concerning communications between CRAIC and customers or prospective customers of S.E.E. from January 9, 2004 through March 22, 2004, but not limited to, any computerized data base used to track customer contacts, such as ACT.

### Request No. 3

All documents concerning the product specifications of all products developed by Quantum and/or CRAIC between January 9, 2002 and March 22, 2004.

Request No. 4

All source code written for, or commissioned for use in the analytical device developed between January 9, 2002 and March 22, 2004 including but not limited to any source code for any graphic user interface, and for adaptation to the Windows 2000 operating system.

Request No. 5

All documents concerning applications papers presented by you during the year 2002, including but not limited to the paper entitled "Ultraviolet Spectroscopy of Textile Fibers."

Request No. 6

All documents  concerning vendors who supplied software, hardware, optical, electrical or other components, and design or other services related to the development of the Quantum and/or CRAIC products between January 9, 2002 and March 22, 200 including but not limited to all communications therewith.

Request No. 7

All documents concerning communications between the defendants and employees of S.E.E., Inc. dating from after January 9, 2002.

Request No. 8

All documents concerning communications between the defendants and any of S.E.E., Inc.'s distributors or sales representatives dating from after January 9, 2002.

Request No. 9

All itemized telephone bills for telephone numbers used by the defendants while engaged in activities related to designing,

developing, manufacturing, and/or marketing of Quantum and CRAIC
products between January 9, 2002 through March 22, 2004,
including telephone numbers listed in the names of Quantum and
CRAIC.

Request No. 10

All promotional literature for Quantum and/or CRAIC products
dating from between January 9, 2002 through March 22, 2004,
including but not limited to all documents posted on websites
maintained by Quantum and/or CRAIC.

Request No. 11

All documents of, concerning or relating to upgrades of
S.E.E. instruments, repairs or service performed on S.E.E.
instruments by Quantum and/or CRAIC from January 9, 2002 through
March 22, 2004.

Request No. 12

All documents concerning sales of products developed by
Quantum and/or CRAIC from January 9, 2002 through March 22, 2004.

Request No. 13

All documents concerning parts purchased for the first
prototypes of the Mach 1 and/or the Mach 10, as identified in
Exhibit "A".

Request No. 14

All documents, including employment contracts, concerning,
in whole or in part, any policy of confidentiality maintained by
Quantum and CRAIC.

Request No. 15

All documents concerning or relating to the organization of Quantum and/or CRAIC.

Request No. 16

All documents concerning communications between the defendants and Sarah Walbridge dating from after January 9, 2002.

Request No. 17

All documents concerning communications between the defendants and Georgia Institute of Technology, its agents or employees dating from after January 9, 2002.

Request No. 18

All documents concerning communications between the defendants and Dynamic Light Control, LLC dating from and after January 9, 2002.

Request No. 19

All documents concerning the development of the following software packages marketed for use with the Mach 1 and the Mach 10:

a. Absolute Reflectance Package.

Request No. 20

All documents concerning any training performed by defendants for users of S.E.E. instruments after January 9, 2002.

Request No. 21

All documents concerning the "low end system" that is the subject of the email attached hereto as Exhibit "B".

Request No. 22

      All documents reflecting the income and expenses of Quantum and/or CRAIC from January 7, 2002 through March 22, 2004.