UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP TRINGALI          )
    Plaintiff          )          C. A. NO.  04-12708-MLW
              )
V.          )
              )
PAUL MARTIN AND JUMI LEE          )
    Defendants          )

**OPPOSITION OF DEFENDANTS PAUL MARTIN AND JUMI LEE
TO PLAINTIFF PHILLIP TRINGALI'S AMENDED
MOTION TO COMPEL DEFENDANTS
TO PERMIT HIM TO INSPECT DOCUMENTS**

## I.  <u>Preliminary Statement</u>

The defendants, Paul Martin ("Martin") and Jumi Lee ("Lee"), oppose the
Amended Motion to Compel.  As this Court is aware, there is a companion case
pending in the Norfolk Superior Court known as the Norfolk County Action.
Martin and Lee have contended that the subject matter of affirmative defenses
in the Norfolk County Action, being the allegations regarding breach of
fiduciary duty, are the same allegations which the plaintiff, Phillip Tringali
("Tringali"), has set forth in the complaint in this instant action.

On May 10, 2006, in connection with a pending motion for clarification
in the Norfolk County Action, Tringali's counsel, Attorney Treger, advised the
Norfolk Superior Court, that the allowance of that motion for clarification, in
his words, would have the effect of compelling or causing the dismissal of this
action.  That argument will be set forth in Section V hereinbelow, however, that
may well be the most compelling argument as to why this Court should take no
action with respect to the Amended Motion to Compel and additionally, should
stay all proceedings in this case.

## II.  <u>Comments Regarding The Original Motion To Compel</u>

On May 3, 2006, the plaintiff filed Plaintiff Phillip Tringali's Motion to
Compel Defendants to Permit Him to Inspect Documents.  This was the original
Motion to Compel and since there is a footnote in the Amended Motion on Page

1, a brief explanation is in order.  In the original motion, Tringali stated in Paragraph 1 that on April 4, 2006, this Court issued a protective order. Defendants' counsel brought this to the attention of Attorney Treger to the effect that the protective order, as clearly indicated by the electronic filing notice and by the order itself, was issued on April 10, 2006 and moreover, that date of April 10, 2006, was recited in Attorney Treger's own letter of April 21, 2006.

Furthermore, the original motion stated in Paragraph 3, that after moving for a protective order in this Court that Martin and Lee sought and obtained a protective order from the Norfolk Superior Court, which is also incorrect.  The procedure for seeking a protective order in the Norfolk County Action was instituted on March 24, 2006, pursuant to Superior Court Rule 9A, when service of that motion was made on Attorney Treger.  On April 3, 2006, one week prior to the issuance of the protective order in this case, the motion for a protective order in the Norfolk County Action was filed in the Superior Court together with Attorney Treger's opposition.  The statement made by Attorney Treger in the footnote that the amended motion was filed at the demand of the defendants is incorrect.  The amended motion was filed, not at the demand of the defendants nor at defendants' request, but rather to correct the misstatements in the original motion.

## III.   **The Protective Order Issued In The Norfolk County Action**

On March 24, 2006, in the Norfolk County Action, Martin and Lee served Tringali with a Motion for Protective Order pursuant to Superior Court Rule 9A.

In accordance with Superior Court Rule 9A, that motion was filed with the Superior Court on April 3, 2006, a week prior to the issuance of the Protective Order in this case.

The Superior Court held a hearing on the Plaintiff's Motion for Protective Order on April 5, 2006, and on the same day, counsel for both parties submitted to the court an Agreed Procedural Order (Exhibit "A" hereto), stating in Paragraph 5 as follows:

     5.     Counsel for both parties will submit a proposed
form of Protective Order by April 11, 2006.

Attorney Treger submitted his form of protective order to the Norfolk Superior Court on April 7, 2006.

Attorney Davis submitted his form of Protective Order to the court on April 10, 2006.

On April 13, 2006, after receipt of both counsel's forms of Protective Order, Judge Fabricant of the Superior Court entered a Protective Order (Exhibit "B" hereto).

On May 3, 2006, Tringali filed in the Superior Court a Motion to Vacate Protective Order and Enter Alternative Order together with the opposition of Martin and Lee.  A copy of the Motion to Vacate is attached as Exhibit "C" and a copy of the opposition is attached as Exhibit "D."

No hearing has been held by the Superior Court with respect to Tringali's Motion to Vacate Protective Order nor has Tringali sought to avail himself of the provisions of Superior Court Rule 9A(e)(1) which provides for the hearing of emergency motions.[1]

Moreover, as part of the grounds for the opposition to the Motion to Vacate Protective Order in the Norfolk County Action, Martin and Lee have included in their opposition excerpts from Tringali's testimony of March 10, 2005, wherein he falsely stated that he had terminated his representation of Nanometrics in March, 2004.

Furthermore, at the time of the hearing in the Norfolk County Action on April 5, 2006, the Agreed Procedural Order and the wording in Paragraph 5 thereto was specifically assented to by Tringali's counsel, and he submitted his form of protective order to the court on April 7, 2006.  Since Tringali through his counsel consented and agreed to the procedure in the Norfolk Superior

---

[1] We note that on May 10, 2006, Tringali availed himself of the emergency hearing provisions of Rule 9A(e)(1) by filing an emergency motion regarding a related matter in the Norfolk County Action.  There appears to be no reason as to why he did not do so with respect to his Motion to Vacate Protective Order.

Court allowing the judge in that court to enter a protective order, which was entered in a form different from the order entered by this Court, Tringali should not be now heard to object to the Norfolk County protective order by filing the Amended Motion to Compel in this Court.

Knowing full well that time was of the essence with respect to the production of the documents, as the documents in this action are to be produced on May 17 and 18, 2006, as indicated by the letter of Martin and Lee's counsel dated April 27, 2006, which is attached to the subject motion, we suggest that Tringali should have moved in the Superior Court under the emergency procedure to have his motion to vacate heard prior to filing this Amended Motion to Compel.

## IV.    Inconsistencies In Tringali's Testimony

While Martin and Lee suggest that the matters regarding Tringali's deposition testimony are of lesser significance with respect to this motion, Martin and Lee wish to address these matters in any event.

In the amended motion, Tringali argues that when he testified in a deposition of March 10, 2005, regarding the dates on which S.E.E. represented Nanometrics, that he was confused with the question.  As indicated on Page 3 of the subject motion, he was initially asked whether after April, 1988, he had any business dealings or was involved with the sale or manufacture of microspectrophotometers and he responded that he represented Nanometrics from 1988 to March of last year, which would have been March, 2004 (Motion, Exhibit 3, Page 14, Lines 1-11).

In Paragraph 10 of the amended motion, Tringali claims that he understood the questioning of plaintiffs' counsel to be about S.E.E.'s relationship "which did end in March, 2004 when S.E.E. ceased operating."  To follow Tringali's argument then, assuming for the moment that his testimony regarding terminating representation of Nanometrics in March, 2004 was meant to refer to S.E.E., that is in conflict with his later testimony.

4

In Paragraph 13 of the motion, Tringali then refers to further testimony, Exhibit 1, Pages 16-17, where he was asked by plaintiffs' counsel:

> Q.    I take it since 1995 you have not been involved in the sales of any Nanometrics forensic products?
>
> A.    No.

After Attorney Treger objected, in order to clarify that the pronoun "you" referred to S.E.E., the question was put to Tringali again:

> Q.    Let me try again.  Was S.E.E. involved in the sale of any Nanometrics forensic products after April 1995?

The answer which was not included in the motion, but is set forth in the transcript Page 17, was "Not that I can recall, no."

To conclude, Tringali first testifies that he ceased representing Nanometrics in March, 2004.  He then states in his memorandum that he understood that question to be inquiring about S.E.E.'s relationship with Nanometrics, which he states in Paragraph 4, "ended in March 2004."  On transcript Page 17, he then contradicts himself by testifying that S.E.E. ceased selling Nanometrics products in April 1995.  The letter which is attached as Exhibit 2 to his motion then states that Tringali's representation of Nanometrics ended on March 31, 2006.

## V.    Tringali Has Informed The Superior Court Of The Possibility Of Dismissal Of This Action.

The defendants Martin and Lee have contended that the allegations in this case are the same allegations which are the subject matter of affirmative defenses in the Norfolk County Action.  Tringali has alleged in this action that Martin and Lee committed breach of fiduciary duty and misappropriation of trade secrets.  These are the same allegations which Tringali has raised as affirmative defenses in the Norfolk County Action and more recently, in statements filed with that court, as will be indicated below.

On February 9, 2006, in the Norfolk County Action Tringali served two document requests consisting of twenty-two requests, which requests are identical, word-for-word with the twenty-two requests in Tringali's first request for production of documents in this action, which are also the subject of the protective order issued by this Court on April 10, 2006.

On March 29, 2006, the parties filed a Joint Pre-Trial Memorandum in the Norfolk County Action which included statements by Tringali alleging breach of fiduciary duty by Martin and Lee. These two statements are as follows:

> S.E.E., Inc. soon learned that Martin and Lee had breached their duty of loyalty to S.E.E., Inc. and its shareholders, by appropriating its confidential and proprietary information. Within two weeks of their resignation, were contacting S.E.E.'s customers, suppliers, vendors, sales representatives and employees, soliciting business for Quantum Dynamics International ("QDI") which they had incorporated in December 2001. Within one month of Martin's and Lee's resignation, while they still owned 20% of S.E.E.'s stock, QDI was marketing microspectrophotometers practically identical to S.E.E.'s products to S.E.E.'s customers, and to prospective customers Martin had cultivated while employed by S.E.E. Within four months of Martin and Lee's departure, QDI was marketing a new microspectrophotometer with enhanced features. S.E.E. had been developing a product with substantially similar enhancements since February, 2001. Martin and Lee were primarily responsible for developing the new product. After their departure, S.E.E.'s remaining employees could find no work product reflecting the development of the enhanced product.

Tringali's intention to try the same issue is further supported by the second statement:

> Defendant Phillip Tringali denies all of plaintiff's allegations. Defendant also claims that the plaintiffs improperly took confidential and proprietary information from S.E.E., Inc., and used it to complete against S.E.E., Inc. and that because of this conduct, they are not allowed to recover damages against him.

In the same Joint Pre-Trial Memorandum Tringali listed twelve individuals as witnesses, all of whom he has previously listed as witnesses or potential witnesses in his disclosure statement in this action.

In the Joint Pre-Trial Memorandum, Martin and Lee informed the court of the questions indicating the issue as to whether there is a counterclaim by Tringali regarding the same allegations of breach of fiduciary duty.

To follow that up, on May 1, 2006, Martin and Lee served on Tringali's counsel in the Norfolk County Action a motion for clarification.  The thrust of this motion is that the affirmative defenses in the Norfolk County Action, supported by Tringali's statements in the Joint Pre-Trial Memorandum, the identical document requests in both cases, the identical witnesses in both cases, as well as deposition testimony and answers to interrogatories, clearly indicate that the issue of breach of fiduciary duty as an affirmative defense, constitutes a compulsory counterclaim under Rule 13(a).

On May 10, 2006, Tringali filed an emergency motion to extend the time to reply to the motion for clarification, in which his counsel states that the allowance of the motion for clarification will have the effect of compelling or causing dismissal of this action, as set forth in Paragraph 6 (Exhibit "E" hereto):

> 6.     Because this motion, if allowed, will having the effect of compelling or causing the dismissal of the pending Federal District Court Case...

While Martin and Lee have not made this statement in their motion for clarification, however, they concur with the statement in Paragraph 6 of Exhibit "E."  For that reason, it seems prudent to conserve judicial resources, to stay all proceedings in this case pending a determination of the motion for clarification and motion to vacate in the Norfolk County Action.

Staying this action would avoid any conflict with the protective order issued by the Norfolk Superior Court in the event that Tringali's motion to vacate that protective order is denied.

Martin and Lee further advise this Court, in order to expedite the determination of the motion for clarification, they will request the Superior Court to expedite the hearing of that motion in accordance with the applicable Superior Court rule.

WHEREFORE, Martin and Lee pray as follows:

(1)    That this Court take no action on the subject Amended Motion to Compel at this time;

(2)    That this Court stay all proceedings in this action pending determination in the Norfolk County Action of Tringali's motion to vacate protective order and Martin and Lee's motion for clarification.

May 11, 2006                                                  Attorney for defendants,


                                              ___/s/Roger S. Davis_____
                                              Roger S. Davis
                                              BBO No. 116320
                                              DAVIS & RUBIN
                                              One Bowdoin Square
                                              Suite 901
                                              Boston, MA  02114-2919
                                              (617) 742-4300

QDI13:USDC:OPPAMNDMOTCOMP

86·C

COMMONWEALTH OF MASSACHUSETTS

PAUL MARTIN ET AL

v

SEE, INC. ET AL

NORFOLK, SS
SUPERIOR COURT
NO. 02-801 B
4/5/06

NORFOLK COUNTY
4/7/06

AGREED PROCEDURAL ORDER

Counsel for the parties submit the following
agreed Procedural Order for approval
by the Court:

1. The discovery deadline is extended to and
including August 18, 2006.

2. All further motions to be ~~filed~~ served by September
29, 2006.

3. Oppositions to motions to be ~~filed~~ served pursuant to Rule 9
by October 30, 2006

4. Further pre-trial conference scheduled for December
18, 2006 at 2:00 p.m.

5. Counsel for both parties will submit proposed
form of Protective Order by April ~~13~~ 17, 2006.

Attorney for plaintiffs
4/5/06

Attorney for Defendant
4/5/06

Approved and so ordered
Judith Fabricant 4/5/06

"A"

89.0

~~Plaintiffs' Suggested Form~~

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

PAUL MARTIN and JUMI LEE,  )
Individually and as Assignees  )
of S.E.E., INC.  )
    Plaintiffs  )
      )
V.  )
      )
PHILLIP TRINGALI  )
    Defendant  )

SUPERIOR COURT
C.A. NO. 02-801
dated
4/13/06  4/19/06
CL
NORFOLK COUNTY

## **PROTECTIVE ORDER**

The following Protective Order is to be effective upon the Court's determination of the pending Plaintiffs' Motion for a Protective Order Pursuant to Rule 26(c) and compliance by the defendant, Phillip Tringali, with all orders which may be made by the Court in connection therewith. The pending discovery requests attached to the deposition notices served on the plaintiffs on February 6, 2006 shall be stayed until defendant Tringali complies with the Court's order on Plaintiffs' Motion for a Protective Order.

1. "Confidential" as used herein means any type or classification of information that is designated in good faith as confidential by the producing person or party, whether it be a document, information contained in a document, physical exhibits, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

2. "Qualified Persons" means:

    (a) The attorneys of record and members and employees of their firms;

    (b) Any other outside attorneys retained by any of the parties to render advice to or represent the party in this action, who have submitted an acknowledgment in the form of Exhibit "A," which is attached hereto (hereinafter "Exhibit A"), to opposing counsel by the party retaining such person;

"B"

    (c)    Outside consultants or outside experts who are retained in connection with this action, whose review of the specific Confidential information is reasonably necessary to assist in the prosecution or defense of this litigation and who have submitted an acknowledgment in the form of Exhibit A to opposing counsel by the party retaining such person;

    (d)    Any person who prepared any document, information, or other tangible medium or who clearly received or was copied on such document, information, or tangible medium for business purposes other than this litigation.  Such person shall be considered a Qualified Person solely with respect to the specific document, information, or tangible medium for which the person prepared or which the person received or was copied on.

    (e)    The named parties in this action.

3.    Information designated as "Confidential" information shall be restricted in circulation to Qualified Persons as defined in Paragraph 2(a)-2(e) above.

4.    Information designated as "Attorney Eyes Only" shall be restricted in circulation to Qualified Persons as defined in Subparagraphs 2(a)-2(d) above and subject to the following:

    (a)    Information designated as "Attorney Eyes Only" information, shall be that information, which if disclosed to persons of expertise in the area would harm the producing or designating party, or reveal significant technical or business advantages of the producing or designating party; and

    (b)    Original copies of "Attorney Eyes Only" information provided to a receiving party shall be maintained in the offices of outside attorneys of record for the receiving party.  Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons of Subparagraphs 2(b)-2(c) and 2(e) shall be maintained only at the offices of the receiving Qualified Persons.

5.    Nothing shall be regarded as "Confidential" or "Attorney Eyes Only" information if it is information that:

   (a)    Is in the public domain at the time of disclosure as evidenced by a written document;

   (b)    Is on file with any governmental or regulatory agency or board.

6.    Information produced in this action may be designated by any party or parties as "Confidential" or "Attorney Eyes Only" information by stating in writing at the time of production that the information (or specified portions thereof) produced is "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY EYES ONLY;" by placing or causing to be placed upon the information at the time of production such designation; or to take such other steps as shall reasonably identify the information produced to be treated as "Confidential" or "Attorney Eyes Only"

7.    (a)    Information disclosed at (i) the deposition of a party or one of its present or former officers, directors, employees, agents, or independent experts retained by counsel for purposes of this litigation or (ii) the deposition of a third party (which information pertains to a party) may be designated by any party (including the third party) as "Confidential" or "Attorney Eyes Only" information by indicating on the record at the deposition that the testimony is "Confidential" or "Attorney Eyes Only" and is subject to the provisions of this Order.

   (b)    Any party may also designate information disclosed at such deposition as "Confidential" or "Attorney Eyes Only" by designating the information at the deposition, or by notifying all of the parties, in writing, within fourteen (14) days after receipt of the transcript, of the specific pages and lines of the transcript which should be treated as "Confidential" or "Attorney Eyes Only" thereafter. Each party shall attach a copy of such written notice to the face of the transcript and each copy thereof in his possession, custody, or control. All deposition transcripts shall be treated as "Attorney

3

Eyes Only" for a period of fourteen (14) days after receipt of the transcript.

(c)     To the extent possible, the court reporter shall segregate into separate transcripts, information designated as "Confidential" or "Attorney Eyes Only" with blank, consecutively numbered pages being provided in a non-designated main transcript. The separate transcript containing "Confidential" and/or "Attorney Eyes Only" shall have page numbers in the sequence of the manner in which testimony was taken, as if those pages were not segregated.

(d)     If during the course of a deposition, testimony is being elicited that is designated "Confidential," or "Attorney Eyes Only," anyone other than the deponent, the court reporter, and Qualified Persons defined in Subparagraphs 2(a)-(d) will be excluded for the duration of such designated testimony.

8.     Nothing herein shall prevent disclosure beyond the terms of this Order if each and every party designating the information as "Confidential" or "Attorney Eyes Only" consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosure.

9.     In the event that any information or document is disclosed or produced without the "Confidential" or "Attorney Eyes Only" designation and it is later determined, in good faith, that such a designation should have appeared on the document, the producing person or party may restrict future disclosure of the document, consistent with this Protective Order, by notifying the receiving person or party in writing of the change in or addition of a restrictive designation. The notice shall include a description of the document and the designation under which future disclosure of the document is to be governed. The receiving party shall promptly notify non-qualified persons who may have reviewed the information or document before the notice was received and shall retrieve the same.

10.     (a)     A party shall not be obligated to challenge the propriety of a designation as "Confidential" or "Attorney Eyes Only" at the time

made and a failure to do so shall not preclude a subsequent challenge thereto. In the event that any party to this action disagrees at any stage of these proceedings with the designation by the designating party of any information as "Confidential" or "Attorney Eyes Only," or the designation of any person as a Qualified Person, the parties shall first try to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, either party may move the Court for a resolution.

(b)     By stipulation, the parties may provide for exceptions to this Order and any party may seek an Order of this Court modifying this Protective Order.

11.     In the event that a consultant or expert, as defined in paragraph 2(c) above, is retained by either party to furnish technical or consulting services or to give testimony with respect to the subject matter of this action and a party desires to disclose to such consultant or expert any "Confidential" or "Attorney Eyes Only" information marked by the other party, the disclosing party must deliver to opposing counsel a copy of a signed Exhibit A executed by the consultant or expert and a copy of the consultant's or expert's curriculum vitae at least five (5) business days prior to disclosure of such "Confidential" or "Attorney Eyes Only" information, by facsimile and by first class mail.

In the event that a party, which has produced such "Confidential" or "Attorney Eyes Only" information, objects to its disclosure to a consultant or expert by an opposing party, such objecting party shall deliver a notice of objection to such disclosing party within ten (10) business days after receiving a copy of Exhibit A and the consultant's or expert's curriculum vitae by facsimile, in person, or by first class mail, whichever occurs first. In such event, disclosure of the "Confidential" or "Attorney Eyes Only" information shall not be made to such consultant or expert until the parties agree, in writing, that such disclosure may be made or the Court rules on the dispute. The objecting party shall fully state in its notice of objection its reasons and

5

grounds for such objection. Failure to timely give notice of objection to opposing counsel shall operate as a waiver of the objection.

Unless the dispute is resolved by agreement of counsel, the objecting party may move within five (5) business days after giving notice of its objections for a ruling by the Court on the dispute. Absent such motion within said time, the objection shall be deemed withdrawn.

12.    In the event that a party wishes to use any "Confidential" or "Attorney Eyes Only" information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this litigation, such "Confidential" or "Attorney Eyes Only" information used therein shall be filed with the Court in a sealed envelope bearing the legend:

"CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER" or

"ATTORNEY EYES ONLY – PURSUANT TO PROTECTIVE ORDER"

13.    The Clerk of this Court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, affidavits, briefs, memoranda of law, or other papers that have been filed in court in this litigation that have been designated, in whole or in part, as "Confidential" or "Attorney Eyes Only."

14.    Within thirty (30) days after the final conclusion of this litigation, including all appeals, all originals or reproductions of any documents produced *other than copies filed with the Court* by a party containing "Confidential" or "Attorney Eyes Only" information, shall be returned to the producing party or destroyed with the exception of one archival copy kept under custody and control of outside attorneys of record, unless the parties otherwise agree in writing. Insofar as the provisions of any protective orders entered in this action restrict the communication and use of the documents produced thereunder, such orders shall continue to be binding after the conclusion of this litigation except (a) that there shall be no restriction on documents and things that are used as trial or public hearing exhibits in court (unless such exhibits were ~~filed under seal~~ *impounded*) and (b) that a party may seek

\* Such party shall first move the Court for impoundment of such material in the manner and under the standards provided by Trial Court Rule VIII.

6

the written permission of the producing party or further order of the Court with respect to dissolution or modification of such protective order.

Entered as an Order by the Court.

April __13__, 2006

_Judith _____
Associate Justice of the Superior Court_

A TRUE COPY
Attest: _Mary _____
Deputy Assistant Clerk    4/19/06

7

## EXHIBIT "A"

### COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT
C.A. NO. 02-801

PAUL MARTIN and JUMI LEE,    )
Individually and as Assignees    )
of S.E.E., INC.    )
    Plaintiffs    )
    )
V.    )
    )
PHILLIP TRINGALI    )
    Defendant    )

### AFFIDAVIT

I, _____ do hereby on oath

depose and state as follows:

    1.    My address is _____

_____. My present occupation is _____

_____, and I am currently employed by _____

_____, I have been retained by _____

_____ with respect to this litigation (for experts/attorneys

only). A true copy of my curriculum vitae is attached (for experts/attorneys

only).

    2.    I have received a copy of the Protective Order in this action and

have carefully read and understand its provisions.

    3.    1 will comply with all of the provisions of the Protective Order. I

will hold in confidence, will not disclose to anyone other than those persons

specifically authorized by the Protective Order, and will not copy or use for

other purposes other than for this lawsuit, any information designated

"Confidential" or "Attorney Eyes Only", which I receive in this action, except to

8

the extent that such information so designated is or becomes public domain information or otherwise is not deemed "Confidential" or "Attorney Eyes Only" in accordance with the Protective Order.

4.    I declare under penalty of perjury that the foregoing is true and correct.

Executed: _____          _____

Date                                                  Name

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT
C.A. NO. 02-801

PAUL MARTIN and JUMI LEE,       )
Individually and as Assignees       )
of S.E.E., INC.                      )
                                 )
     Plaintiffs,                 )
                                 )
v.                                 )
                                 )
PHILLIP TRINGALI              )
                                 )
     Defendant.               )

## MOTION TO VACATE PROTECTIVE ORDER AND
## ENTER ALTERNATIVE PROTECTIVE ORDER

Now comes the defendant, Phillip Tringali, and hereby move this Honorable Court to
vacate the Protective Order entered in this matter on April 13, 2006, and enter the Protective
Order attached hereto as Exhibit "A".

In support of his motion, Mr. Tringali states:

1.     On April 5, 2006, the parties appeared for a pretrial conference.

2.     During the conference, the parties also argued plaintiffs' motion for a protective
order staying discovery until defendant identified the information that is the subject of his
equitable defenses in this matter.

3.     During the hearing, the Court directed the parties either to agree to the terms of a
protective order limiting dissemination of information disclosed during discovery, or to submit
proposed orders to the Court.   The parties did so.

4.     The parties were unable to agree to the terms of such an order because the
plaintiffs insisted upon terms allowing the parties to designate materials as "attorneys eyes only."
Counsel would be prohibited from showing information so designated to their clients.

5.     Allowing such a designation would impose undue hardship upon the defendant, as
it would effectively preclude him from assisting counsel in preparing his defense. There is no

1

limit upon the classes of information that might be designated as "attorney's eyes only."

6.     Plaintiffs based their request for extraordinary limitations on disclosure on the fact that defendant is an outside sales representative for  Nanometrics, a manufacturer with which plaintiffs claim they compete.

7.     This is no longer a valid concern.  Nanometrics terminated its relationship with the defendant as of March 31 2006. [Exhibit "B"].

8.     During argument, the parties disclosed that the information at issue is also the subject of discovery in  pending litigation in Federal District Court.

9.     On April 10, 2006, the Federal Magistrate, Judge Robert Collings declined the plaintiffs' request to issue a protective order allowing them to designate material as "attorney's eyes only."  Instead, he entered a protective order in the form proposed by the defendant in this matter. [Exhibit "C"].

10.     On April 20, 2006, before counsel read their mail, plaintiffs' counsel agreed to stipulate that Magistrate Judge Collings' protective order would issue in this matter as well. [Exhibit "D"].

11.     Notice of the Court's April 13, 2006 arrived later that day.   Thereafter, plaintiffs' counsel withdrew his consent to stipulate to Magistrate Judge Collings' protective order.

12.     These competing orders place the defendant in the impossible position of being subject to inconsistent Court orders regarding his ability to review materials produced by the Plaintiffs.

WHEREFORE, defendant respectfully request that his motion be allowed, and that the Court vacate its protective order of April 13, 2006, and substitute the proposed protective order attached hereto as Exhibit "A" which is identical to that issue by the Federal Court in this matter.

Respectfully Submitted
Phillip Tringali
By his counsel

Date:   April 21, 2006   _____

Daniel Treger
BB.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all parties or their counsel of record this day by hand.

Date:   April 21, 2006   _____

Daniel Treger.

L:\LITG\trng002\protectiveorder.wpd

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                                SUPERIOR COURT
                                                           C.A. NO. 02-801

PAUL MARTIN and JUMI LEE,            )
Individually and as Assignees        )
of S.E.E., INC.                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )
                                     )
PHILLIP TRINGALI                     )
                                     )
        Defendant.                   )

## **PROTECTIVE ORDER**

The Court, after hearing, issues the following protective order, pursuant to Mass.R.Civ.P. 26(c).

## **DEFINITIONS**

The following definitions shall apply for purposes of this Protective Order:

A       "Confidential Material" shall mean: (a) all documents designated confidential in accordance with this Protective Order; (b) all copies, extracts, reports, studies, complete or partial summaries, and other documents or materials made or prepared from Confidential material; and (c) all deposition transcripts, briefs, memoranda, exhibits, and other pleadings or writing which include, summarize, or otherwise disclose or discuss Confidential Material.

B.      "Document" shall include all items within the scope of Mass..R.Civ.P. 34(a) and the uniform definitions applicable thereto, any written, typed, or printed matter of any kind, sound recordings, photographs, or any other medium for preserving, duplicating or recording written or spoken words (including, but not limited to, transcripts of any oral deposition testimony taken pursuant to Mass..R.Civ.P. 30, and/or 31).

C.      A "Producing Non-Party" shall mean any non-party required to produce Documents in connection with this matter.

## PROCEDURE FOR DESIGNATION OF CONFIDENTIAL MATERIAL

The parties may designate as Confidential Material any Document which they produce or which is produced by a Producing Non-Party in connection with this matter which they believes' in good faith should be kept confidential. The purpose of this order is to protect, in good faith, the legitimate proprietary and confidential information produced by parties and by Producing Non-Parties from being disclosed. This order is not to be used by any party or Producing Non-Party as a delaying tactic for the purpose of avoiding discovery obligations under Mass.R.Civ.P.

A Producing Non-Party may also designate as Confidential Material any Document which she/he it produces in connection with this matter which she/he/it believes in good faith should be kept confidential.

Any party or Producing Non-Party wishing to designate Documents confidential shall either: state in writing at the time of production that the Documents (or specified portions thereof) are Confidential Material; place or cause to be placed upon the Documents at the time of production a CONFIDENTIAL legend; and/or take such other steps as may reasonably identify that the Documents produced are to be treated as Confidential Material.

## LIMITATION ON THE USE OF CONFIDENTIAL MATERIAL

In no event shall any person make any use of any item produced in this litigation designated as Confidential Material  hereunder other than for the prosecution, defense, or settlement of this litigation and litigation presently pending in Norfolk Superior Court between the same parties.

Confidential Material shall not be shown to, given to, discussed with, or otherwise disclosed to any person other than:

> 1.    Counsel of record for the parties and their respective partners and associates

2

2      The parties;

3.     The authors, addressees, recipients or originators of the Confidential Material.

4..    Former employees of S.E.E, Inc.

5..    The Court, and its officers, clerks, court reports, and jurors.

6.     Personnel employed by counsel in the ordinary course of business including paralegal, litigation assistants, stenographers, secretarial, and clerical personnel.

7.     Persons retained or proposed to be retained as an expert consultant or witness on behalf of any party in this litigation and any employee or assistant thereto.

8.     Any other persons agreed to in writing between counsel or determined by the Court.

9.     Any witnesses (other than the defendants) questioned during the course of a deposition in this matter, so long as the procedures set forth below for disclosure are observed.

Any deposition or portion thereof during which Confidential Material is being disclosed by any party shall be taken as if **in camera** without any persons in attendance other than those identified in the preceding paragraph (for Confidential Material), the deposition witness, and the court reporter. The Court reporter shall be provided with a copy of this protective Order.

All persons to whom Confidential Material governed by this Protective Order is disclosed shall be bound by the terms hereof. Prior to making any such disclosure counsel shall require each person (other than the individuals identified in 1, 3, 5, 6 *supra*) to read this Protective Order and to execute, under oath, an affidavit in the form of Exhibit A.

3

Notwithstanding the foregoing, if Confidential Material is disclosed to any non-party deposition witness in accordance with 9, supra, the party seeking to use the information shall inform the witness of this Protective Order prior to use of the Confidential Material and shall attempt to obtain the witness' agreement under oath on the record to be bound by this Protective Order. Such an undertaking shall be deemed to satisfy the requirements of this paragraph with respect to the witness.

In the event that either party voluntarily discloses its own Confidential Material, that disclosure shall not be deemed a waiver of that party's right to preserve the confidentiality of any other information on any basis whatsoever.

This Protective Order shall not apply to any Documents or information contained therein which are obtained from sources other than through discovery or which are available publicly or are a matter of public record on file with any governmental or regulatory agency or board.

Upon the conclusion or final settlement of this litigation, all persons subject to the terms hereof within thirty (30) days after such conclusion or settlement shall return to the party producing Documents if so requested in writing, all Documents (including all copies thereof) containing Confidential Material, except that each party's counsel of record may retain one archival copy of pleadings, attorney's work product and transcripts which contain Confidential Material, which shall remain subject to this Protective Order.

If any person receiving Documents covered by this Protective Order (the "Receiver") (a) is subpoenaed in another action or (b) is served with a demand in another action to which he or it is a party, or (c) is served with any other legal process by one not a party to this litigation seeking Documents designated Confidential Material, the Receiver shall give prompt written notice to the party or Producing Non-Party who produced or designated the material confidential and shall object to its production. Nothing herein shall be construed as requiring the Receiver to

challenge or appeal any order requiring production of Confidential Material covered by this Protective Order, or to subject him/her/itself to any penalties for non-compliance with any legal process or order, or to seek any relief from this Court.

By The Court,

_____
Fabricant, J.

5

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT
C.A. NO. 02-801

PAUL MARTIN and JUMI LEE, )
Individually and as Assignees )
of S.E.E., INC. )
    Plaintiffs, )
     )
v. )
     )
PHILLIP TRINGALI )
    Defendant. )

*AFFIDAVIT*

STATE OF _____

COUNTY OF_____

THE UNDERSIGNED, ON OATH DEPOSE AND SAY AS FOLLOWS:

I, _____, do hereby acknowledge that I have been provided with a copy of

the Protective Order entered into in this action with respect to the manner in which

"confidential" information which has been produced by the parties shall be treated.

I state that I have read and understand the Protective Order and I hereby represent and

warrant that I will abide by the Protective Order and agree to be bound by it.

I further acknowledge that I may be held responsible for any failure on my part to

comply with the provisions of the Protective Order, and agree to subject myself to the

jurisdiction of the Norfolk Superior Court in the Commonwealth of Massachusetts for the

purpose of enforcing the  Protective Order.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF

_____ 200 _.

_____

6

B

# **⦿ NANO metrics**

**NANOMETRICS INCORPORATED**  1550 Buckeye Drive   Milpitas, CA  95035   Tel: 408. 435. 9600   Fax: 408.232.5910

March 31, 2006

Phil Tringali
PT Technology
98 Walnut Street,
Halifax, MA 02338

Dear Phil:

Please note the attached Nanometrics Representative Termination Agreement-between
PT Technology and Nanometrics Inc.

Please sign and return one copy to me and keep a copy for your records.

We appreciate your support and sales efforts during the many years with Nanometrics and
wish you continued success in the future.

Best regards,

Nathan Coe
Sr. Director of Sales

# United States District Court
# District of Massachusetts

PHILLIP TRINGALI,
    Plaintiff,

       V.                CIVIL ACTION 2004-12708-MLW

PAUL MARTIN,
JUMI LEE,
    Defendants.

## *PROTECTIVE ORDER*

COLLINGS, U.S.M.J.

    The Court, after hearing, issues the following protective order, pursuant to Fed.R.Civ.P. 26(c)(7).

### DEFINITIONS

    The following definitions shall apply for purposes of this Protective Order:

    A    "Confidential Material" shall mean: (a) all documents designated confidential in accordance with this Protective Order; (b) all copies, extracts, reports, studies, complete or partial summaries, and other documents or

materials made or prepared from Confidential material; and (c) all deposition transcripts, briefs, memoranda, exhibits, and other pleadings or writing which include, summarize, or otherwise disclose or discuss Confidential Material.

B.     "Document" shall include all items within the scope of Fed.R.Civ.P. 34(a) and the uniform definitions applicable thereto,  any written, typed, or printed matter of any kind, sound recordings, photographs, or any other medium for preserving, duplicating or recording written or spoken words (including, but not limited to, transcripts of any oral deposition testimony taken pursuant to Fed.R.Civ.P. 30, and/or 31).

C.     A "Producing Non-Party" shall mean any non-party required to produce Documents in connection with this matter.

## PROCEDURE FOR DESIGNATION OF CONFIDENTIAL MATERIAL

The parties may designate as Confidential Material any Document which they produce or which is produced by a Producing Non-Party in connection with this matter which they believes in good faith should be kept confidential. The purpose of this order is to protect, in good faith, the legitimate proprietary and confidential information produced by parties and by Producing Non-Parties from being disclosed. This order is not to be used by any party or Producing Non-Party as a delaying tactic for the purpose of avoiding discovery obligations

2

under Fed.R.Civ.P.

A Producing Non-Party may also designate as Confidential Material any Document which she/he it produces in connection with this matter which she/he/it believes in good faith should be kept confidential.

Any party or Producing Non-Party wishing to designate Documents confidential shall either: state in writing at the time of production that the Documents (or specified portions thereof) are Confidential Material; place or cause to be placed upon the Documents at the time of production a CONFIDENTIAL legend; and/or take such other steps as may reasonably identify that the Documents produced are to be treated as Confidential Material.

## LIMITATION ON THE USE OF CONFIDENTIAL MATERIAL

In no event shall any person make any use of any item produced in this litigation designated as Confidential Material hereunder other than for the prosecution, defense, or settlement of this litigation and litigation presently pending in Norfolk Superior Court between the same parties.

Confidential Material shall not be shown to, given to, discussed with, or otherwise disclosed to any person other than:

>      (1)    Counsel of record for the parties and their respective partners
>             and associates

3

(2)   The parties;

(3)   The authors, addressees, recipients or originators of the Confidential Material.

(4)   Former employees of S.E.E, Inc.

(5)   The Court, and its officers, clerks, court reports, and jurors.

(6)   Personnel employed by counsel in the ordinary course of business including paralegal, litigation assistants, stenographers, secretarial, and clerical personnel.

(7)   Persons retained or proposed to be retained as an expert consultant or witness on behalf of any party in this litigation and any employee or assistant thereto.

(8)   Any other persons agreed to in writing between counsel or determined by the Court.

(9)   Any witnesses (other than the defendants) questioned during the course of a deposition in this matter, so long as the procedures set forth below for disclosure are observed.

Any deposition or portion thereof during which Confidential Material is being disclosed by any party shall be taken as if **in camera** without any persons in attendance other than those identified in the preceding paragraph (for Confidential Material), the deposition witness, and the court reporter. The Court reporter shall be provided with a copy of this protective Order.

All persons to whom Confidential Material governed by this Protective Order is disclosed shall be bound by the terms hereof. Prior to making any such

4

disclosure counsel shall require each person (other than the individuals identified in (1), (3), (5), (6), *supra*,) to read this Protective Order and to execute, under oath, an affidavit in the form of Exhibit A. Notwithstanding the foregoing, if Confidential Material is disclosed to any non-party deposition witness in accordance(9), *supra*, the party seeking to use the information shall inform the witness of this Protective Order prior to use of the Confidential Material and shall attempt to obtain the witness' agreement under oath on the record to be bound by this Protective Order. Such an undertaking shall be deemed to satisfy the requirements of this paragraph with respect to the witness.

In the event that either party voluntarily discloses its own Confidential Material, that disclosure shall not be deemed a waiver of that party's right to preserve the confidentiality of any other information on any basis whatsoever.

This Protective Order shall not apply to any Documents or information contained therein which are obtained from sources other than through discovery or which are available publicly or are a matter of public record on file with any governmental or regulatory agency or board.

Upon the conclusion or final settlement of this litigation, all persons

5

subject to the terms hereof within thirty (30) calendar days after such conclusion or settlement shall return to the party producing Documents if so requested in writing, all Documents (including all copies thereof) containing Confidential Material, except that each party's counsel of record may retain one archival copy of pleadings, attorney's work product and transcripts which contain Confidential Material, which shall remain subject to this Protective Order.

If any person receiving Documents covered by this Protective Order (the "Receiver") (a) is subpoenaed in another action or (b) is served with a demand in another action to which he or it is a party, or (c) is served with any other legal process by one not a party to this litigation seeking Documents designated Confidential Material, the Receiver shall give prompt written notice to the party or Producing Non-Party who produced or designated the material confidential and shall object to its production. Nothing herein shall be construed as requiring the Receiver to challenge or appeal any order requiring production of Confidential Material covered by this Protective Order, or to subject him/her/itself to any penalties for non-compliance with any legal process or order, or to seek any relief from this Court.

6

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

April 10, 2006.

## _EXHIBIT A_

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

PHILIP TRINGALI,
    Plaintiff,

        V.                      CIVIL ACTION 2004-12708-MLW

PAUL MARTIN,
JUMI LEE,
    Defendants.

## _AFFIDAVIT_

COMMONWEALTH OR STATE OF _____
COUNTY OF_____

THE UNDERSIGNED, ON OATH DEPOSE AND SAY AS FOLLOWS:

    I, _____, do hereby acknowledge that I have been provided with a copy of the Protective Order entered into in this action with respect to the manner in which "confidential" information which has been produced by the parties shall be treated.

8

I state that I have read and understand the Protective Order and I hereby represent and warrant that I will abide by the Protective Order and agree to be bound by it.

I further acknowledge that I may be held responsible for any failure on my part to comply with the provisions of the Protective Order, and agree to subject myself to the jurisdiction of the United States District Court for the District of Massachusetts for the purpose of enforcing the Protective Order.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS __ DAY OF _____, 200 _.

 

 

_____

(Signature)

 

_____

(Printed Name

 

_____

(Street Address)

 

_____

(City/Town, State, Zip Code)

_____

(Telephone Number)

9

D

# DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

## **VIA FACSIMILE**
## **617-227-8992**

April 19, 2006

Daniel Treger, Esq.
PHILLIPS & ANGLEY
One Bowdoin Square
Boston, MA 02114

Re:     Paul Martin, et al
Vs:     Phillip Tringali
        Norfolk Superior Court

Dear Mr. Treger:

In reply to your letter of April 19, 2006, I am agreeable to stipulate in the Norfolk action the terms of the Protective Order issued by Judge Collings.

Very truly yours,

Roger S. Davis

RSD:cat

QDI13:MARTIN;BYFAX

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT
C.A. NO. 02-801

PAUL MARTIN and JUMI LEE,        )
Individually and as Assignees    )
of S.E.E., INC.                  )
     Plaintiffs                  )
                                 )
V.                               )
                                 )
PHILLIP TRINGALI                 )
     Defendant                   )

**OPPOSITION OF PLAINTIFFS TO DEFENDANT'S
MOTION TO VACATE PROTECTIVE ORDER AND
ENTER ALTERNATIVE PROTECTIVE ORDER**

The plaintiffs, Paul Martin ("Martin") and Jumi Lee ("Lee"), respond and oppose the subject motion as follows.

1.    On April 5, 2006, counsel for both parties appeared for a pre-trial conference and subsequent to an order of the Court, both counsel submitted proposed forms of protective orders to the Court.

2.    During the hearing before this Court on April 5, 2006, counsel disclosed that the information at issue was the subject of discovery proceedings in the U.S. District Court.

3.    There appears to have been a misunderstanding by both counsel that this Court was not going to issue a protective order, and therefore, on April 19, 2006, prior to reading his mail, as indicated in the motion in Paragraph 10, plaintiffs' counsel sent the letter, Exhibit D, to Attorney Treger.

4.    Immediately after sending the letter to Attorney Treger, however, both counsel received in the mail the Protective Order entered by this Court dated April 13, 2006.  That Protective Order permits the plaintiffs to designate documents as either "Confidential" or "Attorney's Eyes Only."

5.    After receiving the Defendants' Motion to Vacate Protective Order on April 21, 2006, and in particular, as a result of one of the exhibits to that Motion,

new facts have come to light which seriously put into question the credibility of the defendant Phillip Tringali ("Tringali").

6.      Attached as Exhibit B to the subject motion is a copy of a letter from Nanometrics to Tringali dated March 31, 2006, referring to an attached representative termination agreement between Tringali and Nanometrics, however, that termination agreement was not included.  According to that letter from Nanometrics, the representative agreement with Tringali terminated on March 31, 2006, however, as will be indicated below, this is contrary to Tringali's earlier sworn testimony in this case.

7.      On March 10, 2005, Tringali's deposition testimony was taken in this case and under oath he testified that he had terminated his representation of Nanometrics in March, 2004, as set forth on Page 14 (Exhibit "A" hereto):

> Q.      After 1988 did you have any business dealings or were you involved in any way with the sale or manufacturing of microspectrophotometers?
>
> A.      Yes.
>
> Q.      When?
>
> A.      I have had right along.  I represented Nanometrics which made microspectrophotometers.
>
> Q.      For what period of time did you represent Nanometrics?
>
> A.      I represented them from 1988 until I believe March of last year.

8.      Tringali, by his testimony on March 10, 2005, stated under oath that he had terminated his representation a year prior thereto.  In fact, this is not the case.  Contrary to Tringali's testimony that he had terminated his representation of Nanometrics in March 2004, the plaintiffs obtained a publication of his company, PT Technology (Exhibit "B" hereto), on September 27, 2005, which shows on the second page that Tringali was representing Nanometrics approximately eighteen months after he had claimed that he had terminated his representation.

2

9.    We now have serious conflicting statements, the first being Tringali's deposition testimony under oath on March 10, 2005, claiming that he had terminated his representation of Nanometrics a year prior thereto, then a PT Technology advertisement appearing eighteen months later showing Tringali as representing Nanometrics and now a letter from Nanometrics purportedly terminating Tringali's representation on March 31, 2006.

10.    The plaintiffs also wish to point out that these conflicting statements, now raised by the Nanometrics letter of March 31, 2006, were never submitted to the U.S. District Court prior to its issuance of its protective order.

11.    Martin and Lee's position is that Tringali is without credibility and he should not be entrusted to examine documents which are designated as Attorney's Eyes Only.  Tringali has been in the forensic/microspectro-photometer business for a number of years and regardless of whether he now claims not to represent Nanometrics, there is certainly every possibility and likelihood that he will be back in the same competing business.  Therefore, Tringali, whose credibility is totally lacking, and who has a history of being in the competing business, should not be permitted to examine documents designated as Attorney's Eyes Only, which are the subject of this Court's protective order.

12.    The plaintiffs therefore request that this Court deny the Motion to Vacate Protective Order.

May 1, 2006                                          Attorney for plaintiffs,

                                                    _____
                                                    Roger S. Davis
                                                    BBO No. 116320
                                                    DAVIS & RUBIN
                                                    One Bowdoin Square
                                                    Suite 901
                                                    Boston, MA 02114-2919
                                                    (617) 742-4300

QDI13:MARTIN:OPPVACATEPO

```
                                                              1
 1                                      Volume:  I

 2                                      Pages:  1-215

 3                                      Exhibits:  1-9

 4                COMMONWEALTH OF MASSACHUSETTS

 5     Norfolk, ss                      Superior Court

 6

 7     Civil Action No. 02-801

 8     - - - - - - - - - - - - - - - - - - x

 9     PAUL MARTIN and JUMI LEE, Individually

10     and as Stockholders on behalf of

11     S.E.E., Inc.,

12               Plaintiffs,

13     vs.

14     S.E.E., INC. and PHILLIP TRINGALI,

15               Defendants.

16     - - - - - - - - - - - - - - - - - - x

17

18            DEPOSITION OF PHILLIP TRINGALI

19              Thursday, March 10, 2005

20                  Davis & Rubin

21               One Bowdoin Square

22            Boston, Massachusetts 02114

23             Commencing at 10:04 a.m.

24       Reporter:  Karen A. Morgan, CSR/RPR
```

Phillip Tringali

14

1    Q.   After 1988 did you have any business dealings

2   or were you involved in any way with the sale or

3   manufacturing of microspectrophotometers?

4    A.   Yes.

5    Q.   When?

6    A.   I have had right along.  I represented

7   Nanometrics which made microspectrophotometers.

8    Q.   For what period of time did you represent

9   Nanometrics?

10    A.   I represented them from 1988 until I believe

11   March of last year.

12    Q.   During that period of time were you engaged

13   in the sale of the semiconductor products of

14   Nanometrics?

15    A.   Yes.

16    Q.   Principally?

17        MR. TREGER:  Objection to the form.  You

18   can answer if you understand it.

19    A.   Well, it was in the forensic field and the

20   semiconductor industry.

21    Q.   To your recollection what was the volume of

22   forensic sales that you did for Nanometrics beginning

23   in the year 1990?

24        MR. TREGER:  I'm sorry.  For just that

July 18, 2005

# PT Technology

**Is pleased to represent the following companies and their products in New England, New York, and Eastern Canada.**

## GTI Technologies, Inc.- Shelton, CT

www.gtitechnologies.com

- Wafer Thickness Measurement Systems
- Wafer Grinding Systems
    - o Si, GaAs, InP, SiC, Sapphire, Ceramics, Quartz
- Wafer Scribers and Bonders
- Semi-Auto Probe Station
- Gas Detection and Monitoring Systems
- Carbon Fiber End Effectors
- Takatori Products
    - o Tape Laminating, Wafer Mounting, Tape Removal, Wire Saws

## Integrated Designs, LP- Carrollton, TX

www.integrated-designs.com

- Chemical Delivery Systems
- Resist Pumps
    - o Cybor, IDI
- Dispense Systems
    - o Resist, EBR, SOG, Low-K, Solvent

## Micro-Metric, Inc.- San Jose, CA

www.micro-metric.com

- Optical Metrology Systems
    - o CD Measurements
    - o Overlay Measurements
    - o 2"-12" Wafers
    - o Masks and Reticles
- Fiber Optic Measurement Systems
    - o Fiber, V-Groove, Ferrule
    - o Concentricity, Diameters, Spacing, Pitch
- Coordinate Measurement Systems

B

## **Nanometrics Inc.**- Milpitas CA                    www.nanometrics.com

- Film Thickness Measurement Systems
  - o  Table Top: Manual and Semi Automated
  - o  Fully Automated w/ DUV-NIR Spectroscopic Ellipsometry
- Fully Automated OCD Metrology Systems
- Fully Automated UDI Metrology System

## **SSS, Inc.**- Montvalle NJ                    www.s-cubed.com

- Flexi-PCS
  - o  Spin Coat, Develop, Bake Systems
- TruClean Double-Sided Scrubbing Systems
  - o  Round, Square, Rectangular, to 300mm
- Cyclone Chemical Processing Systems
  - o  Cleaning, Etching, Liftoff

**Please contact us for any questions or assistance we may provide for our product lines. We may be reached at the following information.**

**PT Technology**                    Tel:    781-293-5974
**98 Walnut St.**                    Fax    781-294-0504
**Halifax ,MA 02338**                    Mobile:339-933-3365

Email: ptringali@aol.com

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT
C.A. NO. 02-801

PAUL MARTIN and JUMI LEE,          )
Individually and as Assignees       )
of S.E.E., INC.                     )
                                    )
    Plaintiffs,                     )
                                    )
v.                                  )
                                    )
PHILLIP TRINGALI                    )
                                    )
    Defendant.                      )

### DEFENDANT PHILLIP TRINGALI'S EMERGENCY MOTION FOR AN EXTENSION TO REPLY TO PLAINTIFFS' "MOTION FOR CLARIFICATION"

Now comes the defendant, Phillip Tringali, and moves this Honorable Court for an ten

(10) day extension of time to serve his response to plaintiffs' "Motion for Clarification" pursuant

to Superior Court Rule 9A. In support of his motion, the defendant states:

1.     On May 1, 2006, Plaintiffs served, by hand, a 19 page "Motion for Clarification"

pursuant to Superior Court Rule 9A. Defendant's response is due tomorrow, May 11, 2006.

2.     This "Motion for Clarification" is a complex and unusual motion which, in

essence, requests that this Court make a binding determination of the preclusive effective of this

action upon a related case pending in Federal District Court for the District of Massachusetts, and

issue an order requiring the defendant to pursue the claims presently pending in Federal District

Court as a counterclaim to this matter.

3.     The unique nature of the relief sought by the plaintiffs raises complex legal issues

and requires a complete review of the history of three pending court cases, one inactive case in

Plymouth County, the present matter, and the Federal matter.

4.     Defendant's counsel has been unable to devote his complete attention to this

motion during the past nine days due to other matters, including pending discovery disputes in

both the present matter and the Federal Matter.

5.     Defendant's counsel expects to spend most of next week out of the office, both

"E"

1

inspecting documents to be produced at the office of defendant's counsel, and traveling to Foxboro to take possession of certain data storage devices that contain evidence sought by plaintiffs and defendant.

6.    Because this motion, if allowed, will having the effect of compelling or causing the dismissal of the pending Federal District Court case, defendant respectfully suggests that it is fair to treat this motion as a dispositive motion for summary judgment, and that he should be permitted additional time to respond accordingly.

7.    WHEREFORE, defendant respectfully suggest that he be granted an additional ten (10) days from the original response date of May 11, 2006, to serve a response to plaintiff's motion for clarification pursuant to Superior Court Rule 9A .

Date: 5 | 10 | 06

PHILLIP TRINGALI,
By his attorney,

Jeffrey J. Phillips, Esq.
B.B.O. #398480
Daniel Treger, Esq.
B.B.O. #562147
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No.: (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on all parties or their attorney of record this day by facsimile and Mail

Date: 5 | 10 | 06

Daniel Treger, Esq.

L:\LITG\trng002\emergency.extend.mot.wpd

2